| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| See attached sheet | Jose & Marina Quinoy<br>48 Meadows Road<br>Montrose, New York 10548 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 09/25/1972 | Married | 07/22/2010 Thursday | |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached sheet

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Not applicable

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Not applicable

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached sheet

11. **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See attached sheet | |

12. (See instructions on reverse). **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 12,000,000 | 0.00 | 12,000,000 |

**I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.**

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| [signature] on Behalf of himself and Marina Quinoy | (914) 960-7929 | 4/13/2012 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No

This is not applicable, as the events giving rise to claimant's claim were not an accident, nor have his injuries been covered by insurance.

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

Not applicable.

19. Do you carry public liability and property damage insurance? ☐ Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No

This is not applicable, as the events giving rise to claimant's claim were not an accident, nor have his injuries been covered by insurance.

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**Claimant Jose Quinoy's Supplemental Attachment to Department of Justice Standard Form 95**

1. Anne Gulyassy
Deputy General Counsel – Litigation Department
Office of the General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue NW
Room PA 400N
Washington, D.C. 20535-0001

8. On April 28, 2009, Jose Quinoy ("claimant"), a Sleepy Hollow, New York Police Officer, was arrested by the Federal Bureau of Investigation ("FBI") and subsequently indicted for two counts of using excessive force with arrestees and one count of witness tampering. During the course of the investigation, FBI Special Agent Catherine Pena, in the scope of her duties as an agent assigned to claimant's case, intentionally destroyed exculpatory evidence by erasing compact discs with secretly-recorded conversations of claimant and modifying the recordings' written transcripts. Claimant also claims that the FBI was negligent in supervising Agent Pena.

As a result, on June 18, 2010, United States District Court Southern District of New York Judge Kenneth Karas ordered that claimant could introduce evidence to the jury regarding the destruction of evidence and that an adverse inference instruction could be used by claimant at his criminal trial due to Agent Pena's actions. On July 22, 2010, claimant was acquitted by a jury on the use of excessive force charges and the witness tampering charge. A nolle prosequi order dismissing the remaining charge against claimant was ordered by Judge Karas on August 30, 2010 and filed September 2, 2010.

10. As a result of the intentional destruction of exculpatory evidence by Agent Pena, the negligent supervision of Agent Pena by the FBI, and the ensuing false charges against him, and malicious prosecution, claimant sustained the following injuries:

a) loss of employment from the Sleepy Hollow Police Department;

b) loss of benefits;

c) loss of income (*see* Sleepy Hollow Police Department Agreement and Memorandum annexed hereto as **Exhibit "A"**, Sleepy Hollow Police Department pay stub indicating a salary of forty-five and 51/100 (45.51) dollars annexed hereto as **Exhibit "B"**, Mount Vernon Police Department Agreement annexed hereto as **Exhibit "C"**, and Mount Vernon Police Department pay stub indicating a salary of thirty seven and 76/100 (37.76) dollars annexed hereto as **Exhibit "D"** );

d) emotional distress,

e) injury to his reputation;

f) criminal defense attorney expenses (see invoice from The Quinn Law Firm for six hundred forty two thousand, six hundred twenty one and 14/100 (642,621.14) dollars, annexed hereto as **Exhibit "E"**).

As a result of the intentional destruction of exculpatory evidence by Agent Pena, the negligent supervision of Agent Pena by the FBI, and the ensuing false charges against him, and malicious prosecution, claimant's wife, Marina Quinoy, sustained the following injuries:

a) loss of services;

b) loss of society;

c) loss of love;

d) loss of companionship,

e) loss of consortium

f) loss of support.

11. List of witnesses:

a) Police Officer Michael Hayes
28 Beekman Avenue
Sleepy Hollow, New York 10591

b) Police Officer Paul Hood
28 Beekman Avenue
Sleepy Hollow, New York 10591

c) Police Officer Richard D'Alessandro
28 Beekman Avenue
Sleepy Hollow, New York 10591

d) Police Officer Wendy Brand
28 Beekman Avenue
Sleepy Hollow, New York 10591

e) Police Officer Michael Gasko
28 Beekman Avenue
Sleepy Hollow, New York 10591

f) David J. Kennedy
Assistant United States Attorney
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

g) Cynthia K. Dunne
Assistant United States Attorney
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

h) John Collins
Assistant United States Attorney
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

i) Jeffrey Oestericher
Assistant United States Attorney
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

j) Shannon Becker
Paralegal
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

k) Catherine Pena
Special Agent
Federal Bureau of Investigation
26 Federal Plaza, 23rd Floor
New York, NY 10278-0004

l) Daphne Warrington-Gaskins
Telecommunications Specialist
Federal Bureau of Investigation
26 Federal Plaza, 23rd Floor
New York, NY 10278-0004

l) Diane Payne
Telecommunications Specialist
Federal Bureau of Investigation
26 Federal Plaza, 23rd Floor
New York, NY 10278-0004

# EXHIBIT A

DESK COPY!

# AGREEMENT

between

VILLAGE OF SLEEPY HOLLOW

and

~~NORTH TARRYTOWN~~
~~POLICE BENEVOLENT ASSOCIATION, INC.~~
SLEEPY HOLLOW
POLICE BENEVOLENT ASSOCIATION, INC.

~~and~~

~~VILLAGE OF SLEEPY HOLLOW~~

DO NOT

Effective June 1, ~~1998~~ 2004 through May 31, ~~2002~~2010

REMOVE

## TABLE OF CONTENTS
## (PAGINATION TO BE COMPLETED IN FINAL)


| ARTICLE | TITLE | PAGE |
|---|---|---|
| | PREAMBLE | 1 |
| ARTICLE 1 | RECOGNITION | 1 |
| ARTICLE 2 | RECIPROCAL RIGHTS | 2 |
| ARTICLE 3 | BASE WAGE AND LONGEVITY | 2 |
| ARTICLE 4 | TOURS OF DUTY | 4 |
| ARTICLE 5 | OVERTIME | 6 |
| ARTICLE 6 | HOLIDAYS | 8 |
| ARTICLE 7 | VACATIONS | 8 |
| ARTICLE 8 | ~~WELFARE BENEFITS AND FUND~~HEALTH INSURANCE AND WELFARE BENEFITS FUND | 10 |
| ARTICLE 9 | PENSIONS ~~AND SEVERANCE PAY~~ | 12 |
| ARTICLE 10 | UNIFORM ALLOWANCE AND CLEANING | 13 |
| ARTICLE 11 | PERSONAL LEAVE | 13 |
| ARTICLE 12 | ~~TUITION PAYMENT~~EDUCATION AND TRAINING | 14 |
| ARTICLE 13 | PREVIOUS PRACTICE CLAUSE | 14 |
| ARTICLE 14 | SICK LEAVE | 14 |
| ARTICLE 15 | TRANSFER CREDITS | 15 |
| ARTICLE 16 | SAFETY CLAUSE | 16 |
| ARTICLE 17 | MILEAGE ALLOWANCE | 16 |
| ARTICLE 18 | PERSONNEL FILE | 16 |
| ARTICLE 19 | NO STRIKE - NO LOCKOUT PROVISION | 16 |
| ARTICLE 20 | LABOR MANAGEMENT COMMITTEE | 17 |
| ARTICLE 21 | GRIEVANCE PROCEDURE AND ARBITRATION | 18 |
| ARTICLE 22 | LEAVE OF ABSENCE | 19 |
| ARTICLE 23 | GENERAL MUNICIPAL LAW SECTION 207-c PROCEDURE | 20 |
| ARTICLE 24 | UNIT WORK | 26 |
| ARTICLE 25 | JURY DUTY LEAVE | |
| ARTICLE 26 | BI-WEEKLY PAY PERIOD | |
| ARTICLE 27 | EMERGENCY MEDICAL TECHNICIAN COMPENSATION | |
| ARTICLE 28 | SUBSTANCE ABUSE AND ALCOHOL TESTING PROCEDURE | |
| ARTICLE 29 | PERFORMANCE EVALUATIONS | |
| ARTICLE 30 | CANINE UNIT | |
| ARTICLE ~~25~~31 | TAYLOR LAW NOTICE | 26 |

ARTICLE ~~26~~32 DURATION OF AGREEMENT 27

~~APPENDIX "A" - PREVIOUS PRACTICE 28~~

APPENDIX "~~B~~A" - APPLICATION FOR GML 207-c DISABILITY BENEFITS 29

APPENDIX "~~B~~A" - MEDICAL RECORDS RELEASE FORM AUTHORIZATION TO RELEASE/PROVIDE INFORMATION 32

APPENDIX "~~B~~A" - GENERAL DESCRIPTION OF LIGHT DUTY 33

APPENDIX "B" – EMPLOYEE VOLUNTARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM EMPLOYEE VOLUNTARY PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM – PART B

APPENDIX "C" – PROBATIONARY EMPLOYEE PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM PROBATIONARY EMPLOYEE PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM – PART B

APPENDIX "D" – EMPLOYEE DISCIPLINARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM EMPLOYEE DISCIPLINARY PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM – PART B

APPENDIX "E" – PERFORMANCE EVALUATION FORM

## PREAMBLE

**AGREEMENT** made and entered into this day of , ~~2001~~ 2008 by and between the Village of Sleepy Hollow (hereinafter referred to as "Village") and the ~~North Tarrytown Police Benevolent Association, Inc.~~ Sleepy Hollow Police Benevolent Association, Inc. (hereinafter referred to as "~~Association~~PBA").

## ARTICLE 1
## RECOGNITION

Section 1:

The Village recognizes the ~~Association~~PBA as the exclusive bargaining agent for all full time Police Officers of the Village of Sleepy Hollow Police Department, with the exception of the Chief of Police.

Section 2:

The ~~Association~~PBA shall have the right to represent such Police Officers (hereinafter referred to as "employees") for the purpose of collective bargaining as to terms and conditions of employment and pursuit of grievances, which may arise as a result of this Agreement.

Section 3:

The Village agrees that, upon the presentation of dues deduction authorization cards signed by the individual employees to whom this Agreement is applicable, the Village will make appropriate ~~monthly~~ weekly deductions for dues from the authorization cards for each employee as ~~an~~ ~~Association~~PBA membership dues deduction. The total amount deducted each ~~month~~ week in accordance with this Section will be remitted to the ~~Association~~PBA by the Village, together with a list of employees from whose wages the dues deductions have been made, at such address as may be specified in writing to the Village by the Secretary of the ~~Association~~PBA. ~~Such remittances shall be made within ten (10) days after the last of the month in which such deductions are made.~~ The dues deductions shall be made to the PBA every pay period. The Village shall not be held liable or accountable by anyone with respect to amounts so deducted or the subsequent use thereof once received by the ~~Association~~PBA. Effective March 2, 2007, the dues deductions as set forth herein shall be deducted pursuant to the bi-weekly pay period as set forth in Article 26.

Section 4:

The ~~Association~~PBA shall have the right to post notices and other communications on a bulletin board installed on the premises and facilities of the Village at a location approved by the Village.

Section 5:

An employee who is designated or selected as ~~Association~~PBA President shall be permitted, on notice to the Chief of Police, time off from work in reasonable amounts for the purpose of adjusting grievances and for the administration of this Agreement.

Section 6:

Compensatory time for employees participating in labor contract negotiations will be limited to three (3) individuals with a maximum of eight (8) hours per person credited at straight time, not time and one half. In no instance will monetary payments be made in lieu of compensatory time off.

## ARTICLE 2
## RECIPROCAL RIGHTS

The Village reserves to itself all the rights not specifically granted to the ~~Association~~PBA under the provisions of the Public Employees' Fair Employment Act (as presently or hereinafter amended) or in this Agreement.

## ARTICLE 3
## BASE WAGE AND LONGEVITY

Section 1:

Effective on the dates indicated, the Village shall pay to the employees ~~in the negotiation unit~~ the following Base Wage as indicated in the schedule below:

| | ~~6/1/98~~ | ~~12/1/98~~ | ~~6/1/99~~ | ~~6/1/00~~ | ~~6/1/01~~ |
|---|---|---|---|---|---|
| ~~Uncertified Police Officer~~ | | | ~~$22,654*~~ | ~~$22,965~~ | ~~$23,281~~ |
| ~~Police Officer V~~ | ~~$27,933~~ | | ~~$28,317~~ | ~~$28,706~~ | ~~$29,101~~ |
| ~~Police Officer IV~~ | ~~$34,845~~ | | ~~$35,498~~ | ~~$36,164~~ | ~~$36,842~~ |
| ~~Police Officer III~~ | ~~$41,673~~ | | ~~$42,506~~ | ~~$43,356~~ | ~~$44,223~~ |
| ~~Police Officer II~~ | ~~$48,633~~ | | ~~$49,788~~ | ~~$50,970~~ | ~~$52,181~~ |
| ~~Police Officer I~~ | ~~$55,237~~ | ~~$55,789~~ | ~~$58,021~~ | ~~$59,762~~ | ~~$61,854~~ |
| ~~Detective(s) and/or Youth Officer(s)~~ | ~~$61,865**~~ | ~~$62,484~~ | ~~$64,984~~ | ~~$66,933~~ | ~~$69,276~~ |
| ~~Sergeant(s)~~ | ~~$62,694***~~ | ~~$63,599~~ | ~~$66,144~~ | ~~$68,129~~ | ~~$70,514~~ |
| ~~Detective(s)/Sergeant(s)~~ | ~~$66,284****~~ | ~~$66,947~~ | ~~$67,304~~ | ~~$69,324~~ | ~~$71,751~~ |
| ~~Lieutenant(s)~~ | ~~$67,113*****~~ | ~~$67,784~~ | ~~$70,786~~ | ~~$73,208~~ | ~~$76,080~~ |

~~* An Uncertified Base Wage at 80% of the Police Officer V Base Wage. This is for new police officers who are not certified and are required to attend the basic police academy. This Base Wage shall be paid for a maximum period of 26 weeks, starting with date of hire with the Village. At the conclusion of 26 weeks, the police officer moves to Police~~

~~Officer V. Thereafter, on their anniversary date (date of hire), they move to Police Officer IV and so on.~~

~~** Detective(s) and/or Youth Officer(s) 12% above Police Officer I~~

~~*** Sergeant(s) 6/1/98 & 12/1/98 13.5% above Police Officer I~~
~~6/1/99 14.0% above Police Officer I~~

~~**** Detective/Sergeant(s) 6/1/98 & 12/1/98 20.0% above Police Officer I~~
~~6/1/99 16.0% above Police Officer I~~

~~***** Lieutenant(s) 6/1/98 & 12/1/98 21.5% above Police Officer I~~
~~6/1/99 22.0% above Police Officer I~~
~~6/1/00 22.5% above Police Officer I~~
~~6/1/01 23.0% above Police Officer I~~

| | 6/1/04 | 12/1/04 | 6/1/05 | 12/1/05 | 6/1/06 | 12/1/06 |
|---|---|---|---|---|---|---|
| Uncertified Police Officer* | $25,767 | $26,218 | $26,678 | $27,145 | $27,722 | $28,310 |
| Police Officer V Starting | $32,209 | $32,773 | $33,347 | $33,931 | $34,652 | $35,388 |
| Police Officer IV Starting 2nd Year | $40,776 | $41,490 | $42,216 | $42,955 | $43,868 | $44,800 |
| Police Officer III Starting 3rd Year | $48,944 | $49,801 | $50,673 | $51,560 | $52,656 | $53,775 |
| Police Officer II Starting 4th Year | $57,753 | $58,764 | $59,792 | $60,838 | $62,130 | $63,450 |
| Police Officer I Starting 5th Year | $68,458 | $69,656 | $70,875 | $72,115 | $73,647 | $75,212 |
| Detective(s) and/or School Resource Officer(s)** | $76,673 | $78,015 | $79,380 | $80,769 | $82,485 | $84,237 |
| Sergeant(s)*** | $78,042 | $79,408 | $80,798 | $82,211 | $83,958 | $85,742 |
| Detective Sergeant(s)**** | $79,411 | $80,801 | $82,215 | $83,653 | $85,431 | $87,246 |
| Lieutenant(s)***** | $84,203 | $85,677 | $87,176 | $88,701 | $90,586 | $92,511 |

* An Uncertified Police Officer Base Wage is 80% of the Police Officer V Base Wage. This is for new police officers who are not certified and are required to attend the basic police academy. This Base Wage shall be paid for a maximum of 26 weeks, starting with the date of hire with the Village. At the conclusion of 26 weeks, the police officer moves to Police Officer V Starting. Thereafter, on his/her anniversary date (date of hire), he/she moves to Police Officer IV Starting 2nd Year, and so on.

** Detective(s) and/or School Resource Officer(s) - 12% above Police Officer I
*** Sergeant(s) - 14% above Police Officer I
**** Detective Sergeant(s) - 16% above Police Officer I
***** Lieutenant(s) - 23% above Police Officer I

| | 6/1/07 | 12/1/07 | 6/1/08 | 12/1/08 | 6/1/09 | 12/1/09 |
|---|---|---|---|---|---|---|
| Uncertified Police Officer* | $36,736 | $37,746 | $38,690 | $39,754 | $40,947 | $42,176 |
| Police Officer IV Starting | $45,920 | $47,183 | $48,363 | $49,693 | $51,184 | $52,720 |
| Police Officer III Starting 2nd Year | $55,119 | $56,635 | $58,051 | $59,647 | $61,436 | $63,279 |
| Police Officer II Starting 3rd Year | $65,036 | $66,824 | $68,495 | $70,379 | $72,490 | $74,665 |
| Police Officer I Starting 4th Year | $77,092 | $79,212 | $81,192 | $83,425 | $85,928 | $88,506 |
| Detective(s) and/or School Resource Officer(s) ** | $86,343 | $88,717 | $90,935 | $93,436 | $96,239 | $99,127 |
| Sergeant(s)*** | $87,885 | $90,302 | $92,559 | $95,105 | $97,958 | $100,897 |
| Detective Sergeant(s)**** | $89,427 | $91,886 | $94,183 | $96,773 | $99,676 | $102,667 |
| Lieutenant(s)***** | $94,823 | $97,431 | $99,866 | $102,613 | $105,691 | $108,862 |

* An Uncertified Police Officer Base Wage is 80% of the Police Officer IV Base Wage. This is for new police officers who are not certified and are required to attend the basic police academy. This Base Wage shall be paid for a maximum of 26 weeks, starting with the date of hire with the Village. At the conclusion of 26 weeks, the police officer moves to Police Officer IV Starting. Thereafter, on his/her anniversary date (date of hire), he/she moves to Police Officer III Starting 2nd Year, and so on.

* Detective(s) and/or School Resource Officer(s) - 12% above Police Officer I
** Sergeant(s) - 14% above Police Officer I
*** Detective Sergeant(s) - 16% above Police Officer I
**** Lieutenant(s) - 23% above Police Officer I

Effective June 1, 2007, the existing Base Wage shall be compressed, which is reflected above, as follows:

Police Officer V becomes the Uncertified Police Officer.
Police Officer IV becomes the Police Officer Starting
Police Officer III becomes the Police Officer Starting 2nd Year
Police Officer II becomes the Police Officer Starting 3rd Year
Police Officer I becomes the Police Officer Starting 4th Year

The following are examples of Base Wage adjustments based on the schedule as of December 31, 2006:

\- If as of December 31, 2006 the employee was an Uncertified Police Officer, and was still uncertified as of June 1, 2007, that employee would go from $28,310 to $36,736 until certified, and then move to Police Officer IV Starting at $45,920.

- If as of December 31, 2006, the employee was a Police Officer V, and was still a Police Officer V as of June 1, 2007, that employee would go from $35,388 to Police Officer IV Starting at $45,920 and then move accordingly to Police Officer III Starting 2nd Year at $55,119.

Section 2:

The Base Wage set forth above for the title of Police Officer shall be paid based on the anniversary date (date of hire) with the Village, including prior full time credited police service as contained in Article 15 - Transfer Credits.

Section 3:

The Base Wage set forth above for the titles of Detective and/or School Resource Officer (s), ~~Youth Officer(s),~~ Sergeant(s), Detective Sergeant(s) and Lieutenant(s) shall be paid upon appointment to that title, regardless of the anniversary date (date of hire) with the Village.

Section 4:

Employees shall be entitled to longevity payments according to the following schedule:

| ~~Years of Service~~ | ~~6/1/98~~ | ~~6/1/99~~ | ~~6/1/00~~ | ~~6/1/01~~ |
|---|---|---|---|---|
| ~~Start 6th year~~ | ~~$ 500/yr~~ | ~~$ 500/yr~~ | ~~$ 650/yr~~ | ~~$ 725/yr~~ |
| ~~Start 9th year~~ | ~~$ 875/yr~~ | ~~$ 875/yr~~ | ~~$1,025/yr~~ | ~~$1,100/yr~~ |
| ~~Start 12th year~~ | ~~$1,250/yr~~ | ~~$1,250/yr~~ | ~~$1,400/yr~~ | ~~$1,475/yr~~ |
| ~~Start 15th year~~ | ~~$1,625/yr~~ | ~~$1,625/yr~~ | ~~$1,775/yr~~ | ~~$1,850/yr~~ |
| ~~Start 18th year~~ | ~~$2,000/yr~~ | ~~$2,000/yr~~ | ~~$2,150/yr~~ | ~~$2,225/yr~~ |

| Years of Service | 6/1/04 | 6/1/05 | 6/1/06 | 6/1/07 | 6/1/08 | 6/1/09 |
|---|---|---|---|---|---|---|
| Start 6th Year | $ 750/yr | $ 750/yr | $ 750/yr | $ 750/yr | $ 850/yr | $ 950/yr |
| Start 9th Year | $1,125/yr | $1,125/yr | $1,125/yr | $1,125/yr | $1,225/yr | $1,325/yr |
| Start 12th Year | $1,500/yr | $1,500/yr | $1,500/yr | $1,500/yr | $1,600/yr | $1,700/yr |
| Start 15th Year | $1,875/yr | $1,875/yr | $1,875/yr | $1,875/yr | $1,975/yr | $2,075/yr |
| Start 18th Year | $2,250/yr | $2,250/yr | $2,250/yr | $2,250/yr | $2,350/yr | $2,450/yr |

Section 5:

The longevity payments set forth above shall be paid to the employee on the day following the anniversary date of employment with the Village and paid in equal payments included in each paycheck.

## ARTICLE 4
## TOURS OF DUTY

Section 1.

Police Officers and Sergeants shall have the following tour rotation:

| | | |
|---|---|---|
| 8:00 a.m. - 4:00 p.m. | 4 days | 56 hours off |
| Midnight - 8:00 a.m. | 4 days | 80 hours off |
| 4:00 p.m. - Midnight | 4 days | 56 hours off |

An uncertified employee shall be scheduled to work Monday through Friday during the starting and ending times while attending the police academy (For example: 9:00 a.m. to 5:00 p.m., with the specific hours established by the police academy). During ~~their~~ his/her ride-along field hours required by the police academy, the employee shall report and work the scheduled tours of duty hours contained in the contract with their Field Training Officer (FTO).

Upon successful completion of the police academy, that employee shall be assigned to a Field Training Officer to undergo a period of training. The training shall consist of rotating with the assigned Field Training Officer and work the scheduled tours of duty contained in the contract. The Chief of Police or designee will designate the initial tour of duty to start the field training. That employee shall not be applied towards the minimum manpower staffing of that tour of duty until successful completion of ~~their~~ his/her field training. The training period shall be determined by the Chief of Police or designee. Upon successful completion of the training period, that employee shall be assigned to the regular rotation and a tour of duty by the Chief of Police or designee. That employee shall receive a minimum of fifty-six (56) hours off before reporting to ~~their~~ his/her assigned tour of duty after completion of ~~their~~ his/her field training.

Section 2:

The work schedule for the Lieutenant shall be Monday through Friday 8:00 a.m. to 4:00 p.m. In the event there are two (2) Lieutenants, one (1) shall work Monday through Friday 8:00 a.m. to 4:00 p.m. and the other shall work Monday through Friday 4:00 p.m. to 12:00 midnight and alternating tours every week. The Lieutenant who works the 4:00 p.m. to 12:00 midnight tour of duty shall be on stand-by for that weekend to respond to telephone calls. The Lieutenant shall not be entitled to the minimum contractual call-in for responding to such telephone calls while on stand-by. However, in the event they report to work, they shall be entitled to such payment set forth in Article 5 - Overtime.

<ins>In the event the Village creates a third (3rd) Lieutenant's position, the work schedule for each Lieutenant shall be Monday through Friday with Saturday and Sunday as days off. One (1) Lieutenant shall work 8:00 a.m. to 4:00 p.m., one (1) Lieutenant shall work 4:00 p.m. to 12:00 midnight, and one (1) Lieutenant shall work 12:00 midnight to 8:00 a.m. All three (3) Lieutenants shall rotate weekly as follows:</ins>

<ins>12:00 midnight to 8:00 a.m. to</ins>
<ins>4:00 p.m. to 12:00 midnight to</ins>
<ins>8:00 a.m. to 4:00 p.m. and repeat the cycle</ins>

<ins>The Lieutenant who works the 12:00 midnight to 8:00 a.m. tour of duty shall be on standby for that weekend to respond to telephone calls. The Lieutenant shall not be entitled to the minimum</ins>

contractual call-in for responding to such telephone calls while on standby. However, in the event the Lieutenant on standby reports to work, he/she shall be entitled to such payment set forth in Article 5 – Overtime.

Section 3:

The work schedule for the Detective shall be Monday through Friday 8:00 a.m. to 4:00 p.m. In the event there are two (2) Detectives and/or one (1) Detective and one (1) Detective/-Sergeant, one (1) shall work Monday through Friday 8:00 a.m. to 4:00 p.m. and the other shall work Monday through Friday 4:00 p.m. to 12:00 midnight and alternating tours every week. The Detective(s) and/or Detective Sergeant who works the 4:00 p.m. to 12:00 midnight tour of duty shall be on stand-by for that weekend to respond to telephone calls. The Detective and Detective/-Sergeant shall not be entitled to the minimum contractual call-in for responding to such telephone calls while on stand-by. However, in the event they report to work, they shall be entitled to such payment set forth in Article 5 - Overtime.

The Chief of Police or designee shall be able to flex the Detective(s) starting and ending times for up to two (2) hours (e.g., a Detective scheduled to start work at 8:00 a.m., can be required to report as early as 6:00 a.m. or as late as 10:00 a.m., or any time in between). The Detective(s) may also flex their starting and ending times as set forth herein, with the approval of the Chief of Police or designee. The Chief of Police or designee shall make every effort to provide as much advance notice as possible to the Detective(s) when flexing their tour of duty.

Section 4:

The work schedule for the YouthSchool Resource Officer shall be Monday through Friday 8:00 a.m. to 4:00 p.m.with the basic workday being from 9:00 a.m. to 5:00 p.m. The Youth Officer shall be entitled to adjust the basic workday set forth herein to any eight (8) continuous hours within a day to accomplish the function of the position. When school is not in session and/or closed (i.e., summer vacation, winter recess, weather, etc.), the School Resource Officer shall report to the police department during the hours set forth herein and assigned accordingly by the Chief of Police or designee.

Section 5:

Effective January 1, 2000, tThe Village shall make a reasonable effort to physically post all tours of duty for employees a minimum of ninety (90)sixty (60) calendar days in advance, and the tours so posted shall not be changed except in the event of an emergency. Notwithstanding the physical method of posting, the tours of duty schedule contained in the computer system shall satisfy the Village's obligation to posting all tours of duty a minimum of ninety (90)sixty (60) calendar days in advance. Any employee, whose tour of duty is changed, shall have a minimum of fifty-six (56) hours off before reporting to their his/her new tour of duty. Any previously approved time off (For example: vacation, etc.) shall be granted off to that employee. However, such posting shall not prevent the Chief of Police or designee a reduction in notice, at the discretion of the Chief of Police or designee, when necessary changes are needed due to

promotions, reassignments, medical leaves, injuries requiring lengthy absences and disciplinary suspensions, plus with the agreement of the employees ~~officers~~ involved and the PBA, other extenuating circumstances. The Chief of Police or designee shall provide as much notice as possible to employees whose posts are about to be changed and the reason for it.

Section 6:

Each employee shall be entitled to switch ~~their~~ his/her regularly scheduled tour of duty with another employee, with the prior approval of the Chief of Police or designee. Such approval shall not be unreasonably denied and is not subject to the minimum posting notice set forth above.

Section 7:

The three (3) posts to be manned on each tour of duty shall be as follows:

1. Front Desk
2. North End
3. South End

~~An employee shall be entitled to select their post assignment by seniority on their regularly scheduled tour of duty.~~
Each employee, by seniority, can express his/her choice of posts as set forth above on his/her regularly scheduled tour, but final assignments shall be made by the Chief of Police or designee. The post assignments shall be posted for each week no later than the week preceding their effective date.

In the event of new commercial or residential development within the Village, and the Village determines that an additional post(s) may be needed due to that development, the Village shall have the right to create a special post pursuant to Section 77-2 (c) of the Rules and Regulations. In the event the Village determines that the special post shall be made permanent, the Village shall provide sufficient staffing for the post, which shall not diminish any employee(s)' ability to be approved time off (for example: vacation, compensatory time, etc.).

## ARTICLE 5
## OVERTIME

Section 1:

All employees ~~of the bargaining unit~~ shall receive cash payment, at the rate of one and one-half times (1.5X) the employee's normal rate of pay for all overtime worked. Employees may elect to receive compensatory time in lieu of cash payment for overtime worked, however, employees may not accumulate, at any given time, more than sixty (60) hours of compensatory time for overtime worked. The taking of compensatory time shall be by written request of the employee and approval of the Chief of Police or designee and such approval not to be unreasonably

withheld. The election of compensatory time by employees shall be subject to the ~~F.L.S.A.~~ Fair Labor Standards Act restrictions for an eighteen (18) day work period.

A. Between May 15th and May 31st of each year, the Village shall pay each employee, at the rate of pay in effect for such employee on the date paid, for all compensatory time accumulated and due such employee from the prior fiscal year, plus the time from which the last payment was received.

B. Employees who retire or die prior to receiving payment of compensatory time shall be entitled to payment for all accumulated compensatory time up to a maximum of sixty (60) hours. The Village shall pay the retiring employee in cash at the time of retirement for the balance of the employee's accumulated compensatory time, at the rate due the employee on retirement. In the event that such employee dies prior to receiving their accumulated compensatory time, the employee's beneficiary or estate shall receive such payment.

Section 2:

The parties agree that planned overtime (overtime for which the Village has 48 hours or more notice of need) shall be distributed on a rotating basis as described herein. Two separate master lists shall be maintained - one for patrol officers and one for superior officers (Sergeants and Lieutenants). Planned overtime shall be first offered to the most senior officer on the appropriate master list of Department employees. The next overtime opportunity shall be offered to the next most senior officer on the list, and so on, in order of seniority. Once an officer has been offered overtime using the master list, he/she shall not be offered such overtime again until each officer on the list has been offered overtime. In the event no officers on the appropriate list accept the overtime assignment, such overtime shall be offered to the appropriate officer on the other master list in accordance with the same procedure outlined above. If none of the officers on the second master list accept the overtime assignment, the least senior officer from the tour immediately preceding the tour for which overtime is required shall be involuntarily assigned the overtime, provided, however, that no officer shall be permitted or required to work more than sixteen (16) consecutive hours. Additionally, no officer shall be involuntarily assigned overtime a second time or additional times thereafter until all officers on the tour from which the involuntary assignment must be made have also been involuntary assigned overtime.

The parties agree that unplanned overtime (overtime for which the Village has less than 48 hours' notice of need) shall be distributed as described herein. Such overtime shall be first offered to those officers of appropriate rank on the tour immediately preceding the tour for which overtime is required, in order of seniority. In the event none of the officers from such tour accept the overtime assignment, the overtime shall next be offered to those officers of appropriate rank on the tour immediately following the tour for which overtime is required, in order of seniority. In the event none of the officers from such tours accept the overtime assignment, overtime will be offered to the appropriate officer on the appropriate master list in accordance with the procedure outlined in paragraph 1 above including the procedure for the involuntary assignment of the overtime if necessary.

No patrol officer(s) shall be forced to work overtime that has been offered to and declined by the Sergeant(s) and/or Lieutenant(s) from their master list.

The overtime list(s) shall be maintained at the front desk. All planned and/or unplanned overtime records shall be made available for inspection to the ~~Association~~PBA in order to insure compliance with the distribution of overtime.

Section 3:

Employees who work overtime on off-duty time which is not contiguous to their scheduled tour of duty shall be entitled to a minimum of three (3) hours of pay at their normal rate of pay or time and one-half (1.5X) for such overtime worked, whichever is more.

Section 4:

In the event an employee switches ~~their~~ his/her regular scheduled tour of duty with another employee, the Village will be held harmless for overtime, on a dollar for dollar basis.

Section 5:

The first twenty (20) hours of training time each fiscal year will be paid at straight time, not time and one-half (1.5X), for those not on duty who participate. ~~The training will be for: CPR = 8 hours, PR 24 = 8 hours and Shotgun = 4 hours.~~ Each employee shall receive training in CPR, PR-24 and shotgun.

## ARTICLE 6
## HOLIDAYS

Section 1:

There shall be thirteen (13) holidays as follows:

New Year's Day (January 1st)
Martin Luther King, Jr.'s Birthday
Lincoln's Birthday
Washington's Birthday
Good Friday
Easter
Memorial Day
Independence Day (July 4th)
Labor Day
Columbus Day
Veteran's Day
Thanksgiving Day
Christmas Day (December 25th)

The foregoing holidays where a specific date is not mentioned will be celebrated on the official date as indicated on the calendar for official holidays of the State of New York, or upon the mutual agreement of the parties to the Agreement.

Section 2:

All Holidays shall be paid in the first (1st) pay period in December of each year.

Section 3:

Total compensation for holidays worked shall be two times (2X) the daily rate. In no respect shall these payments be construed as triple time (3X) payments.

Section 4:

Employees may, if they so elect, receive time off in lieu of cash payment for all or any portion of paid holiday entitlement, except that such time off must be taken in full days. The taking of such time off shall be subject to the prior approval of the Chief of Police or designee as to the actual date requested by the employees as time off. Should an employee terminate before accruing the days "borrowed," the excess shall be deducted from his/her final paycheck(s) or, if such final paycheck(s) is insufficient, paid back to the Village.

## ARTICLE 7
## VACATIONS

Section 1:

Employees shall be entitled to an annual paid vacation based on either continuous service with the Village or Article 15 – Transfer Credits, as set forth in Section 2 of this Article.

Section 2:

Employees are eligible for paid vacation pursuant to the following schedule:

| Terms of Continuous Service | Vacation Period |
|---|---|
| After six (6) months to one (1) year | 2 weeks |
| Start of first (1) year to completion of four (4) years | 3 weeks |
| Start of fifth (5) year to completion of nine (9) years | 4 weeks |
| Start of tenth (10) year to completion of fifteen (15) years | 5 weeks |
| Start of sixteenth (16) year and thereafter | 6 weeks |

In the event of separation from service, no employee shall receive pro-rated vacation based on the above schedule (i.e., an employee who has started his/her 10th year of service receives 5 weeks of vacation. If that employee separates from service at 10 ½ years, he/she would be entitled to have used all 5 weeks, or for those weeks not used, be paid for).

Section 3:

The Chief of Police shall establish the vacation schedule no later than March 31st of each year, effective June 1st for that fiscal year. All employees shall select their vacations, on the basis of seniority, no later than May 5th of each year. Any vacations requested and submitted after May 5th, shall be subject to availability in accordance with the remaining vacation schedule. An employee shall not be bumped by a more senior employee who has submitted a vacation request after May 5th.

In the event an employee has an individual day(s) remaining, that employee shall be entitled to use that time on a day to day basis, but shall not be granted preference over an employee selecting vacation in whole week blocks.

Section 4:

Extended vacation without pay or leaves of absences shall not be granted during the vacation period.

Section 5:

Legal holidays during the vacation period will not count as a vacation day.

Section 6:

An employee shall request and take ~~their~~ his/her annual vacation as set forth above, or ~~they~~ he/she may lose all unused vacation. Exceptions will be made to carry over unused vacation with the permission of the Chief of Police, ~~Village~~ Mayor, the Village Administrator or other person designated by the ~~Village~~ Board of Trustees.

Section 7:

Overtime shall not be applied to vacations so as to upset vacation schedules.

Section 8:

~~The Board of Trustees reserves the right to cancel or delay any vacations for reasons they deem would prevent the normal operation of the Village.~~
In the event of an emergency, the Mayor reserves the right to cancel a previously approved vacation of an employee. In that event, any and all expenses documented and incurred by the employee shall be reimbursed by the Village, and the vacation days cancelled shall be re-credited back to the employee.

Section 9:

The Chief of Police will be responsible for maintaining adequate ~~manpower~~ staffing, therefore, the need for splitting vacations will be left to the Chief of Police's judgment.

Section 10:

Sick leave is not applicable to vacation time.

## ARTICLE 8
## ~~WELFARE BENEFITS AND FUND~~
## HEALTH INSURANCE AND WELFARE BENEFITS FUND

Section 1:

A. The Village will pay for the full premium cost for health insurance for each employee and the employee's eligible dependents, including domestic partners. The Village shall provide the Core Plus Medical and Psychiatric Enhancements Plan through the New York State Government Employees Health Insurance Plan.

B. All employees hired after August 1, 1992 are required to pay twenty-five percent (25%) of the premium cost for health insurance coverage provided to the employees and/or their dependents, including domestic partners, until reaching the status of Police Officer I when paragraph A of this Section shall then apply. This payment shall be made by reducing the employee's Base Wage by the amount of the annual premium cost for the health insurance provided.

Section 2:

Employees whose spouse is covered by a health insurance plan may, at the option of the employee, elect to:

A) Not have the spouse covered by the Health Plan of the Village. Such employee shall be entitled to an annual lump sum stipend equal to one half (1/2) the premium paid by the Village annually to provide health insurance coverage on said employee's spouse.

B) Not have the employee or the employee's spouse covered by the Health Plan of the Village. Such employee shall be entitled to an annual lump sum stipend equal to one-half (1/2) of the premium paid by the Village annually to provide health insurance coverage on said employee and the employee's spouse.

Section 3:

Employees who elect payments under (A) or (B) of Section 2 above shall, upon notification to the Village be entitled to same health insurance coverage, including coverage for their eligible dependents, including domestic partners, as provided to other employees ~~in the bargaining unit~~ at no cost to such employee.

Section 4:

Employee(s) who elect to withdraw from the Village's health insurance plan, under (A) or (B) of Section 2 above, for a period of less than one (1) year shall be entitled to one-twelfth (1/12th) of the stipend due under (A) or (B) of Section 2 above. Payment of the stipend due under (A) or (B) of Section 2 above shall be by separate check.

Section 5:

Retirees who after retirement are employed, and their Employer provides, at no cost to the retiree, health insurance at least equal to the health insurance provided by the Village on the retiree and the retiree's eligible dependents, shall volunteer to withdraw from the health insurance coverage by the Village as provided by the New York State Government Employees Health Insurance Plan for the period of such employment. After retirement with said Employer, upon written notification by the retiree, the Village shall immediately reinstate fully paid health insurance on the retiree and the retiree's eligible dependents, including domestic partners, as provided for by the New York State Government Employees Health Insurance Plan or the plan in effect at that time for ~~the bargaining unit~~ employees at no cost to the retiree and his/her eligible dependents.

Section 6:

~~The Village shall have the right to change health insurance to benefits at least comparable to those being provided in the Core Plus Medical and Psychiatric Enhancements Plan through the New York State Government Employees Health Insurance Plan.~~

In the event the Village seeks to change the health insurance carrier, plan and/or its benefits, the change(s) shall be submitted, in writing, to the PBA President. The PBA shall respond to the Village, within sixty (60) calendar days of receipt of notice from the Village, that they agree or disagree that the changes are substantially equal to those of the existing carrier, plan and/or benefits. In the event the PBA does not agree that the new health insurance carrier, plan and/or its benefits are substantially equal, then the parties agree to submit the matter to expedited arbitration through the American Arbitration Association (AAA), pursuant to their voluntary rules and procedures then in effect. The parties, however, reserve the right to choose an arbitrator to hear the matter. The arbitrator's decision and function shall be as set forth in Article 21 – Grievance Procedure and Arbitration. In no event shall any change in health insurance carrier, plan and/or benefits be effectuated until such time as an arbitration award has been issued which approves the change(s).

Section 7:

The Village shall provide, at its cost, a fifteen thousand dollar ($15,000) term life insurance policy for each employee.

Section 8:

The Village shall contribute to the Welfare Fund for each employee per year as follows:

| ~~6/1/98~~ | ~~6/1/99~~ | ~~6/1/00~~ | ~~6/1/01~~ |
|---|---|---|---|
| ~~$860.00~~ | ~~$900.00~~ | ~~$900.00~~ | ~~$950.00~~ |

| 6/1/04 | 6/1/05 | 6/1/06 | 6/1/07 | 6/1/08 | 6/1/09 |
|---|---|---|---|---|---|
| $1,150.00 | $1,150.00 | $1,200.00 | $1,250.00 | $1,300.00 | $1,375.00 |

Section 9:

Welfare payments shall be made in two (2) equal payments, during the first (1st) week in July and the first (1st) week in January of each contract year.

Section 10:

The Welfare Fund shall be administered by the Trustees of the ~~Association~~PBA under the terms of a separate trust instrument to purchase life insurance, dental, optical, prepaid legal services and drug prescriptions.

Section 11:

The Welfare Fund shall not be used to pay the cost of any legal action against the Village or any of its officials.

Section 12:

Semi-annual financial reports and an annual audit report shall be submitted to the Village in the first (1st) week of January and the first (1st) week in July.

## ARTICLE 9
## PENSIONS ~~AND SEVERANCE PAY~~

Section 1:

The Village shall provide, at no cost to each employee, the New York State Police and Fire~~men's~~ Retirement System's 20 year, one-half (1/2) retirement benefit.

Section 2:

A retirement incentive shall be paid to any employee who retires with at least 20 years of service as follows:

6/1/98 to 5/31/99 $4,000.00
6/1/99 to 5/31/00 $6,000.00
6/1/00 to 5/31/01 $2,000.00

The above retirement incentive shall sunset and no longer be a part of the contract at the close of business May 31, 2001.

## ARTICLE 10
## UNIFORM ALLOWANCE AND CLEANING

Section 1:

A uniform allowance shall be payable to the supplier upon presentation of a voucher in the form specified by the Village as follows:

| | | | | | |
|---|---|---|---|---|---|
| 6/1/98 | | 6/1/99 | 6/1/00 | | 6/1/01 |
| $600.00 | | $600.00 | $650.00 | | $650.00 |
| 6/1/04 | 6/1/05 | 6/1/06 | 6/1/07 | 6/1/08 | 6/1/09 |
| $675.00 | $675.00 | $700.00 | $725.00 | $750.00 | $800.00 |

Section 2:

Employees may submit cleaning and maintenance vouchers for duty apparel up to the specified amounts, per fiscal year, as follows:

| | | | | | |
|---|---|---|---|---|---|
| 6/1/98 | | 6/1/99 | 6/1/00 | | 6/1/01 |
| $75.00 | | $75.00 | $100.00 | | $125.00 |
| 6/1/04 | 6/1/05 | 6/1/06 | 6/1/07 | 6/1/08 | 6/1/09 |
| $150.00 | $150.00 | $175.00 | $200.00 | $225.00 | $275.00 |

Section 3:

In an attempt to strive for uniformity of police dress, a committee shall be appointed consisting of the Chief of Police, Chairperson of the Police Committee, the Village Administrator and an employee, which committee shall establish rules with respect to the expenditure of the clothing allowance.

Section 4:

By no later than May 31st of each fiscal year, employees shall provide to the Treasurer's Office the cost of uniform items and cleaning for payment, otherwise, those payments will be charged to the budget year in which the bill is received.

**ARTICLE 11**
**PERSONAL LEAVE**

Section 1:

The Village will grant five (5) days off per contract year per employee for personal leave.

Section 2:

Unused personal leave days, not used by an employee by May 31st of each year, shall be paid for in cash, at the regular rate of pay, for each individual in the first (1st) pay period of June of each year. Such payment shall be by separate check.

**ARTICLE 12**
**~~TUITION PAYMENT~~**
**EDUCATION AND TRAINING**

Section 1:

~~The Village will pay the tuition for courses of study directly related to a Criminal Justice Program. In order to be eligible for such payments, the employee must receive the prior written approval of the Chief of Police and Board of Trustees, which shall act in an expeditious manner. The Chief of Police and Board of Trustees shall not act in an arbitrary, capricious, discriminatory, or unreasonable manner in deciding whether to provide such approval. The classes to be reimbursed must be directly related to a Criminal Justice Program at an accredited school and the employee must receive a passing grade of C+ or better to receive the tuition payment. No more than $12,000 shall be available under this provision for the entire Department in any one year. If the total of the approved eligible payments exceeds $12,000 during any one year for the entire Department, the employees shall receive a pro rata portion of the $12,000.~~
The policy of the Village is to encourage employees to take training and/or educational course(s), or pursue a degree in Criminal Justice, Police Science, Business Administration, Police Justice Administration, Psychology, Law, Computer Science, Foreign Language relevant to the community, or other course(s) or studies approved by the Chief of Police and Board of Trustees. In order to be eligible for reimbursement, an employee shall receive the prior approval of the Chief of Police and Board of Trustees. The Chief of Police and Board of Trustees shall act in an expeditious manner after receipt of the requests, and shall not act in an arbitrary, capricious, discriminating or unreasonable manner in deciding whether to provide such approval. The taking of required course(s) or electives, tuition costs and fees required for students, including books, to

satisfy the requirements of a degree, course(s) or training as set forth herein, shall also be entitled to reimbursement by the Village. The employee must receive a grade of C+ or better, or in the event that the grading is on a pass or fail basis, a passing grade is required. The Village's obligation shall be no more than twelve thousand dollars ($12,000.00) be paid for the entire bargaining unit in any one year. In the event the total approved payments exceeds the amount set forth herein, the employees shall receive a pro-rata portion of the amount.

Section 2:

An employee who receives a tuition refund for courses completed within twelve (12) months prior to voluntary termination from the Village shall return the money. This Section shall not apply to an employee retiring within the twelve (12) month period.

## ARTICLE 13
## PREVIOUS PRACTICE CLAUSE

~~All practices presently specified in written rules and procedures with respect to the Sleepy Hollow Police Department shall be annexed to this Agreement as Appendix "A" and shall remain in force and effect for the life of the Agreement, unless altered by mutual agreement of the parties. The Rules and Regulations adopted by the Police Department, Chapter 77 of the Code of the Village of Sleepy Hollow, as adopted on April 10, 1978, are incorporated herein by reference.~~ The Village shall not alter any existing "terms and conditions" of employment including any contained in the Department's written Rules and Regulations, without prior agreement of the PBA.

## ARTICLE 14
## SICK LEAVE

Section 1:

Each employee shall be entitled to unlimited sick leave use with full pay.

Section 2:

Each employee shall be responsible to notify the Department at least three (3) hours prior to their scheduled tour of duty, except in an emergency, when sick leave is going to be used.

Section 3:

Upon absences of more than three (3) consecutive work days because of illness or disability which is not related to injury, illness or disability incurred on the job, or when the Village has reasonable grounds to believe that sick leave is being abused, the Chief of Police may require that a physician's certificate be furnished substantiating the employee's claim of illness or disability.

Section 4:

In addition to those sick leave benefits set forth in the Rules and Regulations of the Police Department referred to in Article 13 – Previous Practice Clause, employees shall be entitled to an annual payment to be paid in the first (1st) pay period in June, by separate check, according to the following:

A. Those employees who utilize less than eight (8) days of sick leave per year shall receive a bonus of one percent (1%) of their annual Base Wage.

B. Those employees who utilize less than five (5) days of sick leave per year shall receive a bonus of one and one half percent (1 1/2%) of their annual Base Wage.

## ARTICLE 15
## TRANSFER CREDITS

Except as provided for by law, any transfers on or after December 22, 1999, shall receive one (1) year of service for every two (2) years of prior full-time credited police service for the purpose of placement on the Base Wage Schedule, payment of longevity and vacation leave entitlement. (For example: an employee with four (4) years of prior full-time credited police service would be treated as if ~~they~~ he/she had completed two (2) years of service with the Village and placed accordingly at Police Officer III – Starting 3rd Year through May 31, 2006, and Police Officer II – Starting 3rd Year effective June 1, 2007, and would thereafter move through the Base Wage schedule, and receive longevity accordingly.)

Except as provided for by law, those employees who transferred prior to December 22, 1999 shall not be subject to the above.

For the purposes of internal seniority, that employee shall be treated as a new employee in such areas such as, but not limited to, the selection of any time off, post assignments and/or overtime.

## ARTICLE 16
## SAFETY CLAUSE

The Village shall maintain its facilities and equipment in a condition so as not to endanger the health or safety of the employees.

In the event an unsafe condition is discovered in the Village's facilities or equipment, the employee who discovers the unsafe condition shall, no later than the end of that scheduled tour of duty, provide immediate written notice to the Chief of Police or designee, with a copy to the PBA President, of the unsafe condition on a form developed by the Chief of Police.

## ARTICLE 17
## MILEAGE ALLOWANCE

~~The Village's policy on mileage allowance in effect on December 11, 1981 shall be applicable to employees.~~
An employee required and authorized to use his/her personal vehicle for Village use shall be reimbursed, via a separate check, at the Internal Revenue Service (IRS) approved rate per mile.

## ARTICLE 18
## PERSONNEL FILE

An employee shall be entitled to review his/her personnel file, maintained at the Police Department, in the presence of the Chief of Police or designee, upon five (5) calendar days' notice. No complaint, report, memoranda or material, except pre-employment material and normal payroll and attendance records, shall be placed into an employee's personnel file until such time as the employee has had an opportunity to read same and to provide a response to be filed ~~therewith~~within fifteen (15) calendar days. An employee shall be entitled to copies of items therein, not previously provided, at the Village's expense. The employee shall be required to initial and date the items reviewed in an appropriate and identifiable place that shall not cause the item to be illegible. The employee shall have the right to respond to any item intended to be placed into his/her personnel file that is adverse to them and made a part of the file.

## ARTICLE 19
## NO STRIKE - NO LOCKOUT PROVISION

The ~~Association~~PBA will not engage in a strike or cause, instigate, encourage or condone a strike as provided in Section 210 of the Public Employees' Fair Employment Act, nor will the Village engage in, cause, instigate, condone or encourage a lockout.

## ARTICLE 20
## LABOR MANAGEMENT COMMITTEE

Section 1:

A Labor/Management Committee is herein established by the parties to provide the parties with an orderly procedure, outside the grievance procedure, to discuss matters of interest to the ~~Association~~PBA and the Village and to seek a mutually agreeable resolution to those matters.

Section 2:

~~The Association and the Village shall, within sixty (60) days of the signing of this Agreement, establish a Labor/Management Committee comprised of the Association President and two (2)~~

~~members of the Association and three (3) members appointed by the Village (of which at least one [1] member shall be a Village Board member).~~
Authorized spokespersons for the Village and the PBA, not to exceed five (5) each, shall meet at the request of either party, to discuss matters of interest to the Village and/or the PBA and to seek a mutually agreeable resolution of those matters.

The request shall be in writing, addressed to the Mayor or PBA President, at their respective addresses, and shall contain the reasons for said requested meeting. The time, date and place of the labor/management meeting shall be by mutual agreement.

Section 3:

The Committee shall meet to discuss issues concerning the Police Department, which are of interest to the Village and/or the ~~Association~~PBA and their possible mutually agreeable resolution. The ~~Association~~PBA or the Village may call meetings of the Labor/Management Committee when the need arises. The agenda for each meeting shall be exchanged between the Village and the ~~Association~~PBA at least two (2) weeks prior to the scheduled date of the Committee meeting.

~~Section 4:~~

~~The Village Board member shall act as Chairman of the Committee. The Chairman shall conduct the meetings and set the time, date and place of the meetings. The Chairman shall make a reasonable effort to make the time, date and place of meeting by the mutual agreement of the Committee members.~~

Section 4 ~~5~~:

In the event that an issue to be discussed by the Committee is a grievable issue, the time limits set forth in the grievance procedure shall be extended until the issue is reviewed and a report made by the Committee, but in no event shall such time limits be extended for more than ninety (90) days from the date that the grievable issue was referred to the Committee for possible resolution.

~~Section 6:~~

~~The Chairman shall keep, or cause to be kept, a record of the subject and conclusions of the Committee meeting and distribute a copy of such record to each member of the Committee.~~

~~Section 7:~~

~~In the event that a vote on any issue is required during the Committee meetings, all members of the Committee, including the Chairman, shall be entitled to one (1) vote.~~

## ARTICLE 21
## GRIEVANCE PROCEDURE AND ARBITRATION

**Section 1: Objective**

It is the declared objective of the parties to encourage the prompt and informal resolution of grievances as they arise and to provide recourse to orderly procedure for the satisfactory adjustment of disputes.

**Section 2: Definitions**

A. "Grievant" shall mean any person employed by the Village included in the negotiating unit hereinbefore defined or any number of such persons similarly affected by an alleged grievance.

B. "Grievance" shall mean a complaint by the Village or by an employee(s) or by the ~~Association~~PBA through its officers, that there has been a violation, misinterpretation or inequitable application of any of the provisions of this Agreement, except that the term "grievance" shall not apply to:

(i) Any matter as to which the Village is without authority to act; or

(ii) Any matter governed by a statute of the United States, State of New York or the County of Westchester.

C. "Time Limits" shall be as set forth herein, except as extended, in writing, by the mutual agreement of the parties.

D. At Step I and II of this procedure the grieved party shall, at the time of presentation of the grievance at both steps, establish timeliness by having such grievance time/date stamped at the Office of the Village Clerk or service by registered mail, return receipt, to the Village Clerk.

**STEP I - Informal Stage**

All grievances shall be presented for adjustment in writing in the first instance to the Chief of Police, provided however, that they shall be presented, if at all, within thirty (30) days from the time when the Village, an employee or the ~~Association~~PBA becomes aggrieved and a written decision thereon shall be rendered within fifteen (15) days thereafter.

**STEP II - Informal Stage**

In the event the grievance is not resolved to the satisfaction of the parties at Step I, the grievance may be presented, in writing, by the dissatisfied party to the Village Board for possible resolution

within fifteen (15) days. The Village Board, within fifteen (15) days of receipt of such grievance shall render a written decision to the aggrieved party(s) and the ~~Association~~PBA.

**STEP III - Formal Stage**

Within ten (10) days after a determination has been made at the Informal Stage, any party, if it or he/she so elects, may submit the matter to final and binding arbitration before an Arbitrator selected through the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules. The parties agree to utilize the List Only service in selecting the Arbitrator.

**STEP IV - Basic Principles**

A. An aggrieved employee, the ~~Association~~PBA and the Village shall have the right to be represented at any stage of the Dispute Procedure herein set forth by a person of his/her or its own choice.

B. All proceedings hereunder shall be confidential unless requested otherwise by the aggrieved party.

C. All decisions hereunder shall be in writing and shall set forth the facts found and conclusions reached.

## ARTICLE 22
## LEAVE OF ABSENCE

A. Leave of absence must be granted by the Board of Trustees and will not count toward accumulated eligibility time if for personal reasons.

B. Applications for leave of absence on account of sickness shall be made in duplicate by the employee of the Sleepy Hollow Police Department desiring the leave, directly to and through the Police Surgeon.

1. The Surgeon will state on the back of the application his/her reasons for approval or disapproval and forward the application to the Board of Trustees.

2. The duplicate copy will be retained on file in the office of the Police Surgeon.

C. The Chief of Police may grant a leave of absence with pay for one day to any employee of the Department in the case of serious illness in the officer's immediate family, or other extraordinary emergency, when application has been made and approval cannot be obtained in time.

D. An employee of the Department, on application to the Chief of Police, will be granted five (5) days' leave of absence with full pay in the case of death or serious illness of the employee's wife, husband, child, father, mother, brother or sister. Three (3) days' leave will be granted in the case of death or severe illness for a grandparent or in-law. The death leave described herein is intended to be available to the employee for the purpose of mourning and responsibilities incurred by the employee as a result of such death.

E. Not more than thirty (30) days' leave of absence with full pay will be granted during a calendar year, except by the Board of Trustees, in the exercise of their discretion. All leaves of absences shall be recorded in the blotter. Leaves of absences without pay, for a period of up to one (1) year, may be granted by the Board of Trustees.

F. Leaves of absences shall be granted in terms of whole days from the time of beginning the tour of duty. It carries with it permission to leave the Village on personal business. It is terminable at the discretion of the Board of Trustees or the Chief of Police. ~~or Commanding Officer.~~

## ARTICLE 23
## GENERAL MUNICIPAL LAW SECTION 207-c PROCEDURE

Section 1:

An employee shall notify the Officer on Duty as soon as possible of any injury in the performance of his/her duties or sickness as a result of the performance of duties, which necessitates medical or other lawful remedial treatment. In an emergency, an authorized representative of the employee may provide the required notice.

Section 2:

An application for General Municipal Law Section 207-c (hereafter "GML 207-c") benefits for an employee of the Department may be made by the employee, the Chief of Police or designee or some other person acting on behalf of and authorized by such employee.

Section 3:

An application shall be deemed "untimely" unless it is received by the Village Administrator within ~~ten (10) Village business~~fifteen (15) calendar days after the date of the disabling injury or sickness or within ~~ten (10) Village business~~fifteen (15) calendar days after the employee discovers, or should have discovered, the disabling injury or sickness. The Village Administrator may, in his/her discretion, excuse the failure to file the application within the ~~ten (10) Village business~~fifteen (15) calendar day period upon a showing of good cause.

In the absence of the Village Administrator, the application shall be filed with the designee of the Village Administrator.

Section 4:

The application must be made in writing on the application provided by the Village Administrator.

Section 5:

In order for an applicant's eligibility for benefits under GML 207-c to be made, an applicant may be required to: (1) attend and give testimony at reasonable times and upon reasonable notice; (2) submit to medical examinations; (3) sign forms for release of medical information with respect to the applicant; and (4) produce all books, papers, documents and other records pertaining to such injury. The information and examinations required under this procedure shall pertain to the claim of injury or illness made by the employee in the application. The applicant may submit whatever other information he/she believes is relevant to the determination of the employee's entitlement to the GML 207-c benefits.

Section 6:

Pending the determination of an application, time off taken by the applicant and alleged to be attributable to the injury or sickness which gave rise to the claim of disability shall be charged to sick leave.

Section 7:

The Village Administrator shall render a written decision on the application for benefits within a reasonable period of time after receipt of all necessary information as indicated in Section 5 above. A copy of the decision shall be mailed by certified mail, return receipt requested to the applicant at the address specified in the application and to the ~~Association~~PBA or other representative designated by the applicant. The decision may be served by personal delivery of a copy of the decision to the applicant in place of the certified mailing.

Section 8:

If the decision is that the applicant is eligible for benefits under GML 207-c, then the applicant shall be so categorized and pursuant thereto shall have, retroactively, his/her status changed from sick leave to injury leave.

Section 9:

If the decision of the Village Administrator is that the applicant is not eligible for such injury leave benefits, then at any time within ~~ten (10) Village business~~fifteen (15) calendar days of receipt of the decision, the applicant or his/her representative may serve a written demand by certified mail, return receipt requested on the ~~Village~~ Mayor for a hearing and further evaluation of the application. The demand for a hearing may be served by personal delivery of a copy of same on the Mayor in place of the certified mailing. The demand shall contain a statement of the

reasons why the applicant believes further evaluation of the application and a hearing is needed. Pending determination of the appeal, the employee shall continue on sick leave.

Section 10:

In connection with the procedures herein, a hearing officer shall be appointed by the Village Mayor and Board of Trustees. The hearing officer shall conduct a hearing on the application and shall provide the applicant and the Village a full and fair opportunity to present evidence and argument in support of their respective positions and to confront the evidence presented by the other. The rules of evidence shall not be strictly adhered to. A stenographic record of the hearing may be taken at the request of either party, in which case the cost of the record shall be shared equally by the applicant and the Village. Any fees or expenses charged by the hearing officer shall be paid by the Village.

After the close of the hearing, including the submission of any post-hearing memoranda, the hearing officer shall submit his/her recommendations to the Village Mayor within thirty (30) days setting forth the basis of such recommendation. A copy of the recommendation shall be mailed to the applicant and his/her representative, if any. The Village Mayor shall make a final and binding decision on the employee's application for GML 207-c benefits within ten (10) Village business fifteen (15) calendar days of receipt of the recommendation, setting forth the basis of the decision. A copy of the decision shall be mailed by certified mail, return receipt requested to the applicant at the address specified in the application and to the AssociationPBA or other representative designated by the applicant. The decision may be served by personal delivery of a copy of the decision to the applicant in place of the certified mailing.

The decision by the Village Mayor shall be subject to review only as provided in Article 78 of the CPLR.

**Review of Disability**

Section 11:

An individual who is receiving benefits under GML 207-c shall immediately notify the Village Administrator of a change in condition which enables him/her to return to regular duty or renders him/her available for light duty assignment. Failure to so notify the Village Administrator shall constitute grounds for terminating benefits under GML 207-c and/or for disciplinary action.

Section 12:

An employee who is receiving the benefits of GML 207-c shall be required to submit to such medical, surgical, examinations or other treatments pertaining to his/her disabling injury or illness as may be determined by the Village based on consultation with appropriate medical personnel. Failure to submit to such direction regarding medical examination or treatment shall constitute grounds for terminating benefits under GML 207-c.

Section 13:

When in the opinion of the individual's own doctor, or a physician appointed for that purpose by the Village, that an employee on injury leave is able to perform light duty, the Village Administrator may direct the employee to report for such available light duty as determined by the Chief of Police at a specified date and time by the Village Administrator mailing to the employee a notice directing the employee to report for light duty at the address provided in the application. A copy of the notice shall be mailed by certified mail, return receipt requested to the employee at the address specified in the application and to the ~~Association~~PBA or other representative designated by the employee. The employee may be served by personal delivery of a copy of the notice to the employee in place of the certified mailing.

Section 14:

If an individual receiving GML 207-c benefits refuses or fails to appear for available light duty assignment, contrary to the direction described above in Section 13, payment of the full amount of his/her regular Base Wage and Longevity shall be discontinued as of the date specified in said direction for the individual to return to work.

Section 15:

If the Village Administrator finds reasonable grounds to believe that a recipient of GML 207-c benefits is no longer or was never eligible for GML 207-c benefits, the Village Administrator shall notify the recipient of the intention to terminate said benefits, the reasons therefor and the effective date of the termination of GML 207-c benefits. The notice of termination shall be mailed by certified mail, return receipt requested to the employee at the address on file in the Police Department and to the ~~Association~~PBA or other representative designated by the employee. The employee may be served by personal delivery of a copy of the notice to the employee in place of the certified mailing.

Nothing contained herein shall be construed to limit or constitute a waiver of the Village's right to seek redress, by civil or criminal processes, for fraud and/or misrepresentation in the application for or maintaining continuing entitlement to the benefits provided by GML 207-c.

Section 16:

If the individual disagrees with the decision to terminate GML 207-c benefits, he/she may serve upon the ~~Village~~ Mayor, within ~~ten (10) Village business~~fifteen (15) calendar days after receipt of the Village Administrator's notice, a written appeal and demand for a hearing to review the determination, specifying the basis for the demand.

In connection with the proceedings herein, a hearing officer shall be appointed by the ~~Village~~ Mayor and Board of Trustees. The hearing officer shall conduct a hearing on the application and

shall provide the applicant and the Village a full and fair opportunity to present evidence and argument in support of their respective positions and to confront the evidence presented by the other. Upon such hearing, the Village shall have the burden of proof by a preponderance of the evidence that such individual is no longer or has never been eligible for GML 207-c benefits. The rules of evidence shall not be strictly adhered to. A stenographic record of the hearing may be taken at the request of either party, in which case the cost of the record shall be shared equally by the applicant and the Village. Any fees or expenses charged by the hearing officer shall be paid by the Village.

After the close of the hearing, including the submission of any post-hearing memoranda, the hearing officer shall submit his recommendations to the ~~Village~~ Mayor within thirty (30) days setting forth the basis of such recommendation. A copy of the recommendation shall be mailed to the applicant and his/her representative, if any. The ~~Village~~ Mayor shall make a final and binding decision on the employee's application for GML 207-c benefits within ~~ten (10) Village business~~ fifteen (15) calendar days of receipt of the recommendation, setting forth the basis of the decision. A copy of the decision shall be mailed by certified mail, return receipt requested to the applicant at the address specified in the application and to the ~~Association~~PBA or other representative designated by the applicant. The decision may be served by personal delivery of a copy of the decision to the applicant in place of the certified mailing.

The decision by the ~~Village~~ Mayor shall be subject to review only as provided in Article 78 of the CPLR.

## Working Conditions

Section 17:

An employee who is receiving the benefits of GML 207-c, whether unable to perform any duty or assigned to work light duty, shall not be eligible for or permitted to work overtime, absent an emergency as declared by the Chief of Police.

Section 18:

An employee who is working light duty while pursuant to GML 207-c shall not be allowed to switch work tours with another employee.

Section 19:

An employee who is receiving the benefits of GML 207-c shall not engage in outside employment. Notwithstanding the foregoing, an employee who is working light duty or who is capable of performing but not assigned by the Chief of Police to work light duty, may engage in outside employment consistent with the employee's ability to perform light duty in the Police Department. Any violation of this provision may be grounds for disciplinary action and/or termination of the employee's GML 207-c benefits.

Section 20:

An employee who is receiving the benefits of GML 207-c and not able to work or who is working light duty shall continue to be provided the health insurance benefits and coverage the employee received at the time of this disabling injury or illness, in the same manner and form as is provided to active duty employees who are provided the same coverage.

Section 21:

Any claim of violation, misapplication, or misinterpretation of the terms of this procedure shall not be subject to review under the contractual grievance arbitration procedure, but shall be subject to review only by judicial proceeding.

Section 22:

An employee who has been granted GML 207-c status and can not report to work for full pay and is out for ten (10) or more consecutive work days, may have their regularly scheduled tour of duty rotation changed by the Chief of Police or designee without the ~~ninety (90)~~ sixty (60) day minimum notice requirement, to the ~~"B" line tour of duty (~~8:00 a.m. to 4:00 p.m. tour of duty~~)~~. That employee shall continue on a four (4) consecutive days on, followed by two (2) consecutive days off rotation on the ~~"B" line~~ 8:00 a.m. to 4:00 p.m. tour of duty as set forth herein during the disability period. Upon return to full duty, that employee shall return back to ~~their~~ his/her regular scheduled tour of duty and rotation as if he/she were not removed and receive a minimum of fifty-six (56) hours off before returning to that tour of duty. In addition, ~~their~~ his/her return to ~~their~~ his/her regularly scheduled tour of duty shall not require the minimum ~~ninety (90)~~ sixty (60) day notice.

The Application for GML 207-c Disability Benefits, Medical Records Release Form and General Description of Light Duty are attached as Appendix "~~B~~A" hereto and made a part of this Agreement.

## ARTICLE 24
## UNIT WORK

Section 1:

Non-bargaining unit personnel may be assigned to the desk during police department meetings at which every employee of the department is required to attend provided, however, that such non-bargaining unit personnel shall not undertake dispatching duties unless directed to do so by an employee. The performance of such duties by non-bargaining unit personnel during department staff meetings shall not be used as precedent to defeat a claim of exclusivity by the ~~Association~~PBA to such work.

Section 2:

The Chief of Police shall not assign himself or be assigned by the Village to a regularly scheduled patrol tour and/or desk duty provided, however, that the Chief of Police may temporarily perform such duties where exigent circumstances exist. Upon learning of such exigent circumstances, the Chief of Police shall, as soon as possible, attempt to obtain sufficient bargaining unit personnel necessary to resolve the situation. Upon arrival of said bargaining unit personnel, the Chief of Police shall cease functioning in such capacity.

Section 3:

The performance of such work by the Chief of Police during such exigent circumstances shall not be used as precedent to defeat a claim of exclusivity by the ~~Association~~PBA to such work.

## ARTICLE 25
## JURY DUTY LEAVE

In the event an employee is noticed to appear for Jury Duty, and that employee is scheduled to work that calendar day, he/she will be released from that scheduled tour of duty with pay and without charge to any other paid leave accrual to fulfill his/her jury duty. The employee must, however, provide the Chief of Police with a copy of the Jury Duty notice upon receipt.

The employee shall use the "call-in" system if available. If he/she is not required to report for Jury Duty, he/she shall report for his/her regularly scheduled tour of duty.

All Jury Duty fees paid to the employee shall be endorsed over to the Village when the employee is released from work to perform Jury Duty. In the event an employee is scheduled to be off that day, the employee shall retain the fees. However, any mileage, tolls, parking and any other reimbursements paid for appearing at Jury Duty, shall be retained by the employee.

At the completion of Jury Duty, the employee shall provide the Chief of Police a record of attendance if made available by the Court.

## ARTICLE 26
## BI-WEEKLY PAY PERIOD

All employees are currently paid every week, with the payroll check issued on that Thursday and dated for that Friday. The parties agree to implement a bi-weekly pay period, with no lag, which shall be paid and issued on that Thursday and dated for that Friday of every other Friday, to be implemented as follows:

All employees shall receive their regular weekly paycheck until March 2, 2007 when retroactivity will be paid. At that time, instead of the employee receiving his/her regular weekly paycheck as set forth above, he/she shall be paid his/her retroactivity pay that week with that current weekly pay being withheld. The next pay period shall be two (2) weeks from the date in which

retroactivity was paid, and every two (2) weeks thereafter as set forth above. That pay period shall include the employee's weekly pay withheld when the retroactivity was paid, as well as the current week's pay for a total of two (2) weeks' pay.

## ARTICLE 27
## EMERGENCY MEDICAL TECHNICIAN COMPENSATION

Effective June 1, 2007, any employee who is certified and maintains his/her certification by the New York State Emergency Medical Services Council as an Emergency Medical Technician (EMT) shall be paid, in addition to his/her Base Wage and Longevity pay, the EMT payment below, which shall be in equal payments in each pay period, to be included in the overtime rate calculation. The EMT payment shall start with the pay period the Chief of Police is provided with a copy of the certification and/or re-certification. The EMT payment is as follows:

| | 6/1/07 | 6/1/08 | 6/1/09 |
|---|---|---|---|
| | +$2,000.00 | +$2,050.00 | +$2,100.00 |

In the event an employee fails to maintain certification, the additional EMT payment shall cease the pay period the date the certification expires.

The Village shall not be required to provide training to any employee for the purpose of obtaining and maintaining Emergency Medical Technician (EMT) status. However, in the event the Village does provide the training for or re-certification to maintain Emergency Medical Technician (EMT) status, that employee(s) shall be paid pursuant to Article 5 – Overtime for all hours, or any part thereof, when not sent to this training during his/her regularly scheduled eight (8) hour tour of duty.

## ARTICLE 28
## SUBSTANCE ABUSE AND ALCOHOL TESTING PROCEDURE

Effective June 1, 2007, the parties agree to the following Substance Abuse and Alcohol Testing Procedure:

**Section 1: Statement of Policy**

The Village and the PBA recognize that the use and possession of ~~intoxicating~~ alcohol and/or controlled substances (hereinafter referred to as substance abuse) in the work place constitutes a serious threat to the health and safety of all employees. The Village and the PBA are desirous of maintaining a safe, healthy and productive work environment for all employees. To that end, the PBA recognizes the Village's interest in promulgating a written policy regarding the illegal use and possession of intoxicants and controlled substances by employees.

**Section 2: Treatment/Employee Assistance Program**

The Village and the PBA recognize that an effective rehabilitative services program is a crucial component of the substance abuse policy. Employees with substance abuse problems are strongly encouraged to voluntarily seek self-help through a rehabilitative service/program ("program"). A program shall be under the direction of a licensed physician or licensed or certified psychologist, social worker or addiction counselor certified by the National Association of Alcoholism and Drug Abuse Counseling Certification Commissioner with clinical experience in the diagnosis and treatment of alcohol and prohibited drug related disorders (SAP). Employees with substance abuse problems who do not voluntarily seek the assistance of a program in accordance with the terms of this Policy, or are found in violation of this Policy, shall be subject to discipline to the fullest extent permissible pursuant to the disciplinary procedure. Employees with substance abuse problems who voluntarily participate in the program, or those employees who are referred to the program through the disciplinary procedure, shall be subject to the conditions as set forth below.

The Village recognizes that a program handles many problems in addition to that of substance abuse. The relationship between the employee and a program is, and continues to be, of a confidential nature except as specifically provided herein.

**Section 3: Voluntary Referral**

A. Employees Assistance Program

Employees who voluntarily seek treatment for substance abuse in a program shall notify either the Mayor, the PBA or the program of their desire to participate in the program. In the event the employee notifies the PBA or the program, the PBA or the program shall immediately notify and meet with the Mayor. If the employee notifies the Mayor, the Mayor shall notify the PBA or the program selected by the employee who shall immediately meet with the Mayor. At this meeting the following items will be discussed and agreed to.

B. Conditions

The employee, the Mayor, the PBA and the program shall sign an agreement accepting the terms and conditions under which the employee may participate in the program. The agreement shall state the length and type of treatment and the employee's obligation to follow the requirements of the program. In addition, the employee shall indicate his/her understanding and agreement to the release of information to the PBA, the Mayor and program regarding his/her participation in the program. The agreement and information concerning the employee's participation in the program shall be confidential and maintained in a manner to restrict access only to the employee, the Mayor, the PBA and the program. Annexed to this Agreement as Appendix "B" is the Form Agreement containing four (4) pages, which shall be used for this purpose.

C. Civil Service Status

In the event the employee is serving in his/her probationary period, the employee shall agree in writing to hold in abeyance the remainder of such probationary period until the employee returns to full duty. For employees who are serving in their probationary period, the Form Agreement annexed to this agreement as Appendix "C" shall apply which contains three (3) pages. Conditions for leave of absence and continued tenure with the Village may vary depending on the civil service status of the employee, i.e. provisional, etc.

D. Pay Status

During the time of attendance in a program and until such time as the SAP advises the Village that the employee may return to work, the employee may use accumulated sick leave; and upon exhaustion of sick leave the employee may use accumulated personal and vacation leave. Upon exhaustion of any time balances the employee may have, the employee shall be placed on an unpaid leave of absence for the duration time in facility treatment.

E. Release of Medical Information

The SAP shall provide the Mayor on a periodic basis, or at the request of the Employee or SAP, the following information concerning the employee's progress in the program:

- The nature and duration of the in-facility treatment;
- The nature and duration of outpatient treatment;
- Progress reports as to the employee's status in the program.

This information is confidential and shall be released by the SAP only to the Mayor and representatives designated by the employee.

F. Return to Work Following Inpatient Treatment

Upon the employee's return to work, the SAP shall provide the Mayor and the PBA representative with information concerning the nature of the employee's outpatient treatment including date, time and location of required attendance in an outpatient treatment program. In the event the employee violates the rules and procedures of the program, including by way of example but not limitation, testing positive in a drug screening conducted pursuant to such rules and procedures of the program, the SAP shall notify the Mayor and the representatives of the PBA of such violation. Thereafter, the SAP, the PBA, the employee and the Mayor shall all discuss and agree on additional treatment for the employee or other action as may be required.

**Section 4: Discipline**

A. Performance Problems/Misconduct

An employee who commits an act of misconduct or whose work performance is unsatisfactory is subject to discipline. Disciplinary actions shall be conducted as provided in the disciplinary procedure. Employee participation in a program does not preclude the imposition of disciplinary penalty, if appropriate.

B. Employee Admits Problem with Substance Abuse

If during the disciplinary process prior to imposition of penalty, the employee voluntarily admits to a substance abuse problem and to the misconduct or unsatisfactory work performance alleged, the employee shall be referred to a program for treatment. The disciplinary penalty for the misconduct or unsatisfactory work performance may be held in abeyance pending completion of treatment or, if appropriate, may be imposed. If the employee does not admit to the alleged misconduct or unsatisfactory work performance, the disciplinary matter shall be decided pursuant to the disciplinary procedure and the disciplinary penalty, if any, shall be imposed.

The rights of the employee, the Village and the PBA with regard to disciplinary action shall be as provided in the contractual disciplinary procedure and nothing contained in this policy and procedure shall be construed to affect those rights.

C. Referral to Program

Upon referral to a program, the employee, the Mayor and the PBA and the SAP, shall sign an agreement accepting the terms and conditions of the program. The agreement shall state the length and type of treatment, the employee's obligation to follow the requirements for the program, and that the employee shall be subject to disciplinary action for failure to adhere to the program. In addition, the employee shall indicate his/her understanding and agreement to release of information to the Mayor and the PBA regarding his/her participation in the program. The agreement and information concerning the employee's participation in the program shall be confidential and maintained in a manner to restrict access only to the employee, the Mayor and the PBA. Annexed to this Agreement as Appendix "D" is the Form Agreement containing three (3) pages, which shall be used for this purpose.

During the time of attendance in treatment, the employee may use accumulated sick leave; and upon exhaustion of sick leave, the employee may use accumulated personal and vacation leave. Upon exhaustion of time balances the employee may have, the employee shall be placed on an unpaid leave of absence for the duration of treatment.

D. Return to Work Following Inpatient Treatment

Upon returning to work, the SAP shall provide the Mayor and PBA with information concerning the nature of the employee's outpatient treatment including date, time and location of required attendance in an outpatient treatment program. In the event the employee tests positive in a drug screening conducted pursuant to the rules and procedures of the program, the SAP shall notify the Mayor and the PBA of such positive test result. Thereafter, the SAP, the PBA, the employee and the Mayor shall discuss and agree on additional treatment for the employee or other action as may be required.

**Section 5: Drug Testing**

If an employee while on duty exhibits a physical condition, conduct or pattern of erratic behavior which indicates that the employee is under the influence of an intoxicating substance, and the employee's supervisor, who is qualified pursuant to D.O.T. Regulations, has reasonable cause to believe, based on direct observation of the employee's conduct, performance or behavior, that the employee is under the influence of an intoxicating substance, or if the supervisor is provided with information from a reliable and credible source which is independently corroborated that the employee is engaging in use of or is under the influence of intoxicating substances while on duty, or that the employee is engaging in illegal use, possession, distribution or sale of a controlled substance or drug on duty, the supervisor shall meet with the employee and give the employee an opportunity to explain the conduct, performance and behavior. If the employee does not indicate a problem with substance abuse and the supervisor believes, based on reasonable cause, that the employee is under the influence of an intoxicating substance, the supervisor shall immediately make a written report to the Mayor setting forth the available facts that objectively indicate that reasonable suspicion exists that test of the employee would yield a positive result for the misuse of alcohol or prohibited drugs, and as soon as practicable after an order to test is given, without causing an undo delay in the testing process, the Village shall document the facts contributing to and forming the basis for the reasonable suspicion. These facts shall include, but not be limited to: (1) a description of the employee's appearance, behavior and speech; (2) names of witnesses to the employee's appearance, behavior and speech, where practicable; (3) if the employee's appearance, behavior or speech is not the basis for testing, the facts used to support a determination of reasonable suspicion and the source of the information. A written memorandum setting forth the basis of the reasonable suspicion shall be provided to the affected employee within twenty-four (24) hours of the test decision. The details of any dealings with the employee concerning his/her conduct, performance or behavior shall be included in a written report to the Mayor from the supervisor. The Mayor shall decide after review and consultation on the report, whether there is reason to investigate for purposes of ascertaining if available facts objectively indicate reasonable suspicion exists to pursue the inquiry. This may include meeting with the employee for purposes of providing the employee an opportunity to explain his/her conduct, performance or behavior. In the event such a meeting is held, the employee may request that a PBA representative and/or legal counsel attend the meeting, but in no event shall the meeting be delayed for more than two (2)

hours to accommodate the request. The investigation of the employee's behavior shall be confidential with due consideration for the dignity and privacy of the employee.

Where reasonable suspicion is based on observations by a confidential informant, defined as an employee or agent of a governmental law enforcement or the Village, the identity of the source shall not be disclosed, except for the name of the governmental agency involved. The Village shall not be required to reveal the identity of a confidential informant in any proceeding, nor can evidence supplied by a confidential informant be suppressed because of refusal to identify the name of the source.

A direction to an employee to submit to drug or alcohol testing shall not be based solely on information provided by a confidential informant.

If the Mayor decides that the employee should be referred for drug or alcohol testing, the following procedure shall be followed:

(a) The employee shall be ordered to immediately submit to a drug and/or alcohol test and at the same time the employee shall be given the written statement of the basis for reasonable suspicion. Refusal to submit to the test or to cooperate during the testing procedure shall constitute grounds for disciplinary action.

(b) If the employee is ordered to submit to a test based on reasonable suspicion, the employee will be advised of the right to have a PBA representative present for collection of the sample, but in no event shall collection be delayed for more than two (2) hours to accommodate the presence of a PBA official.

(c) Disputes concerning the matter of reasonable suspicion to order a test will be referred to the contractual disciplinary review procedure in connection with charges preferred against the employee.

(d) Tests for prohibited drugs shall be conducted only by urinalysis and shall be performed only by Department of Health and Human Services certified laboratories. The employee(s) shall be transported to the testing site. The employee shall provide a sufficient amount of the sample to allow for an initial screening, a confirmatory test, and for later testing if requested by the employee. In the event an insufficient sample is provided, the employee's ability to have a second test performed may be adversely impacted.

(e) A specimen may be tested only for cocaine, marijuana, opiates, amphetamines and phencyclidine. A specimen may not be used to conduct any other analysis or test except as hereinafter described.

(f) The specimen will be sent to a laboratory certified by the Department of Health and Human Services and tested for the substances set forth in (ii).

(g) An employee shall be paid for all time pertaining to a drug test including providing a urine sample and travel time to and from the collection site in the event the test is negative. Such time shall be considered as time worked for the purpose of calculating overtime and employee benefits. If an employee tests positive for prohibited drugs following a reasonable suspicion test, the Village shall not be obligated to pay the employee beyond the regular hours of work.

(h) All drug testing shall be conducted during an employee's regularly scheduled work hours or the two (2) hours immediately preceding or subsequent to a regularly scheduled tour of duty. The payment of overtime shall be as set forth in ~~(iv)~~ (g) above. The Village reserves the right to have the drug test conducted at a certified hospital emergency room in the event the laboratory used is not open for business.

(i) Each drug test shall be reviewed by a Medical Review Officer (MRO) designated by the laboratory to ensure compliance with all procedures, as well as all Federal Regulations, including the validity of the test.

During the course of the collection process, the employee shall cooperate with requests for information concerning use of medications and acknowledgment of giving of the specimen.

(j) There shall be no direct observation of giving of a urine sample unless there is reason to believe that the sample may be tampered with, in which event direct observation shall be made by a person of the same gender as the employee giving the sample.

(k) In the case of urine, the sample given shall be divided into two aliquot. The sample will be given to a monitor who will mark and seal each sample to preserve the chain of custody of the samples. Thereafter, the samples shall be transported to the testing laboratory in a manner, which shall insure the integrity and chain of custody of each sample.

(l) Both samples shall be delivered to a laboratory selected by the Village which shall be duly licensed or certified for drug testing purposes by the NIDA. One sample shall be used for purposes of testing by the laboratory and the second sample shall be maintained by the laboratory in accordance with recognized procedures for purposes hereafter described.

(m) The designated laboratory shall initially perform the enzyme multiplied immunoassay test (EMIT) on the sample for the presence of drugs or controlled substances. A sample which tests positive shall be retested by the laboratory using the gas chromatography mass spectroscopy test (GC-MS). A test shall be deemed positive for the presence of drugs in accordance with standards issued by the NIDA.

(n) In the event the confirmatory GC-MS test result is negative, then the sample shall be deemed negative for the presence of prohibited substances and no report shall be made to the Mayor or to the employee on the test results and the existence of test or its results shall not be used in any manner in any proceeding between the Village and the employee. If the

confirmatory GC-MS test result is positive, the laboratory shall provide copies of the test results to the Mayor, the employee, the PBA and the employee's representative.

(o) In the event the employee is ordered to submit to a test for the presence of alcohol, the employee shall submit to a breathalyzer test to be administered by an agent designated by the Mayor.

(i) Tests for alcohol shall only be conducted by a breath alcohol technician using a Datamaster breath-testing device. Such device shall be approved by the National Highway Traffic Safety Administration and placed on the Conforming Products List of Evidential Breath Measurement Device.

(ii) A department supervisor who has not observed or witnessed the alleged violation will administer the alcohol test using the Datamaster device. The supervisor shall be certified to use and operate a Datamaster device.

(iii) The person designated to make the determination of reasonable suspicion shall not administer the test.

(iv) An employee shall be paid for all time pertaining to an alcohol test including providing a breath sample and travel time to and form the test site. Such time shall be considered as time worked for the purpose of computing overtime and employee benefits.

(v) Tests for alcohol shall only be conducted during an employee's regularly scheduled work hours.

**Section 6: Employee Request for Retesting**

(a) After collection and testing, both samples shall be maintained by the Village's designated laboratory in accordance with appropriate procedures for a period of time to be agreed to by the parties.

(b) After the employee receives notice of a confirmed positive test from the Village's laboratory, the employee may make written request within seventy-two (72) hours to the Village's designated laboratory for a test of the second sample. The employee may request that the second sample be sent to a laboratory selected by the employee which shall be duly licensed or certified for drug testing purposes by the NIDA. The selected laboratory shall be responsible for pick-up and transport of the sample, and it shall insure chain of custody. The employee shall be responsible for all costs associated with the second test and shall make arrangements for payment with the selected lab. The second test for confirmation of the first positive result shall be deemed positive for the presence of intoxicating substances in accordance with standards issued by the NIDA. The results of the second test shall be sent to the Mayor, the employee, the PBA and the employee's representative.

**Section 7: Continuation of Disciplinary Procedure**

If the results of the two (2) tests administered, as referred to in Section 5 above, are positive for the presence of a prohibited substance, the employee shall be subject to discipline, which may include termination when legally permissible. Regardless of the test results, the employee may also be subject to disciplinary action for the misconduct or unsatisfactory work performance for which the employee was originally called before the supervisor.

**Section 8: Mandatory Testing Following Work place Accident**

Any employee who is involved in a police vehicle accident which results in personal injury to an employee or citizen that requires immediate hospital attention may be required to submit to a mandatory drug test as provided in this procedure. Refusal on the part of the employee to submit to the drug test shall be considered as misconduct and shall subject the employee to disciplinary action.

**Section 9: Failure to Follow Program Conditions**

A. Originally Voluntarily Self-Referral

If the employee was a voluntary self-referral pursuant to Section 3 above and the employee violates any of the original or subsequent conditions set forth in the program agreement, or if the employee tests positive in a prohibited substance screen conducted by the program, or if the employee voluntarily admits a violation of the program conditions, the SAP shall provide the Mayor, the employee and the PBA with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. In the event the employee is required to undergo additional inpatient treatment, the employee may use accumulated sick leave; and upon exhaustion of sick leave, the employee may use accumulated personal and vacation leave. Upon exhaustion of leave time balances or in the event the employee has no accumulated leave time, the employee shall be placed on an unpaid leave of absence pursuant to Section 73 of the Civil Service Law for the period required for inpatient treatment, but not in excess of one (1) year.

The Agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee.

B. Original Disciplinary Referral

(1) Voluntarily Admits Violation of Program Conditions

If the employee was originally referred to the program as a result of a disciplinary action taken as provided in subsection 4 above and the employee voluntarily admits to violation of any of the original or subsequent conditions set forth in the program Agreement, the SAP shall provide the Mayor, the employee and the PBA with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. The Mayor shall review the disciplinary penalty being held in abeyance and may implement such penalty in full or in part, or take other action the Village deems necessary. If the employee is permitted to undergo additional inpatient treatment, the employee may use accumulated sick leave, and upon exhaustion of sick leave, the employee may use accumulated personal and vacation leave. Upon exhaustion of leave time balances or in the event the employee has no accumulated leave time, the employee shall be placed on an unpaid leave of absence pursuant to Section 73 of the Civil Service Law for a minimum period required for treatment, but not in excess of one (1) year. The program agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee.

(2) Violation of Program Condition not Voluntarily Disclosed

If the employee was originally referred to a program as a result of a disciplinary action taken as provided in Section 4 above, and the employee violates any of the original or subsequent conditions set forth in the Program Agreement, or if the employee tests positive in a drug screening conducted by the program, the SAP shall provide the Mayor, the PBA and the employee with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. The Village shall review the disciplinary penalty being held in abeyance and shall implement such penalty in full or in part, or take other action the Village deems necessary. If the employee is permitted to undergo additional inpatient treatment, the employee shall be placed on an unpaid leave of absence pursuant to Section 73 of the Civil Service law for a minimum period required for in patient treatment, but not in excess of one (1) year.

The Program Agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee.

C. Discovery of Failure to Follow Program Conditions in a Subsequent Disciplinary Matter

Employees who are in a program voluntarily or as the result of a disciplinary matter who engage in misconduct or poor work performance and/or are discovered to have violated program conditions shall be subject to the disciplinary process for the misconduct or poor work performance and/or violation of the program conditions.

**Section 10: Third Request for Treatment**

An employee who is found, by voluntary admission or testing, to be under the influence of an intoxicating substance after two (2) prior opportunities for treatment may be subject to termination.

subject to the contractual disciplinary procedure, or be given an opportunity to resign his/her position. There is no requirement that the Village to allow treatment to an employee for substance abuse after two (2) prior treatment opportunities.

**Section 11: Random Alcohol and Drug Testing**

A. Random Alcohol Tests: The Village shall not administer random alcohol testing to more than 40% of the employees annually covered by the collective bargaining agreement.

PBA Observation: During random tests, the PBA shall be afforded an opportunity to be present to observe the testing, subject to the consent of the individual to be tested. Reasonable efforts shall be made to contact the PBA representative of the employee being tested and to give such representative the opportunity to accompany an employee throughout the testing process if requested by the employee. The PBA representative shall have thirty (30) minutes to respond to the testing location from the time contacted, at which time the testing shall begin.

Selection of Employees: The Village shall select employees for testing only through a computer-based random number generator utilizing an appropriate employee identification number. Upon request, the Village shall provide the PBA with a list of all employees tested, as well as the computer-generated list, so the PBA can verify the randomness.

Limitations: No employee shall be subject to random alcohol testing more than two (2) times in any twelve (12) month period.

B. Random Drug Tests: The Village shall administer random drug testing to more than 33.3% of the employees annually covered by the collective bargaining agreement.

PBA Observation: During random tests, the PBA shall be afforded an opportunity to be present to observe the testing, subject to the consent of the individual to be tested. Reasonable efforts shall be made to contact the PBA representative of the employee being tested and to give such representative the opportunity to accompany an employee throughout the testing process if requested by the employee. The PBA representative shall have thirty (30) minutes to respond to the testing location from the time contacted, at which time the testing shall begin.

Selection of Employees: The Village shall select employees for testing only through a computer-based random number generator utilizing an appropriate employee identification number. Upon request, the Village shall provide the PBA with a list of all employees tested, as well as the computer-generated list, so the PBA can verify the randomness.

Limitations: No employee shall be subject to random alcohol testing more than two (2) times in any twelve (12) month period.

**Section 12: Review of Policy and Procedure**

The Village and the PBA agree to meet periodically to review, and if appropriate agree to amend this procedure to insure that it remains consistent with current State and Federal law.

**Section 13:** The Mayor may designate a qualified supervisor to assume the administration of this Policy. A qualified supervisor must meet the following training requirements set forth in §382.603 of DOT regulations: At least 60 minutes of training on alcohol misuse and receive at least an additional 60 minutes of training on controlled substances use. The training shall include the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances.

## ARTICLE 29
## PERFORMANCE EVALUATIONS

Effective June 1, 2007, the Village may implement the performance evaluation attached hereto as Appendix "E" and made a part of this Agreement. The purpose of this process is to evaluate the employee's performance during the specific time period set forth herein. The rater(s) shall complete the attached performance evaluation based on objective observations of the employee, which is to be supported by written documentation, such as memo book entries, written communications, notes, recorded statistical data, and the like. The rater(s) shall be prepared to support the evaluation through documentation. This is the standard to be applied for all parts of the performance evaluation. The rater(s) shall be required to sign and date each area. The ratee shall be required to sign and date the performance evaluation on the appropriate page. The ratee's signature shall only acknowledge that he/she has participated in the conference to review the performance evaluation with the rater(s). The ratee shall be entitled to provide any written comments at the time of the review regarding the performance evaluation. An employee dissatisfied with his/her evaluation of any specific criteria, shall have the right to file an appeal objecting to that evaluation with the Chief of Police within seven (7) calendar days after the performance evaluation review. The appeal shall be in writing and specify the section(s) of the performance evaluation he/she is dissatisfied with and objecting to. If the employee is dissatisfied with the overall score, he/she shall indicate this on the written appeal. The Chief of Police shall conduct a meeting with the employee appealing and the employee's PBA representative within fifteen (15) calendar days of receipt of the appeal. The Chief of Police shall issue his/her written determination of the employee's appeal within seven (7) calendar days after the meeting with the employee and his/her PBA representative. An employee dissatisfied with any part of the Chief of Police's determination of his/her appeal may elect to file a grievance pursuant to Article 21 – Grievance Procedure and Arbitration of this Agreement. For the purposes of this procedure, the grievance shall be filed directly with the Village Board at Step II, and render its written decision on the grievance as set forth therein. If the employee is dissatisfied with any part of the decision of the Village Board, he/she may proceed to arbitration pursuant to Article 21 – Grievance Procedure and Arbitration of this Agreement. At the arbitration, the Village shall have the burden of proof to establish that the performance evaluation of the employee in each criteria which has been appealed is supported by substantial evidence.

Performance evaluations shall be done two (2) times each year, once in the month of June and once in the month of December each year.

Every supervisor, which shall be a Sergeant and/or Lieutenant, who has supervised an employee for at least thirty (30) work days within an evaluation period, shall submit a performance evaluation of the employee. If more than one supervisor, as defined herein, has supervised an employee for at least thirty (30) work days in the performance evaluation period, the evaluations of the supervisors shall be weighted in arriving at the employee's rating.

A score of 1 to 2.49 will be considered "below standard." A score of 2.5 to 3.24 will be considered to "meets standards." A score of 3.25 and above will be considered to "exceed standards."

The performance evaluation of a subordinate by any supervisor who has not received a total evaluation of at least "3.0" shall be considered null and void and the subordinate employee shall be considered as "meets standards" for the evaluation period in question. The performance evaluation of a subordinate by any supervisor who has not received a total evaluation of at least "2.75" in the specific performance criteria shall be considered null and void and the subordinate employee's score in that specific criteria shall be deemed as "meets standards" for that evaluation period.

No performance evaluation, in part or in whole, may be used for disciplinary charges, or as evidence in any disciplinary proceeding.

Employees who receive "meets standards" on their performance evaluation shall receive an additional one (1) day paid vacation for use within one (1) year of the date of that evaluation. Employees who receive "exceeds standards" on their performance evaluation shall receive an additional three (3) days paid vacation for use within one (1) year of the date of that evaluation. Employees who receive two (2) consecutive "exceeds standards" shall receive, in addition to any of the aforementioned vacation days, an additional two (2) days of vacation for each additional consecutive "exceeds standards."

## ARTICLE 30
## CANINE UNIT

**Section 1** – Effective March 7, 2005, the Chief of Police shall retain the sole discretion to select the dog(s), and employee(s) who will serve as dog handler(s) in the K-9 unit from employees represented by the PBA. Without limiting the sole discretion of the Chief of Police, the Village agrees that volunteers will be canvassed for consideration and assignment to the K-9 unit. The Chief of Police shall post any opening(s) or vacancy(ies) in the K-9 unit for at least fourteen (14) calendar days prior to any interview in order to provide time for volunteers who are interested to submit their requests to the Chief of Police. All volunteers shall receive an interview.

**Section 2** - A member of the K-9 unit shall commit to serving as the K-9 officer for a minimum period of four (4) years after completion of the initial training. The employee(s) assigned to the K-9 unit shall remain eligible during this minimum period for all promotions. If promoted (i.e., to Detective or Sergeant), he/she shall be removed from the K-9 assignment. The K-9 officer shall advise the Chief of Police at least one (1) one year prior to the end of the minimum period set forth herein whether he/she agrees to continue as a member of the K-9 unit for an additional two (2) years. Thereafter, the K-9 officer shall advise the Chief of Police at least one (1) year prior to the end of his/her two (2) year commitment that he/she agrees to continue as a member of the K-9 Unit for an additional two (2) years.

**Section 3** - The Chief of Police shall have the sole discretion to relieve a K-9 officer at any time:

(a) should the affected employee violate the Manual or Department's Rules and Regulations;

(b) should the affected employee perform the assignment unsatisfactorily;

(c) upon the request from the employee(s) due to personal exigent circumstances; or

(d) should the K-9 unit be disbanded, or the size of the K-9 unit be reduced.

No due process or contractual grievance rights shall be afforded prior to the removal from this assignment. However, should the employee be removed, he/she shall be paid the guaranteed overtime set forth in Section 4(b) for the entire pay period in which the removal from the K-9 assignment occurred. If the employee resigns as K-9 officer, no overtime payment for K-9 related responsibilities shall be owed beyond the period that he/she worked as a K-9 officer.

**Section 4** - While an employee is assigned to the K-9 unit, he/she will be governed by and entitled to the following:

a. Transportation time to and from a K-9 officer's residence shall be included within his/her regularly scheduled tour of duty, provided the employee lives within the Village's jurisdiction. If the employee moves outside the Village's jurisdiction, then the time spent commuting from the employee's residence to the Village boundary line shall not be compensable. The times set for "tours of duty" in ~~the current~~ this Agreement and in any succeeding Agreement shall apply to K-9 officer(s), who shall be "in fact, ready for duty" when they leave their residences at the beginning of a tour of duty and until they return to their residences after a completion of a tour of duty. K-9 officer(s) shall report in by radio to the central dispatcher of the police department upon leaving their residence for a regularly scheduled tour of duty and report out similarly upon arriving at their residence following a regularly scheduled tour of duty and shall perform regular patrol duties within the Village during transport to and from regular tour of duty.

b. Employees assigned to the K-9 unit shall be paid three (3) hours per week of overtime payable at the rate of time and one half (1.5X) their regular rate of pay in recognition of "off duty" police related activities with or concerning the police dog(s), such as training and the care and maintenance of their assigned police dog(s), and cleaning and maintaining the areas and equipment at which the police dog(s) are housed. Employees assigned to the K-9 unit shall not train their assigned police dog(s), wash or clean the K-9 police car(s), nor perform any other police-related activities with or concerning the police dog(s) on "off duty" time in excess of three (3) hours per week without specific permission of the Chief of Police, or designee. The Village shall provide for all required and necessary training of the dog(s) and characterize same as "on duty time".

c. Regular and/or required veterinary services for the police dog(s) shall be scheduled during work hours to the extent practical. In that event, the K-9 officer shall be relieved from his/her tour of duty for the time required to fulfill this requirement. Thereafter, the K-9 officer shall report back to work and finish his/her tour of duty. The K-9 officer shall not schedule veterinary services at times other than when he/she is scheduled "on duty" without approval of the Chief of Police or designee, except in emergencies. In that event, the K-9 officer shall be paid overtime pursuant to the contract between the Village and PBA.

d. In the event a K-9 officer(s) is "called in" while off duty, he/she shall be compensated pursuant to ~~the Agreement between the Village and the PBA.~~Article 5 – Overtime of this Agreement.

e. Except to the extent herein, the K-9 officer shall be entitled to all other terms and conditions of employment pursuant to ~~the~~ this Agreement ~~between the Village and the PBA~~. This shall include the fact that paid leave (i.e., sick leave, personal leave, etc.) shall constitute time worked for purposes of computing overtime.

**Section 5** - The following expenses associated with the K-9 unit shall be provided by the Village at no cost:

a. The purchasing of the dog(s).

b. A marked take home police vehicle for transporting the police dog(s), which shall remain the property of the Village. The police vehicle shall contain a cage for the dog(s).

c. A chain link fence for enclosing an area for the dog(s) to live at the K-9 officer's residence, which, if feasible, shall remain the property of the Village.

d. A "dog house," which shall remain the property of the Village.

e. Alternate kennel arrangements for housing the dog(s) when the K-9 officer is unavailable, or as otherwise becomes necessary (i.e., vacation, illness, etc.).

f. All veterinary service(s) and related expenses for the care of the dog(s) which shall receive the prior approval of the Chief of Police or designee.

g. All necessary and required equipment which shall receive the prior approval of the Chief of Police or designee.

h. All dog food.

**Section 6** - The Village and the PBA agree that the employee(s) assigned to the K-9 unit shall be considered "on duty" for the purposes of receiving General Municipal Law Section 207-c status, and applying to the New York State Police and Fire Retirement System, with respect to becoming disabled whenever that employee is performing tasks necessary and reasonable involving the training, care and maintenance of the dog(s), regardless of where or when these tasks are performed.

**Section 7** - The Village will defend and indemnify each employee assigned to the K-9 unit for any injuries or damages caused by their dog(s) which occur or are claimed to have occurred in the performance of their duty during the period in which such employees are or were assigned to the K-9 unit.

**Section 8** - All dogs purchased and provided to the K-9 unit shall remain the property of the Village until the retirement of the dog(s) from the K-9 unit. At that time, the K-9 officer assigned to that dog(s) shall be offered the opportunity to purchase the dog(s) from the Village for the sum of one dollar ($1.00), and if purchased, shall become owner of the dog(s).

## ARTICLE ~~25~~31
## TAYLOR LAW NOTICE

**"IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR PROVIDING THE ADDITIONAL FUNDS THEREFORE, SHALL NOT BECOME EFFECTIVE UNTIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL."**

## ARTICLE ~~26~~32
## TERM OF AGREEMENT

This **AGREEMENT** shall be effective as of June 1, ~~1998~~2004, and will continue until May 31, ~~2002~~2010.

**VILLAGE OF SLEEPY HOLLOW**

______________________________ __________________

By: Philip E. Zegarelli, Mayor Date

~~**NORTH TARRYTOWN POLICE BENEVOLENT ASSOCIATION, INC.**~~
**SLEEPY HOLLOW POLICE BENEVOLENT ASSOCIATION, INC.**

______________________________ __________________

By: ~~Bobby Checchi~~Anthony Bueti, President Date

APPENDIX "A"

PREVIOUS PRACTICE

## APPENDIX "~~B~~A"

## SAMPLE COPY

## VILLAGE OF SLEEPY HOLLOW
## POLICE DEPARTMENT

## APPLICATION FOR
## GENERAL MUNICIPAL LAW SECTION 207-c
## DISABILITY BENEFITS

Name of Applicant: ______________________________ Date: ____________

Name of Party Submitting Application: ______________________ Date: ____________

I HEREBY APPLY FOR BENEFITS UNDER GENERAL MUNICIPAL LAW SECTION 207-c BASED ON THE FOLLOWING:

A) Injury Sustained in the Performance of Duty:

*(In the space provided or on additional sheets if necessary, set forth to the best of your ability information about the injury including the date, time and place where the injury occurred; include the name and rank of other employees who may have witnessed the incident; a brief description of the nature and extent of the injury; and list the name and address of medical care providers (including hospitals) who may have treated you to date. Attach any available documents with information relevant to the injury.)*

B) Sickness As a Result of the Performance of Duty

*(In the space provided or on additional sheets if necessary, set forth to the best of your ability information about the sickness including the date, time and place where the sickness in performance of duty occurred; include the name and rank of other employees who may have witnessed the incident; a brief description of the nature and extent of the sickness; list the name and address of medical care providers (including hospitals) who may have treated you to date. Attach any available documents with information relevant to the sickness).*

I SUBMIT THIS APPLICATION PURSUANT TO THE POLICY AND PROCEDURE GOVERNING THE APPLICATION FOR AND THE AWARD OF BENEFITS UNDER SECTION 207-c OF THE GENERAL MUNICIPAL LAW. THE STATEMENTS CONTAINED IN THIS APPLICATION ARE, TO THE BEST OF MY KNOWLEDGE, ACCURATE AND TRUE.

______________________________ (Signature of Applicant) ______________ (Date)

- OR -

______________________________ (Signature of Party Authorized per Section 2 of Procedure ______________ (Date)

The decision on my application should be mailed to me at the following address:

and to my representative:

Application received by:

______________________________________ ________________
(Signature of Person Authorized To Receive Application (Date)

## APPENDIX "BA"

## MEDICAL RECORDS RELEASE FORM
## AUTHORIZATION TO RELEASE/PROVIDE INFORMATION

I, ___________________________, hereby authorize any medical, osteopathic or chiropractic physician, hospital, clinic, rehabilitation facility, or other medical practitioner or provider who has or is or will be furnishing services to me, to release and/or provide medical information, including patient files, medical charts, physician notes, X-rays and other pertinent information relating to my medical and/or physical condition including history, treatment, diagnosis and prognosis, with respect to my claim of injury and/or illness as stated on the attached form, and to furnish such information in their possession to the Village of Sleepy Hollow.

This information is authorized to be released in order to determine if I am, have been and/or continue to be disabled from the performance of my duty as________________ in the Village of Sleepy Hollow Police Department as a result of an injury or illness incurred in the performance of duty. This authorization for release of such information is valid for the duration of the determination, and I agree that a photocopy of it is valid as the original.

New York State Law requires the following to appear on this form:

ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON, FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

I have read this authorization and acknowledge I or a person authorized by me will receive a copy of this release upon request.

______________________________

Dated:

STATE OF NEW YORK )
COUNTY OF _____________ ) ss:

On the day of , before me personally came and appeared ____________________________ to me known and known to me to be the individual described herein, who executed the foregoing instrument, and who duly acknowledged to me that he/she executed the same.

______________________________
Notary Public

# APPENDIX "BA"

## GENERAL DESCRIPTION OF LIGHT DUTY

1. Files, updates and generally maintains criminal records;
2. Answers telephones and records messages;
3. Receives, sorts, indexes and files a variety of materials;
4. Operates a radio communication system;
5. Operates a variety of standard office equipment;
6. Codes and classifies police reports and blotter entries via computer equipment;
7. Operates computer equipment to send and retrieve messages on motor vehicle and criminal data;
8. Prepares routine statistical reports;
9. Issues bicycle licenses, vendor permits and other forms of licenses typically issued by the Police Department;
10. Types letters, memos, reports and other correspondence;
11. May handle, catalogue and store evidence;
12. May correspond with insurance companies regarding requests for accident reports and other documents maintained by the Police Department;
13. May do fingerprinting and generally classify fingerprints;
14. Perform duties commonly associated with the functions of a Desk Officer;
15. May be required to respond in the event of an emergency consistent with the employee's physical and medical capabilities;
16. May perform work related to the above as required.

## APPENDIX "B"
## TERMS AND CONDITIONS

## EMPLOYEE VOLUNTARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM

Employee Name: ______________________________

Title: ______________________________

Inpatient Treatment Program: ______________________________

Period of Attendance: ______________________________

AGREEMENT TO CONDITIONS:

I, ______________________________, understand and agree to the following conditions concerning my participation in an Employee Assistance Program (hereinafter referred to as "program") in connection with my substance abuse problem. I understand and agree that I shall adhere to all requirements of the ______________ Treatment Program which I will attend from ______________ to ______________. I understand and agree that the information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described above.

I have read the terms and conditions concerning my participation in an outpatient treatment program which are set forth in Part B of this document. I accept and agree to the terms and conditions concerning outpatient treatment.

ACCEPTED AND AGREED TO:

Dated: ____________

(Signature of Employee)

(Print Name)

REVIEWED AND AGREED TO:

**FOR PBA**

**FOR THE VILLAGE OF SLEEPY HOLLOW**

| | |
|---|---|
| (Signature) | (Signature) |
| (Print Name) | (Print Name) |
| (Date) | (Date) |

**FOR THE PROGRAM**

Date: ____________

(Signature)

(Print Name)