## APPENDIX "B"
## TERMS AND CONDITIONS – PART B

## EMPLOYEE VOLUNTARY PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM

Employee Name: ______________________________

Title: ______________________________

Outpatient Treatment Program: ______________________________

Day, Time and Location of Attendance: ______________________________

AGREEMENT AND CONDITIONS:

I, ______________________________, understand and agree to the following conditions in connection with my return to duty and participation in the above-referenced outpatient treatment program. I understand and agree that I shall adhere to all requirements of the ______________________________ Treatment Program which I will attend on the day(s), time(s) and location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described above.

ACCEPTED AND AGREED TO:

______________________________ Dated: ______________
(Signature of Employee)

REVIEWED AND AGREED TO:

**FOR PBA** **FOR VILLAGE OF SLEEPY HOLLOW**

______________________________ ______________________________
(Signature) (Date) (Signature) (Date)

**FOR THE PROGRAM**

______________________________
(Signature) (Date)

# APPENDIX "C"
# TERMS AND CONDITIONS

## PROBATIONARY EMPLOYEE PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM

Employee Name: ______________________________

Title: ______________________________

Inpatient Treatment Program: ______________________________

Period of Attendance: ______________________________

AGREEMENT TO CONDITIONS:

I, ______________________, understand and agree to the following conditions concerning my participation in an Employee Assistance Program (hereinafter "Program") in connection with my substance abuse problem. I understand and agree that information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the person described above.

I have read the terms and conditions concerning my participation in an outpatient treatment program which are set forth in Part B of this document. I accept and agree to the terms and conditions concerning outpatient treatment.

I further understand and agree that the period of my probationary service shall be held in abeyance during the time of my participation in the treatment program and until my return to full duty employment with the Village; that is, until I am able to return to full duty employment with the Village of Sleepy Hollow, I will not accrue any further time for purposes of my probationary period in my title.

ACCEPTED AND AGREED TO:

_______________________________ Dated: ______________________
(Signature of Employee)

REVIEWED AND AGREED TO:

**FOR PBA** **FOR VILLAGE OF SLEEPY HOLLOW**

(Signature) (Date) (Signature) (Date)

**FOR THE PROGRAM**

(Signature) (Date)

# APPENDIX "C"
## TERMS AND CONDITIONS – PART B

## PROBATIONARY EMPLOYEE PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM

Employee Name: ____________________

Title: ____________________

Outpatient Treatment Program: ____________________

Day, Time and Location of Attendance: ____________________

AGREEMENT AND CONDITIONS:

I, ____________________, understand and agree to the following conditions in connection with my return to duty and participation in the above-referenced outpatient treatment program. I understand and agree that I shall adhere to all requirements of the ____________________ Treatment Program which I will attend at the location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described above.

ACCEPTED AND AGREED TO:

____________________ Dated: ____________________
(Signature of Employee)

REVIEWED AND AGREED TO:

**FOR PBA** **FOR VILLAGE OF SLEEPY HOLLOW**

____________________ ____________________
(Signature) (Date) (Signature) (Date)

**FOR THE PROGRAM**

____________________
(Signature) (Date)

## APPENDIX "D"
## TERMS AND CONDITIONS

## EMPLOYEE DISCIPLINARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM

Employee Name: ______________________________

Title: ______________________________

Inpatient Treatment Program: ______________________________

Period of Attendance: ______________________________

AGREEMENT TO CONDITIONS:

______ I, ______________________________, understand and agree to the following conditions concerning my participation in the Employee Assistance Program (hereinafter referred to as "Program") in connection with my substance abuse problem. I understand and agree that information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described above.

______ I have read the terms and conditions concerning my participation in the facility and the outpatient treatment program which are set forth in Part B of this document. I accept and agree to the terms and conditions concerning in-facility and outpatient treatment.

______ I acknowledge and admit that I am guilty of the following disciplinary charges which have been preferred against me.

______ I understand and agree that the disciplinary penalty set forth below is being held in abeyance at the sole discretion of the Village of Sleepy Hollow and that this penalty may be imposed at any time within twenty-four (24) months following my return to work at the discretion of the Village of Sleepy Hollow.

______________________________

ACCEPTED AND AGREED TO:

Dated:

(Signature of Employee)

REVIEWED AND AGREED TO:

**FOR PBA** **FOR VILLAGE OF SLEEPY HOLLOW**

(Signature) (Date) (Signature) (Date)

**FOR THE PROGRAM**

(Signature) (Date)

## APPENDIX "D"
## TERMS AND CONDITIONS – PART B

## EMPLOYEE DISCIPLINARY PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM

Name of Employee ______________________________

Title: ______________________________

Outpatient Treatment Program: ______________________________

Day, Time and Location of Attendance: ______________________________

AGREEMENT AND CONDITIONS:

I, ______________________________, understand and agree to the following conditions in connection with my return to duty and participation in the above-referenced outpatient treatment program. I understand and agree that I shall adhere to all requirements of the ______________________________ Treatment Program which I will attend on the day(s), time(s) and location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Mayor, a representative of the PBA and a representative of the program. I understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described above.

ACCEPTED AND AGREED TO:

______________________________
(Signature of Employee) Dated: ______________

REVIEWED AND AGREED TO:

**FOR PBA** **FOR VILLAGE OF SLEEPY HOLLOW**

______________________________ ______________________________
(Signature) (Date) (Signature) (Date)

**FOR THE PROGRAM**

______________________________
(Signature) (Date)

# APPENDIX "E"

## SLEEPY HOLLOW
## POLICE DEPARTMENT
## Performance Evaluation

RATEE: ______ RATER(s): ______ DATE: ______

| | Lowest | | | | Highest |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |

1) APPEARANCE:
What impression does ratee make on the public? Consider personal neatness, hygiene, bearing, etc.
**Comments:**

| | Lowest | | | | Highest |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |

2) COMMUNICATION SKILLS:
A. VERBAL:
How does the ratee communicate with the public? With peers? Does the ratee show traits of good listening? Does the ratee show verbal respect to all?
**Comments:**

| | Lowest | | | | Highest |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |

B. WRITTEN:
Does the ratee express ideas and facts clearly in writing?
**Comments:**

| | Lowest | | | | Highest |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |

3) WORK ANALYSIS:
Consider the ratee's ability at taking the appropriate police action. Are routine written reports completed in an accurate and timely manner? Is the ratee independent and self-motivated or dependent on supervisory direction?
**Comments:**

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

4) WORK ATTITUDE: Lowest 1 2 3 4 5 Highest

Does the ratee display a positive, cooperative attitude toward the public and other employees?

**Comments:**

5) ARRESTS:

Does the ratee's record show initiative, consistency, and regular activity? Use monthly activity sheets to support your conclusions.

A. PENAL LAW: 1 2 3 4 5

B. VTL: 1 2 3 4 5

**Comments:**

6) SUMMONSES:

Does the ratee show a record of dealing with problem areas, i.e., sites and directed patrol? Does the record indicate that the ratee addresses enforcement problems on daily assigned posts? Indicate positive comments or re-training suggestions.

A. VTL: 1 2 3 4 5

B. PARKING: 1 2 3 4 5

C. VILLAGE CODE: 1 2 3 4 5

D. DIRECTED PATROL: 1 2 3 4 5

**Comments:**

7) GENERAL ANALYSIS: Lowest 1 2 3 4 5 Highest

Give an overall indication of the ratee's work performance? Address ratee's strengths and/or weaknesses; your suggestions, plans or goals for improving the ratee's performance.

**Comments:**

RATER'S SIGNATURE: ______________________ DATE: ____________

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

| **DESK MANAGEMENT** | **Lowest** 1 | 2 | 3 | 4 | **Highest** 5 |
|---|---|---|---|---|---|
| 1) Interaction with public | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 2) Telephone demeanor | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 3) 911 Usage | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 4) Basic radio operation | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 5) Highway/fire radio usage | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 6) Fire paging | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 7) SHVAC paging | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | | | | |
|---|---|---|---|---|---|
| 8) NYSPIN operation | 1 | 2 | 3 | 4 | 5 |

**Comments:**

RATER'S SIGNATURE: ______________________ DATE: __________

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

**RATER COMMENTS:**

Based on objective data that can be supported by written documentation, use this space to give an account of this employee's performance. Consider all the categories on the previous page in your assessment. Include your supervisory response to documented problems.

RATER(S) SIGNATURE: ______________________________ DATE: __________

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

**RATEE COMMENTS:**

I PARTICIPATED IN THE PERFORMANCE EVALUATION CONFERENCE AND HAVE REVIEWED MY EVALUATION.

COMMENTS:

RATEE'S SIGNATURE: ______________________ DATE: __________

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is entered into by and between the negotiating teams for Village of Sleepy Hollow (hereinafter "Village") and the Village of Sleepy Hollow Police Benevolent Association, Inc. (hereinafter "PBA"), referred to collectively as the parties.

**WHEREAS**, the Village and the PBA are parties to a collective bargaining agreement for the period of June 1, 1998 through May 31, 2002, and an Interest Arbitration Award (PERB Case No.: IA2003-001; M2002-166) for the period of June 1, 2002 through May 31, 2004; and a Memorandum of Agreement for the period of June 1, 2004 through May 31, 2010, but never executed into a consolidated Collective Bargaining Agreement; and

**WHEREAS**, the parties have now reached an agreement as of the date of execution of this Memorandum of Agreement on the terms and conditions for a successor collective bargaining agreement for the period of **June 1, 2010 through May 31, 2013** and wish to memorialize their understanding, in writing, pending the signing of a new collective bargaining agreement; and

**WHEREAS**, upon execution of this Memorandum of Agreement by the negotiating committees of both the Village and PBA, the parties agree to comply with the following:

1. All parties who sign this Memorandum of Agreement shall support and endorse it for ratification and/or approval, as appropriate, by their respective bodies. This Memorandum of Agreement is subject to ratification by the PBA and ratification and approval by the Village Board of Trustees as set forth herein.

2. All terms and conditions of the June 1, 1998 through May 31, 2002 collective bargaining agreement, June 1, 2002 through May 31, 2004 Interest Arbitration Award and June 1, 2004 through May 31, 2010 Memorandum of Agreement referenced above shall remain in full force and effect except as agreed to be modified herein.

3. The PBA shall hold a ratification vote no later than **April 10, 2012.**

4. Upon a majority vote of the members in attendance at the required ratification vote by the PBA of this Memorandum of Agreement, the Village shall be notified of its successful passage or failure.

5. In the event that the majority of members in attendance at the PBA ratification vote to support this Memorandum of Agreement, the Village's Board of Trustees shall then place this matter on the agenda for its next regularly scheduled Village Board meeting, to be held no later than **April 10, 2012,** at which a ratification and approval vote of this Memorandum of Agreement shall be conducted.

6. After ratification by the PBA and ratification and approval by the Village's Board of Trustees, all new terms and conditions shall become effective immediately, except those that may have an implementation date(s) that occurs at a specific period within the contract period. All terms and conditions that have no specific implementation date shall become effective on the first (1st) day of the contract, June 1, 2010.

7. The PBA shall prepare a draft contract for signing between the parties no later than **60** calendar days after the successful ratification and approval vote of the Village's Board of Trustees.

8. The Village agrees that any and all retroactive money due and owing, if any, shall be paid no later than **45** calendar days after the ratification and approval of both parties of this Memorandum of Agreement to all unit members who were employed from June 1, 2010 to date after the ratification and approval vote set forth herein by the Village's Board of Trustees following the PBA membership's ratification of that Agreement. The Village shall provide a worksheet to any unit member receiving retroactive money setting forth how the calculation(s) was made and what it represents.

9. The parties agree that upon ratification and approval of the Village's Board of Trustees by resolution after ratification by the PBA, this Memorandum of Agreement shall have the full force and effect of a collective bargaining agreement between the parties.

**NOW, THEREFORE**, in consideration of the promises and mutual covenants contained herein, upon ratification by the PBA and ratification and approval by the Village's Board of Trustees by resolution, the parties agree that a successor collective bargaining agreement to the one from June 1, 1998 through May 31, 2002, Interest Arbitration Award from June 1, 2002 through May 31, 2004, and Memorandum of Agreement from June 1, 2004 through May 31, 2010 shall include the following terms as attached to this Memorandum of Agreement.

**FOR THE VILLAGE**

ANTHONY P. GIACCIO Date
Village Administrator

GREGORY J. CAMP Date
Chief of Police

**FOR THE PBA**

CRAIG KELLY Date
President



Village Administrator's Initial & Date ________
PBA President's Initial & Date ________

1. **ARTICLE 3 – BASE WAGE AND LONGEVITY:**

**Section 1** - See Schedule "A" attached hereto.

**Section 4** - Amend the schedule as follows **(refers to the Longevity schedule):**

| (N/C) Years of Service | (N/C) 6/1/10 | (N/C) 6/1/11 | | 6/1/12 |
|---|---|---|---|---|
| Start 6th Year | $ 950/yr | $ 950/yr | (+ $25.00) | $ 975/yr |
| Start 9th Year | $1,325/yr | $1,325/yr | (+ $25.00) | $1,350/yr |
| Start 12th Year | $1,700/yr | $1,700/yr | (+ $50.00) | $1,750/yr |
| Start 15th Year | $2,075/yr | $2,075/yr | (+ $50.00) | $2,125/yr |
| Start 18th Year And above | $2,450/yr | $2,450/yr | (+ $75.00) | $2,525/yr |

2. **ARTICLE 5- OVERTIME:**
Effective May 31, 2012, this section is to be deleted in its entirety.

3. **ARTICLE 7 – VACATIONS**

**NEW Section 11** – Add the following new section to read as follows:

Effective December 1, 2011, and in the event of resignation from service from June 1st through November 30th of each year, the employee shall be paid for one half (1/2) of the above vacation schedule (i.e., an employee who has started his/her 10th year of service receives 5 weeks of vacation). If that employee resigns from service between June 1st and November 30th, he/she would be entitled to have used all 5 weeks, or for those weeks not used, be paid for one half (1/2) of all vacation leave remaining.

4. **ARTICLE 8 – HEALTH INSURANCE AND WELFARE BENEFITS FUND:**

**Section 8** – Amend amounts as follows **(refers to the Welfare Fund):**

| (N/C) 6/1/10 | (N/C) 6/1/11 | (+$25.00) 6/1/12 |
|---|---|---|
| $1,375.00 | $1,375.00 | $1,400.00 |

5. **ARTICLE 10 – UNIFORM ALLOWANCE AND CLEANING:**

**Section 1** - Amend amount as follows **(refers to Uniform Allowance):**

| (N/C) 6/1/10 | (N/C) 6/1/11 | (+$50.00) 6/1/12 |
|---|---|---|
| $800.00 | $800.00 | $850.00 |



Village Administrator's Initial & Date ________
PBA President's Initial & Date ________

**Section 2** - Amend amounts as follows **(refers to Cleaning):**

| | (N/C) 6/1/10 | (N/C) 6/1/11 | (+$50.00) 6/1/12 |
|---|---|---|---|
| $275.00 | $275.00 | $275.00 | $325.00 |

6. **ARTICLE 11- PERSONAL LEAVE**

**NEW Section 3**- Add the following new section to read as follows:
Effective December 1, 2011, and in the event of resignation from service from June 1st through November 30th of each year, the employee shall be paid for one-half (1/2) of the above unused credited personal leave days. If that employee resigns from service between June 1st and November 30th, he/she would be entitled to have used all personal leave days, or for those days not used, be paid for on half (1/2) of all unused personal leave remaining. (i.e. 5 days credited of June 1st unused, paid for 2 ½ days, 3 days unused, paid for 1 ½ days).

7. **ARTICLE 14 – SICK LEAVE**

**Section 4**- Add a new paragraph to read as follows:

Effective June 1, 2012 and for each fiscal year thereafter, the above sick leave bonus shall be paid on a prorated basis to an employee out of work pursuant to a job-related injury, disability or illness whether that employee's injury is classified as a "Job Related Injury (JRI)", or pursuant to General Municipal Law Section 207-c (GML 207-c). The prorating shall be calculated based on each day the employee is out of work due to an injury, disability or illness that is classified either JRI or GML 207-c. One day equals 0.003846% of the bonus amount. One full week would equal 0.01923%, while thirteen (13) weeks would equal twenty-five percent (25%). No prorating shall take effect until a cumulative three (3) days of JRI and/or GML 207-c leave is taken. Percentages shall be rounded up or down to the closest whole percentage. For example, three (3) days taken would round down to one percent (0.003846% x 3 = 0.011538% rounded down = 1%). If five (5) days were taken, the percentage would round up to 2% (0.003856% x 5 = 0.01923% rounded up = 2%). The following provide examples of the sick leave bonus payment as they apply to paragraphs A and B above.

- Out two (2) JRI or GML 207-c days or a combination of the two (2), and the employee utilizes no regular sick leave: the employee would be entitled to receive the full one and one half percent (1.5)% of his/her Annual Base Wage as sick leave bonus.
- Out three (3) JRI or GML 207-c days or a combination of the two (2), and the employee has taken no regular sick leave: the employee would be entitled to receive a sick leave bonus of ninety-nine percent (99%) (0.003846% x 3 = 0.011538% rounded down = 1%) of the one and one half percent (1.5%) of his/her Annual Base Wage as sick leave bonus.


Village Administrator's Initial & Date ____________
PBA President's Initial & Date ____________

- Out ten (10) JRI or GML 207-c days or a combination of the two (2), and the employee utilizes less than eight (8) sick days: the employee would be entitled to receive a sick leave bonus of 96% (0.003846% x 10 = 0.03846% round up = 4%) of the one percent (1%) of his/her Annual Base Wage as sick leave bonus.
- Out thirteen (13) weeks and employee utilizes less than eight (8) sick days: the employee would be entitled to receive a sick leave bonus of seventy-five percent (75%) (0.003846% x 65 = 0.2499% rounded up = 25%) of the one percent of his/her Annual Base Wage as sick leave bonus.
- An employee who is out for the entire fiscal year on JRI or GML 207-c leave or a combination of the two (2), the employee would be entitled to no sick leave bonus.

8. **<u>ARTICLE – TERM OF AGREEMENT</u>: (Actual Article number to be incorporated in the collective bargaining agreement)**

Insert "2010" and "2013" where "1998" and "2002" appears respectively.

9. **<u>ARTICLE – SUBSTANCE ABUSE AND ALCOHOL TESTING PROCEDURE- The following language was previously agreed to by the parties in the Memorandum of Agreement for the period of June 1, 2004 through May 31, 2010. The parties have agreed to the following changes which have been tracked. In those areas where no changes have been made at all, (N/C) will appear, and an Article number to be incorporated in the Collective Bargaining Agreement.</u>**

The parties agree to the following Substance Abuse and Alcohol Testing Procedure: **(N/C)**

**<u>Section 1:</u>** **Statement of Policy (N/C)**

The Village and the PBA recognize that the use and possession of intoxicating and controlled substances in the work place constitutes a serious threat to the health and safety of all employees. The Village and the PBA are desirous of maintaining a safe, healthy and productive work environment for all employees. To that end, the PBA recognizes the Village's interest in promulgating a written policy regarding the illegal use and possession of intoxicants and controlled substances by employees. **(N/C)**

**<u>Section 2:</u>** **Treatment/Employee Assistance Program (N/C)**

The Village and the PBA recognize that an effective rehabilitative services program is a crucial component of the substance abuse policy. Employees with substance abuse problems are strongly encouraged to voluntarily seek self-help through a rehabilitative service/program ("program"). A program shall be under the direction of a licensed physician or licensed or certified psychologist, social worker or addiction counselor certified by the National Association of Alcoholism and Drug Abuse Counseling

Certification Commissioner with clinical experience in the diagnosis and treatment of alcohol and prohibited drug related disorders (SAP). Employees with substance abuse problems who do not voluntarily seek the assistance of a program in accordance with the terms of this Policy, or are found in violation of this Policy, shall be subject to discipline to the fullest extent permissible pursuant to the applicable disciplinary procedure. Employees with substance abuse problems who voluntarily participate in the program, or those employees who are referred to the program through the disciplinary procedure, shall be subject to the conditions as set forth below.

The Village recognizes that a program handles many problems in addition to that of substance abuse. The relationship between the employee and a program is, and continues to be, of a confidential nature except as specifically provided herein. **(N/C)**

**<u>Section 3:</u>** **Voluntary Referral (N/C)**

A. <u>Employees Assistance Program</u>

Employees who voluntarily seek treatment for substance abuse in a program shall notify either the Chief of Police, his/her representative, or the program of their desire to participate in the program. In the event the employee notifies his/her representative, or the program, the representative or the program shall immediately notify and meet with the Chief of Police. If the employee notifies the Chief of Police, the Chief of Police shall notify the employee's representative, or the program selected by the employee who shall immediately meet with the Chief of Police. At this meeting the following items will be discussed and agreed to.

B. <u>Conditions</u> **(N/C)**

The employee, his/her representative, the Chief of Police, and the program shall sign an agreement accepting the terms and conditions under which the employee may participate in the program. The agreement shall state the length and type of treatment and the employee's obligation to follow the requirements of the program. In addition, the employee shall indicate his/her understanding and agreement to the release of information to his/her representative, the Chief of Police, and program regarding his/her participation in the program. The agreement and information concerning the employee's participation in the program shall be confidential and maintained in a manner to restrict access only to the employee, his/her representative, the Chief of Police, and the program. Annexed to this Agreement as Form "1-A and B" is the Form Agreement containing four pages, which shall be used for this purpose.

C. Civil Service Status (N/C)

An employee who is in his/her first six (6) months of employment with the Village ("probationary period") as a transfer into the Village, or twelve (12) months otherwise, shall not be entitled to this procedure, unless approved by the Chief of Police.

In the event the employee is serving in his/her probationary period, as set forth herein, and is approved by the Chief of Police for this procedure, that employee shall agree in writing to hold in abeyance the remainder of such probationary period until the employee returns to full duty. For employees who are serving in their probationary period, the Form Agreement annexed to this agreement as Form "2" shall apply which contains two pages. Conditions for leave of absence and continued tenure with the Village may vary depending on the civil service status of the employee, i.e. provisional, etc.

D. Pay Status (N/C)

During the time of attendance in a program and until such time as the SAP advises the Chief of Police that the employee may return to work, the employee shall use his/her unused personal leave, compensatory time, holidays and vacation, in that order, until all the foregoing leave time is exhausted. Upon exhaustion of all leave time balances, the employee shall then be placed on sick leave pursuant to Article 14- Sick Leave, and then on an unpaid leave of absence for the duration of time for inpatient treatment in a facility.

E. Release of Medical Information (N/C)

The SAP shall provide the Chief of Police on a periodic basis, or at the request of the employee or SAP, the following information concerning the employee's progress in the program:

- The nature and duration of the in-facility treatment; (N/C)
- The nature and duration of outpatient treatment; (N/C)
- Progress reports as to the employee's status in the program. (N/C)

This information is confidential and shall be released by the SAP only to the Chief of Police and representatives designated by the employee.

F. Return to Work Following Inpatient Treatment (N/C)

Upon the employee's return to work, the SAP shall provide the Chief of Police, and the employee's representative with information concerning the nature of the employee's outpatient treatment including date, time and location of required attendance in an outpatient treatment program. In the event the employee violates the rules and procedures of the program, including by way of example but not limitation, testing positive in a drug screening conducted pursuant to such rules and procedures of the program, the SAP shall notify the Chief of Police and the employee's representative of such violation. Thereafter,

the SAP, the employee, his/her representative and the Chief of Police shall all discuss and agree on additional treatment for the employee or other action as may be required (Form "3").

**Section 4:** **Discipline (N/C)**

A. Performance Problems/Misconduct **(N/C)**

An employee who commits an act of misconduct or whose work performance is unsatisfactory is subject to discipline. Disciplinary actions shall be conducted through the applicable disciplinary procedure. Employee participation in a program does not preclude the imposition of disciplinary penalty, if appropriate.

B. Employee Admits Problem with Substance Abuse **(N/C)**

[illegible] during the disciplinary process prior to imposition of penalty, the employee [illegible] admits to a substance abuse problem and to the misconduct or unsatisfactory work performance alleged, the employee shall be referred to a program for treatment. The disciplinary penalty for the misconduct or unsatisfactory work performance may be held in abeyance pending completion of treatment or, if appropriate, may be imposed (Form "4A"). If the employee does not admit to the alleged misconduct or unsatisfactory work performance, the disciplinary matter shall be decided pursuant to the applicable disciplinary procedure, and the disciplinary penalty, if any, shall be imposed.

The rights of the employee, the Village and the PBA with regard to disciplinary action shall be as provided through the applicable disciplinary procedure, and nothing contained in this policy and procedure shall be construed to affect those rights.

C. Referral to Program

Upon referral to a program, the employee, the employee's representative, the Chief of Police and the SAP, shall sign an agreement accepting the terms and conditions of the program. The agreement shall state the length and type of treatment, the employee's obligation to follow the requirements for the program, and that the employee shall be subject to disciplinary action for failure to adhere to the program. In addition, the employee shall indicate his/her understanding and agreement to release of information to the Chief of Police and his/her representative regarding his/her participation in the program. The agreement and information concerning the employee's participation in the program shall be confidential and maintained in a manner to restrict access only to the employee, his/her representative, and the Chief of Police. Annexed to this Agreement as Form "4B" is the Form Agreement, which shall be used for this purpose.

During the time of attendance in treatment, the employee shall use his/her unused personal leave, compensatory time, holidays and vacation, in that order, until all of the foregoing leave time is exhausted. Upon exhaustion of all leave time balances, the employee shall then be placed on sick leave pursuant to Article 14- Sick Leave, and then on an unpaid leave of absence for the duration of time for inpatient treatment in a facility.

D. Return to Work Following Inpatient Treatment (N/C)

Upon returning to work, the SAP shall provide the Chief of Police and the employee's representative with information concerning the nature of the employee's outpatient treatment including date, time and location of required attendance in an outpatient treatment program. In the event the employee tests positive in a drug screening conducted pursuant to the rules and procedures of the program, the SAP shall notify the Chief of Police and the employee's representative of such positive test result. Thereafter, the SAP, the employee, the employee's representative, and the Chief of Police shall discuss and agree on additional treatment for the employee or other action as may be required.

**Section 5: Drug Testing (N/C)**

If an employee while on duty exhibits a physical condition, conduct or pattern of erratic behavior which indicates that the employee is under the influence of an intoxicating substance, and the employee's supervisor, who is qualified pursuant to D.O.T. Regulations, has reasonable cause to believe, based on direct observation of the employee's conduct, performance or behavior, that the employee is under the influence of an intoxicating substance, or if the supervisor is provided with information from a reliable and credible source which is independently corroborated that the employee is engaging in use of or is under the influence of intoxicating substances while on duty, or that the employee is engaging in illegal use, possession, distribution or sale of a controlled substance or drug on duty, the supervisor shall meet with the employee and give the employee an opportunity to explain the conduct, performance and behavior. If the employee does not indicate a problem with substance abuse and the supervisor believes, based on reasonable cause, that the employee is under the influence of an intoxicating substance, the supervisor shall immediately make a written report to the Chief of Police setting forth the available facts that objectively indicate that reasonable suspicion exists that test of the employee would yield a positive result for the misuse of alcohol or prohibited drugs, and as soon as practicable after an order to test is given, without causing an undo delay in the testing process, the supervisor shall document the facts contributing to and forming the basis for the reasonable suspicion. These facts shall include, but not be limited to: (1) a description of the employee's appearance, behavior and speech; (2) names of witnesses to the employee's appearance, behavior and speech, where practicable; (3) if the employee's appearance, behavior or speech is not the basis for testing, the facts used to support a determination of reasonable suspicion and the source of the information. A written memorandum setting forth the basis of the reasonable suspicion shall be provided to the affected employee within twenty-four (24) hours of the test decision. The details of any dealings with the employee concerning

his/her conduct, performance or behavior shall be included in a written report to the Chief of Police from the supervisor. The Chief of Police shall decide after review and consultation on the report, whether there is reason to investigate for purposes of ascertaining if available facts objectively indicate reasonable suspicion exists to pursue the inquiry. This may include meeting with the employee for purposes of providing the employee an opportunity to explain his/her conduct, performance or behavior. In the event such a meeting is held, the employee may request that a PBA representative and/or legal counsel attend the meeting, but in no event shall the meeting be delayed for more than two (2) hours to accommodate the request. The investigation of the employee's behavior shall be confidential with due consideration for the dignity and privacy of the employee.

Where reasonable suspicion is based on observations by a confidential informant, defined as an employee or agent of a governmental law enforcement or the Village, the identity of the source shall not be disclosed, except for the name of the governmental agency involved. The Village shall not be required to reveal the identity of a confidential informant in any proceeding, nor can evidence supplied by a confidential informant be suppressed because of refusal to identify the name of the source. **(N/C)**

A direction to an employee to submit to drug or alcohol testing shall not be based solely on information provided by a confidential informant. **(N/C)**

If the Chief of Police decides that the employee should be referred for drug or alcohol testing, the following procedure shall be followed:

(a) The employee shall be ordered to immediately submit to a drug and/or alcohol test and at the same time the employee shall be given the written statement of the basis for reasonable suspicion. Refusal to submit to the test or to cooperate during the testing procedure shall constitute grounds for disciplinary action. **(N/C)**

(b) If the employee is ordered to submit to a test based on reasonable suspicion, the employee will be advised of the right to have a PBA representative present for collection of the sample, but in no event shall collection be delayed for more than two (2) hours to accommodate the presence of a PBA representative.

(c) Disputes concerning the matter of reasonable suspicion to order a test will be referred to the applicable disciplinary procedure in connection with charges preferred against the employee.

(d) Tests for prohibited drugs shall be conducted only by urinalysis and shall be performed only by Department of Health and Human Services certified laboratories. The employee(s) shall be transported to the testing site. The employee shall provide a sufficient amount of the sample to allow for an initial screening, a confirmatory test, and for later testing if requested by the employee. In the event an insufficient sample is provided, the employee's ability to have a second test performed may be adversely impacted. **(N/C)**

(e) A specimen may be tested only for cocaine, marijuana, opiates, amphetamines and phencyclidine. A specimen may not be used to conduct any other analysis or test except as hereinafter described. **(N/C)**

(f) The specimen will be sent to a laboratory certified by the Department of Health and Human Services and tested for the substances set forth in (e) above.

(g) An employee shall be paid for all time pertaining to a drug test including providing a urine sample and travel time to and from the collection site in the event the test is negative. Such time shall be considered as time worked for the purpose of calculating overtime and employee benefits. If an employee tests positive for prohibited drugs following a reasonable suspicion test, the Village shall not be obligated to pay the employee beyond the regular hours of work. **(N/C)**

(h) All drug testing shall be conducted during an employee's regularly scheduled work hours or the two (2) hours immediately proceeding or subsequent to a regularly scheduled tour of duty. The payment of overtime shall be as set forth in (iv) below. The Village reserves the right to have the drug test conducted at a certified hospital emergency room in the event the laboratory used is not open for business.

(i) Each drug test shall be reviewed by a Medical Review Officer (MRO) designated by the laboratory to ensure compliance with all procedures, as well as all Federal Regulations, including the validity of the test. **(N/C)**

During the course of the collection process, the employee shall cooperate with requests for information concerning use of medications and acknowledgment of giving of the specimen. **(N/C)**

(j) There shall be no direct observation of giving of a urine sample unless there is reason to believe that the sample may be tampered with, in which event direct observation shall be made by a person of the same gender as the employee giving the sample. **(N/C)**

(k) In the case of urine, the sample given shall be divided into two aliquot. The sample will be given to a monitor who will mark and seal each sample to preserve the chain of custody of the samples. Thereafter, the samples shall be transported to the testing laboratory in a manner, which shall insure the integrity and chain of custody of each sample. **(N/C)**

(l) Both samples shall be delivered to a laboratory selected by the Village which shall be duly licensed or certified for drug testing purposes by the NIDA. One sample shall be used for purposes of testing by the laboratory and the second sample shall be maintained by the laboratory in accordance with recognized procedures for purposes hereafter described. **(N/C)**

(m) The designated laboratory shall initially perform the enzyme multiplied immunoassay test (EMIT) on the sample for the presence of drugs or controlled substances. A sample which tests positive shall be retested by the laboratory using the gas chromatography mass spectroscopy test (GC-MS). A test shall be deemed positive for the presence of drugs in accordance with standards issued by the NIDA. **(N/C)**

(n) In the event the confirmatory GC-MS test result is negative, then the sample shall be deemed negative for the presence of prohibited substances and no report shall be made to the Chief of Police or to the employee on the test results, and the existence of test or its results shall not be used in any manner in any proceeding between the Village and the employee. If the confirmatory GC-MS test result is positive, the laboratory shall provide copies of the test results to the Chief of Police, the employee, and the employee's representative.

(o) In the event the employee is ordered to submit to a test for the presence of alcohol, the employee shall submit to a breathalyzer test to be administered by an agent designated by the Chief of Police.

(i) Tests for alcohol shall only be conducted by a breath alcohol technician using a Datamaster breath-testing device. Such device shall be approved by the National Highway Traffic Safety Administration and placed on the Conforming Products List of Evidential Breath Measurement Device. **(N/C)**

(ii) A department supervisor who has not observed or witnessed the alleged violation will administer the alcohol test using the Datamaster device. The supervisor shall be certified to use and operate a Datamaster device. **(N/C)**

(iii) The person designated to make the determination of reasonable suspicion shall not administer the test. **(N/C)**

(iv) An employee shall be paid for all time pertaining to an alcohol test including providing a breath sample and travel time to and form the test site. Such time shall be considered as time worked for the purpose of computing overtime and employee benefits. **(N/C)**

(v) Tests for alcohol shall only be conducted during an employee's regularly scheduled work hours. **(N/C)**

**<u>Section 6:</u> Employee Request for Retesting (N/C)**

(a) After collection and testing, both samples shall be maintained by the Village's designated laboratory in accordance with appropriate procedures for a period of time to be agreed to by the parties. **(N/C)**

(b) After the employee receives notice of a confirmed positive test from the Village's laboratory, the employee may make written request within seventy-two (72) hours to the Village's designated laboratory for a test of the second sample. The employee may request that the second sample be sent to a laboratory selected by the employee which shall be duly licensed or certified for drug testing purposes by the NIDA. The selected laboratory shall be responsible for pick-up and transport of the sample, and it shall insure chain of custody. The employee shall be responsible for all costs associated with the second test and shall make arrangements for payment with the selected lab. The second test for confirmation of the first positive result shall be deemed positive for the presence of intoxicating substances in accordance with standards issued by the NIDA. The results of the second test shall be sent to the Chief of Police, the employee, and the employee's representative.

**<u>Section 7:</u>** **Continuation of Disciplinary Procedure (N/C)**

If the results of the two (2) tests administered, as referred to in Section 5 above, are positive for the presence of a prohibited substance, the employee shall be subject to discipline, which may include termination when legally permissible. Regardless of the test results, the employee may also be subject to disciplinary action for the misconduct or unsatisfactory work performance for which the employee was originally called before the supervisor. **(N/C)**

**<u>Section 8:</u>** **Mandatory Testing Following Work place Accident (N/C)**

Any employee who is involved in a police vehicle accident which results in personal injury to an employee or citizen that requires immediate hospital attention may be required to submit to a mandatory drug test as provided in this procedure. Refusal on the part of the employee to submit to the drug test shall be considered as misconduct and shall subject the employee to disciplinary action. **(N/C)**

**<u>Section 9:</u>** **Failure to Follow Program Conditions (N/C)**

A. <u>Originally Voluntarily Self-Referral</u> **(N/C)**

If the employee was a voluntary self-referral pursuant to Section 3 above and the employee violates any of the original or subsequent conditions set forth in the program agreement, or if the employee tests positive in a prohibited substance screen conducted by the program, or if the employee voluntarily admits a violation of the program conditions, the SAP shall provide the Chief of Police, the employee and the employee's representative with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. In the event the employee is required to undergo additional inpatient treatment, the employee shall use unused personal leave, compensatory time, holiday and vacation, in that order, until all of the foregoing leave time is exhausted. Upon exhaustion of all leave time balances, the employee may have, the employee shall then be placed on sick leave pursuant to Article 14-Sick Leave.

The Agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee. **(N/C)**

B. Original Disciplinary Referral **(N/C)**

(1) Voluntarily Admits Violation of Program Conditions **(N/C)**

If the employee was originally referred to the program as a result of a disciplinary action taken as provided in Section 4 above, and the employee voluntarily admits to violation of any of the original or subsequent conditions set forth in the program agreement, the SAP shall provide the Chief of Police, the employee and his/her representative with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. The Chief of Police shall review the disciplinary penalty being held in abeyance and may implement such penalty in full or in part, or take such other action that the Village deems necessary. If the employee is permitted to undergo additional inpatient treatment, the employee shall use his/her unused personal leave, compensatory time, holidays and vacation, in that order, until all of the foregoing is exhausted. Upon exhaustion of all leave time balances, the employee shall then be placed on sick leave pursuant to Article 14- Sick Leave. The program agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee.

(2) Violation of Program Condition not Voluntarily Disclosed **(N/C)**

If the employee was originally referred to a program as a result of a disciplinary action taken as provided in Section 4 above, and the employee violates any of the original or subsequent conditions set forth in the Program Agreement, or if the employee tests positive in a drug screening conducted by the program, the SAP shall provide the Chief of Police, the employee, and his/her representative, with recommendations for remedial treatment or other appropriate action. The remedial treatment may consist of additional outpatient or inpatient treatment. The Chief of Police shall review the disciplinary penalty being held in abeyance and shall implement such penalty in full or in part, or take other action the Village deems necessary. If the employee is permitted to undergo additional inpatient treatment, the employee shall be placed on an unpaid leave of absence pursuant to Section 73 of the Civil Service law for a minimum period required for in patient treatment, but not in excess of one (1) year.

The Program Agreement originally signed by the employee shall be amended to include any modification of treatment and/or additional conditions placed on the employee. **(N/C)**

C. Discovery of Failure to Follow Program Conditions in a Subsequent Disciplinary Matter (N/C)

Employees who are in a program voluntarily or as the result of a disciplinary matter who engage in misconduct or poor work performance and/or are discovered to have violated program conditions shall be subject to the disciplinary process for the misconduct or poor work performance and/or violation of the program conditions. **(N/C)**

**Section 10: Third Request for Treatment (N/C)**

An employee who is found, by voluntary admission or testing, to be under the influence of an intoxicating substance after two (2) prior opportunities for treatment may be subject to termination, subject to the applicable disciplinary procedure, or be given an opportunity to resign his/her position. There is no requirement that the Village allow treatment to an employee for substance abuse after two (2) prior treatment opportunities.

**Section 11: Random Alcohol and Drug Testing (N/C)**

A. Random Alcohol Tests: The Village shall not administer random alcohol testing to more than 40% of the employees annually covered by the collective bargaining agreement. **(N/C)**

PBA Observation: During random tests, the PBA shall be afforded an opportunity to be present to observe the testing, subject to the consent of the individual to be tested. Reasonable efforts shall be made to contact the PBA representative of the employee being tested and to give such representative the opportunity to accompany an employee throughout the testing process if requested by the employee. The PBA representative shall have thirty (30) minutes to respond to the testing location from the time contacted, at which time the testing shall begin. **(N/C)**

Selection of Employees: The Village shall select employees for testing only through a computer-based random number generator utilizing an appropriate employee identification number. Upon request, the Village shall provide the PBA President with a list of all employees tested, as well as the computer-generated list, so the PBA President can verify the randomness.

Limitations: No employee shall be subject to random alcohol testing more than two (2) times in any twelve (12) month period. **(N/C)**

B. Random Drug Tests: The Village shall administer random drug testing to more than 33.3% of the employees annually covered by the collective bargaining agreement. **(N/C)**

PBA Observation: During random tests, the PBA shall be afforded an opportunity to be present to observe the testing, subject to the consent of the individual to be tested. Reasonable efforts shall be made to contact the PBA representative of the employee being tested and to give such representative the opportunity to accompany an employee throughout the testing process if requested by the employee. The PBA representative shall have thirty (30) minutes to respond to the testing location from the time contacted, at which time the testing shall begin. **(N/C)**

Selection of Employees: The Village shall select employees for testing only through a computer-based random number generator utilizing an appropriate employee identification number. Upon request, the Village shall provide the PBA President with a list of all employees tested, as well as the computer-generated list, so the PBA President can verify the randomness.

Limitations: No employee shall be subject to random alcohol testing more than two (2) times in any twelve (12) month period. **(N/C)**

**Section 12: Review of Policy and Procedure (N/C)**

The Village and the PBA agree to meet periodically to review, and if appropriate agree to amend this procedure to insure that it remains consistent with current State and Federal law. **(N/C)**

**Section 13:** The Chief of Police may designate a qualified supervisor to assume the administration of this Policy. A qualified supervisor must meet the following training requirements set forth in §382.603 of DOT regulations: At least 60 minutes of training on alcohol misuse and receive at least an additional 60 minutes of training on controlled substances use. The training shall include the physical, behavioral, speech, and performance indicators of probable alcohol misuse and use of controlled substances.

**Section 14: Civil Service law Sections 71-73 (NEW)**

The Village will have the right, pursuant to Civil Service Law Sections 71-73, to separate an employee after he/she has been out of work for one (1) year following his/her placement on sick leave in accordance with this Article. Any paid leave accrued or credited while the employee is on sick leave, will not extend the one (1) year time period as set forth herein.

**FORM "1A"**
**TERMS AND CONDITIONS (N/C)**

**VILLAGE OF SLEEPY HOLLOW**
**and**
**SLEEPY HOLLOW POLICE BENEVOLENT ASSOCIATION, INC.**

**EMPLOYEE VOLUNTARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM**

Employee Name: _____**(N/C)**______________________________

Title: _______**(N/C)**______________________________

Inpatient Treatment
Program: __________**(N/C**______________________________

Period of
Attendance: _______**(N/C)**______________________________

AGREEMENT TO CONDITIONS: **(N/C)**

I, ______________________________, understand and agree to the following conditions concerning my participation in an Employee Assistance Program (hereinafter referred to as "program") in connection with my substance abuse problem. I understand and agree that I shall adhere to all requirements of the ______________________________Treatment Program which I will attend from ______________________________ to ______________________________. I understand and agree that the information concerning my participation and status in this treatment program will be released to the Chief of Police, my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described herein.

I have read the terms and conditions concerning my participation in an outpatient treatment program which are set forth in Part B of this document. I accept and agree to the terms and conditions concerning outpatient treatment. **(N/C)**

ACCEPTED AND AGREED TO: (N/C)

Dated:_____ (N/C)__________

__________(N/C)________________
(Signature of Employee)

__________(N/C)________________
(Print Name)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE** **FOR THE VILLAGE OF SLEEPY HOLLOW (N/C)**

__________(N/C)________________
(Signature)

__________(N/C)________________
(Signature)

__________(N/C)________________
(Print Name)

__________) ________________

__________(N/C)________________
(Date)

__________(N/C)________________
(Date)

**FOR THE PROGRAM (N/C)**

Date: _____(N/C)__________

__________(N/C)________________
(Signature)

__________(N/C)________________
(Print Name)

## FORM "1B" - PART B - TERMS AND CONDITIONS EMPLOYEE PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM (N/C)

Employee Name: __________ (N/C)______________________________________

Title: ____________________ (N/C)_________________________________

Outpatient Treatment
Program: _________________ (N/C)______________________________

Day, Time and Location of
Attendance: _______________ (N/C)___________________________

AGREEMENT AND CONDITIONS: (N/C)

I, ________________________________________________, understand and agree to the following conditions in connection with my return to duty and participation in the above-referenced outpatient treatment program. I understand and agree that I shall adhere to all requirements of the ________________________________ Treatment Program which I will attend on the day(s), time(s) and location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Chief of Police, my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described herein.

ACCEPTED AND AGREED TO: (N/C)

_________(N/C)__________________________ Dated:_____ (N/C)____________
(Signature of Employee)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE** **FOR VILLAGE OF SLEEPY HOLLOW (N/C)**

______(N/C)__________________________ _________(N/C)______________________________
(Signature) (Date) (Signature) (Date)

_____________________________________ _____________________________________________
(Print Name) (Print Name)

**FOR THE PROGRAM**

______________________________
(Signature) (Date)

______________________________
(Print Name)

**FORM "2"**
**<u>TERMS AND CONDITIONS</u> (N/C)**

**VILLAGE OF SLEEPY HOLLOW**
**and**
**SLEEPY HOLLOW POLICE BENEVOLENT ASSOCIATION, INC.**

**PROBATIONARY EMPLOYEE PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM**

Employee Name:_________ **(N/C)**______________________________________________

Title:____________________**(N/C)**______________________________________

Inpatient Treatment
Program:_________________ **(N/C)**_______________________________

Period of
Attendance:______________ **(N/C)**_______________________________________

AGREEMENT TO CONDITIONS: **(N/C)**

I, _______________________________, understand and agree to the following conditions concerning my participation in an Employee Assistance Program (hereinafter "Program") in connection with my substance abuse problem. I understand and agree that information concerning my participation and status in this treatment program will be released to the Chief of Police, my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the person described herein.

I have read the terms and conditions concerning my participation in an outpatient treatment program which are set forth in Part B of this document. I accept and agree to the terms and conditions concerning outpatient treatment. **(N/C)**

I further understand and agree that the period of my probationary service shall be held in abeyance during the time of my participation in the treatment program and until my return to full duty employment with the Village; that is, until I am able to return to full duty employment with the Village of Sleepy Hollow, I will not accrue any further time for purposes of my probationary period in my title. **(N/C)**

ACCEPTED AND AGREED TO: (N/C)

_____(N/C)_____________________________ Dated: _____(N/C)________________
(Signature of Employee)

_______________________________________
(Print Name)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE**

_____(N/C)_____________________________
(Signature) (Date)

_______________________________________
(Print Name)

**FOR VILLAGE OF SLEEPY HOLLOW (N/C)**

__________(N/C)__________________________
(Signature) (Date)

_______________________________________
(Print Name)

**FOR THE PROGRAM (N/C)**

______(N/C)_____________________________
(Signature) (Date)

_______________________________________
(Print Name)

# FORM "3"
## TERMS AND CONDITIONS (N/C)

## EMPLOYEE PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM (N/C)

Employee Name: ________(N/C)________________________________________

Title:__________________ (N/C)________________________________

Outpatient Treatment
__________ (N/C)______________________________

Day, ..ne and Location of
Attendance:_____________ (N/C)__________________________

·ᴵᴱNT AND CONDITIONS: (N/C)

_____________________________________, understand and agree to the following · ·itions in connection with my return to duty and participation in the above-referenced in-facility treatment program. I understand and agree that I shall adhere to all requirements of the ______________________________Treatment Program which I will attend at the location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Chief of Police, my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described herein.

ACCEPTED AND AGREED TO: (N/C)

_____(N/C)______________________________ ____________________________
(Signature of Employee) (Date) (Print Name)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE**

_____(N/C)______________________________
(Signature) (Date)

______________________________________
(Print Name)

**FOR VILLAGE OF SLEEPY HOLLOW (N/C)**

___________(N/C)_____________________________
(Signature) (Date)

______________________________________
(Print Name)

**FOR THE PROGRAM (N/C)**

(Signature) (Date)

(Print Name)

**FORM "4A"**
**TERMS AND CONDITIONS (N/C)**

**VILLAGE OF SLEEPY HOLLOW**
**AND**
**SLEEPY HOLLOW POLICE BENEVOLENT ASSOCIATION, INC.**

**EMPLOYEE DISCIPLINARY PARTICIPATION IN SUBSTANCE ABUSE TREATMENT PROGRAM**

Employee Name:________ **(N/C**________________________________________

Title:__________________ **(N/C)**________________________________________

Inpatient Treatment Program:__ **(N/C)**____________________________________

Period of Attendance:_________ **(N/C)**____________________________________

AGREEMENT TO CONDITIONS: **(N/C)**

I, ________________________________, understand and agree to the following conditions concerning my participation in the Village of Sleepy Hollow and Employee Assistance Program (hereinafter referred to as the "Program") in connection with my substance abuse problem. I understand and agree that information concerning my participation and status in this treatment program will be released to the Chief of Police my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described herein.

I have read the terms and conditions concerning my participation in the facility and the outpatient treatment program which are set forth in of this document. I accept and agree to the terms and conditions concerning in-facility and outpatient treatment. **(N/C)**

I acknowledge and admit that I am guilty of the following disciplinary charges which have been preferred against me. **(N/C)**

I understand and agree that the disciplinary penalty set forth below is being held in abeyance at the sole discretion of the Chief of Police, and that this penalty may be imposed at any time within twenty-four (24) months following my return to work at the discretion of the Chief of Police.

ACCEPTED AND AGREED TO: (N/C)

____(N/C)______________________________
(Signature of Employee) (Date)

_______________________________________
(Print Name)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE**

_____(N/C)______________________________
(Signature) (Date)

_______________________________________
(Print Name)

**FOR VILLAGE OF SLEEPY HOLLOW (N/C)**

________(N/C)____________________________
(Signature) (Date)

_______________________________________
(Print Name)

**FOR THE PROGRAM (N/C)**

_____(N/C)______________________________
(Signature) (Date)

_______________________________________
(Print Name)

**PART "4B"**
**TERMS AND CONDITIONS (N/C)**
**EMPLOYEE PARTICIPATION IN OUTPATIENT TREATMENT PROGRAM**

Name of Employee ________(N/C)________________________________

Title:__________________ (N/C)________________________________

Outpatient Treatment
Program:________________ (N/C)________________________________

Day, Time and Location of
Attendance:______________ (N/C)________________________________

AGREEMENT AND CONDITIONS: (N/C)

I, ____________________________________________, understand and agree to the following conditions in connection with my return to duty and participation in the above-referenced outpatient treatment program. I understand and agree that I shall adhere to all requirements of the ______________________________Treatment Program which I will attend on the day(s), time(s) and location stated above. I understand and agree that information concerning my participation and status in this treatment program will be released to the Chief of Police, my representative, and a representative of the program. I also understand and agree that I will be tested for intoxicants and controlled substances during my participation in the treatment program and that the results of any such tests will be released to the persons described herein.

ACCEPTED AND AGREED TO: (N/C)

______(N/C)________________________________
(Signature of Employee) (Date)

____________________________________________
(Print Name)

REVIEWED AND AGREED TO: (N/C)

**EMPLOYEE'S REPRESENTATIVE**

_____(N/C)________________________________
(Signature) (Date)

____________________________________________
(Print Name)

**FOR VILLAGE OF SLEEPY HOLLOW (N/C)**

__________(N/C)________________________________
(Signature) (Date)

**FOR THE PROGRAM (N/C)**

_____(N/C)_______________________________

(Signature) (Date)

______________________________________

(Print Name)

**ARTICLE – PERFORMANCE EVALUATIONS- The following language was previously agreed to by the parties in the Memorandum of Agreement for the period of June 1, 2004 through May 31, 2010. The parties have agreed to the following changes which have been tracked. In those areas where no changes have been made at all, (N/C) will appear, and an Article number to be incorporated in the Collective Bargaining Agreement.**

The period from April 1, 2012 through June 30, 2012 shall be a trial period in order to provide the Chief of Police the ability to meet the requirements of the Rater as set forth in this Article, and to also evaluate the Raters during this trial period. The period from July 1, 2012 through September 30, 2012 shall be a trial period in order to provide the Raters, the Sergeants and Lieutenants, the ability to evaluate the employees under their supervision during this trial period. Any evaluations during the trial periods set forth herein shall not be applicable, used, or placed in anyone's personnel file. The trial periods are being used to train the Raters and for all employees to be able to adjust to being evaluated in the future. Effective November 1, 2012, the evaluation process shall be implemented as set forth in this Article.

Effective November 1, 2012, the Village shall implement the performance evaluation attached hereto as Schedule "__" and made a part of this Agreement. The purpose of this process is to evaluate the employee's performance during the specific time period set forth herein. The rater(s) shall complete the attached performance evaluation based on objective observations of the employee, which is to be supported by written documentation, such as memo book entries, written communications, notes, recorded statistical data, and the like. The rater(s) shall be prepared to support the evaluation through documentation. This is the standard to be applied for all parts of the performance evaluation. The rater(s) shall be required to sign and date each area. The ratee shall be required to sign and date the performance evaluation on the appropriate page. The ratee's signature shall only acknowledge that he/she has participated in the conference to review the performance evaluation with the rater(s). The ratee shall be entitled to provide any written comments at the time of the review regarding the performance evaluation. An employee dissatisfied with his/her evaluation of any specific criteria, shall have the right to file an appeal objecting to that evaluation with the Chief of Police within seven (7) calendar days after the performance evaluation review. The appeal shall be in writing and specify the section(s) of the performance evaluation he/she is dissatisfied with and objecting to. If the employee is dissatisfied with the overall score, he/she shall indicate this on the written appeal. The Chief of Police shall conduct a meeting with the employee appealing and the employee's PBA representative within fifteen (15) calendar days of receipt of the appeal. The Chief of Police shall issue his/her written determination of the employee's appeal within seven (7) calendar days after the meeting with the employee and his/her PBA representative. An employee dissatisfied with any part of the Chief of Police's determination of his/her appeal may elect to file a grievance pursuant to Article 21 – Grievance Procedure and Arbitration of this agreement. For the purposes of this procedure, the grievance shall be filed directly with the Village Board at Step II, and render its written decision on the grievance as set forth therein. If the employee is dissatisfied with any part of the decision of the Village Board, he/she may proceed to

arbitration pursuant to Article 21 – Grievance Procedure and Arbitration of this agreement. At the arbitration, the Village shall have the burden of proof to establish that the performance evaluation of the employee in each criteria which has been appealed is supported by substantial evidence.

Performance evaluations shall be done two (2) times each year, once in the month of June and once in the month of December each year. **(N/C)**

Every supervisor, which shall be a Sergeant and/or Lieutenant, who has supervised an employee for at least thirty (30) work days within an evaluation period, shall submit a performance evaluation of the employee. If more than one supervisor, as defined herein, has supervised an employee for at least thirty (30) work days in the performance evaluation period, the evaluations of the supervisors shall be weighted in arriving at the employee's rating. **(N/C)**

A score of 1 to 2.49 will be considered "below standards." A score of 2.5 to 3.49 will be considered to "meet standards." A score of 3.50 and above will be considered to "exceeds standards."

The performance evaluation of a subordinate by any supervisor who has not received a total evaluation of at least "3.25" shall be considered null and void, and the subordinate employee shall be considered as "meets standards" for the evaluation period in question. The performance evaluation of a subordinate by any supervisor who has not received a total evaluation of at least "3.0" in the specific performance criteria shall be considered null and void, and the subordinate employee's score in that specific criteria shall be deemed as "meets standards" for that evaluation period.

No performance evaluation, in part or in whole, may be used for disciplinary charges, or as evidence in any disciplinary proceeding. **(N/C)**

Employees who receive "exceeds standards" on their performance evaluation shall receive an additional two (2) days paid vacation for use within one (1) year of the date of that evaluation. Employees who receive two (2) consecutive "exceeds standards" shall receive, in addition to any of the aforementioned vacation days, an additional two (2) days of vacation for each additional consecutive "exceeds standards" evaluation.

## Schedule "A"

| | (2.50%) 6/1/10 | (2.90%) 6/1/11 | (3.25%) 6/1/12 |
|---|---|---|---|
| Uncertified Police Officer* | $43,230 | $44,484 | $45,930 |
| Police Officer IV Starting | $54,038 | $55,605 | $57,412 |
| Police Officer III Starting 2nd Year | $64,861 | $66,742 | $68,911 |
| Police Offi[illegible] II Starting 3rd Y[illegible] | $76,532 | $78,751 | $81,310 |
| Po[illegible]icer I Starting 4th Year | $90,719 | $93,350 | $96,384 |
| Detective(s), School [illegible] Officer(s) and/or [illegible](s)** | $101,65 | $104,552 | $107,950 |
| Sergeant[illegible]* | $103,420 | $106,419 | $109,878 |
| Detect[illegible]Sergeant(s)**** | $105,234 | $108,286 | $111,805 |
| Lieutenant(s)***** | $111,584 | $114,821 | $118,552 |

* An uncertified Police Officer's Base Wage is 80% of the Police Officer IV Starting Base Wage. This is for new police officers who are not certified and are required to attend the basic police academy. This Base Wage shall be paid for a maximum of 26 weeks, starting with the date of hire with the Village. At the conclusion of 26 weeks, the police officer moves to Police Officer IV starting, thereafter, on his/her anniversary date (date of hire), he/she moves to Police Officer III Starting 2nd year, and so on. **(N/C)**

** Detective(s) and/or School Resource Officer(s) - 12% above Police Officer I Starting 4th Year – **N/C**

*** Sergeant(s) - 14% above Police Officer I Starting 4th Year– **N/C**

**** Detective Sergeant(s) - 16% above Police Officer I Starting 4th Year – **N/C**

***** Lieutenant(s) - 23% above Police Officer I Starting 4th Year– **N/C**

**SCHEDULE "___"**

**SLEEPY HOLLOW**
**POLICE DEPARTMENT**
**Performance Evaluation**

RATEE: ____________________ RATER(s): ________________________ DATE: ________

**Lowest** — **Highest**
1 2 3 4 5

1) APPEARANCE:
What impression does ratee make on the public? Consider personal neatness, hygiene, bearing, etc.
**Comments:**

**Lowest** — **Highest**
1 2 3 4 5

2) COMMUNICATION SKILLS:
A. VERBAL:
How does the ratee communicate with the public? With peers? Does the ratee show traits of good listening? Does the ratee show verbal respect to all?
**Comments:**

**Lowest** — **Highest**
1 2 3 4 5

B. WRITTEN:
Does the ratee express ideas and facts clearly in writing?
**Comments:**

**Lowest** — **Highest**
1 2 3 4 5

3) WORK ANALYSIS:
Consider the ratee's ability at taking the appropriate police action. Are routine written reports completed in an accurate and timely manner? Is the ratee independent and self-motivated or dependent on supervisory direction?
**Comments:**

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.



Village Administrator's Initial & Date __________
PBA President's Initial & Date __________

| | | Lowest | | | | Highest |
|---|---|---|---|---|---|---|
| 4) | WORK ATTITUDE: | 1 | 2 | 3 | 4 | 5 |

Does the ratee display a positive, cooperative attitude toward the public and other employees?

**Comments:**

5) ARRESTS: (NOT APPLICABLE TO SERGEANTS AND LIEUTENANTS)

Does the ratee's record show initiative, consistency, and regular activity? Use monthly activity sheets to support your conclusions.

| | | | | | |
|---|---|---|---|---|---|
| A. PENAL LAW: | 1 | 2 | 3 | 4 | 5 |
| B. VTL: | 1 | 2 | 3 | 4 | 5 |

**Comments:**

6) SUMMONSES: (NOT APPLICABLE TO SERGEANTS AND LIEUTENANTS)

Does the ratee show a record of dealing with problem areas, i.e., sites and directed enforcement assignment? Does the record indicate that the ratee addresses enforcement problems on daily assigned posts? Indicate positive comments or re-training suggestions.

| | | | | | |
|---|---|---|---|---|---|
| A. VTL: | 1 | 2 | 3 | 4 | 5 |
| B. PARKING: | 1 | 2 | 3 | 4 | 5 |
| C. VILLAGE CODE: | 1 | 2 | 3 | 4 | 5 |
| D. DIRECTED: ENFORCEMENT ASSIGNMENT (Example: Radar, seat belt on regular tour of duty patrol, not reimbursed overtime through grants, etc.) | 1 | 2 | 3 | 4 | 5 |

**Comments:**

| | | Lowest | | | | Highest |
|---|---|---|---|---|---|---|
| 7) | GENERAL ANALYSIS: | 1 | 2 | 3 | 4 | 5 |

Give an overall indication of the ratee's work performance? Address ratee's strengths and/or weaknesses; your suggestions, plans or goals for improving the ratee's performance.

**Comments:**

8) DESK MANAGEMENT (NOT APPLICABLE TO SERGEANTS AND LIEUTENANTS)

| | Lowest | | | | Highest |
|---|---|---|---|---|---|
| A. Interaction with public<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| B. Telephone demeanor<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| C. 911 Usage<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| D. Basic radio operation<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| E. Highway/fire radio usage<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| F. Fire paging<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| G. SHVAC paging<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |
| H. EJustice/NYSPIN operation<br>**Comments:** | 1 | 2 | 3 | 4 | 5 |

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

## FOR SERGEANTS AND LIEUTENANTS ONLY

9) <u>ADMINISTRATIVE FUNCTIONS</u>

| | | Lowest | | | | Highest |
|---|---|---|---|---|---|---|
| A. | Does the ratee show initiative and consistency to subordinates? | 1 | 2 | 3 | 4 | 5 |
| B. | Does the ratee show problem solving ability? | 1 | 2 | 3 | 4 | 5 |
| C. | Does the ratee provide direction to subordinates? | 1 | 2 | 3 | 4 | 5 |
| D. | Does the ratee follow direction from his/her supervisor? | 1 | 2 | 3 | 4 | 5 |

**COMMENTS:**

A comment is required to support each rating category, rating shall be based on rater's direct observation and/or written reports filed. Use back of sheet, if necessary.

RATER(S) SIGNATURE: ______________________________ DATE: __________



Village Administrator's Initial & Date __________
PBA President's Initial & Date __________

**RATER COMMENTS:**

Based on objective data that can be supported by written documentation, use this space to give an account of this employee's performance. Consider all the categories on the previous page in your assessment. Include your supervisory response to documented problems.

RATER(S) SIGNATURE: ______________________________ DATE: _________

**COMMENTS:**

**RATEE COMMENTS:**

I PARTICIPATED IN THE PERFORMANCE EVALUATION CONFERENCE AND HAVE REVIEWED MY EVALUATION.

COMMENTS:

RATEE'S SIGNATURE: ______________________________ DATE: _________

A comment is required to support each rating category. Rating shall be based upon Rater's direct observation of ratee. Use back of sheet if necessary.

## PILOT PROGRAM

The parties agree to develop for implementation a mutually agreeable "pilot program" that would provide for the use of part-time dispatchers to work with and/or assist police officers at the front desk post for the period of June 1, 2012 through May 31, 2013. The parties agree to meet pursuant to Article 20- Labor Management Committee to develop specific terms and conditions of employment relating to language for the "pilot program" such as, but not limited to, the number of part-time dispatchers to be hired; tours of duty to be worked; training; maximum hours to be worked in a week; effect of Article 4- Tours of Duty, Section 7; no layoff of unit members directly resulting from the use of part-time dispatchers; no abolishment of unit members positions directly due to the use of part-time dispatchers, and regular review and monitoring by the parties of the "pilot program" through labor management meetings. The parties agree that as part of the "pilot program", either party shall be able to notice the other party to end the "pilot program" with written notice provided at least sixty (60) calendar days prior to May 31, 2013, or mutually agree to extend the "pilot program" for defined periods beyond May 31, 2013.

# EXHIBIT B

**Payroll** **Village of Sleepy Hollow**

| Emp No. | Employee Name | Soc Sec No. | Period Ending | Advice Date | Type | Advice Number |
|---|---|---|---|---|---|---|
| 1048 | JOSE A. QUINOY | XXX-XX-8788 | 04/26/09 | 05/01/09 | MISC | 052662 |

| Type/Hours | | Earnings |
|---|---|---|
| SALARY | 56.00 | 2,548.58 |

| Deductions | |
|---|---|
| FICA | 158.01 |
| MEDICARE | 36.95 |
| FIT-M- 4 | 190.46 |
| SIT-M- 0 | 139.61 |
| PBA DUES | 37.00 |

| Year-To-Date | |
|---|---|
| EARNINGS | 45,430.74 |
| FIT GROSS | 45,430.74 |
| FICA | 2,816.70 |
| MEDICARE | 658.74 |
| FIT-M- 4 | 6,963.49 |
| SIT-M- 0 | 2,937.81 |
| PBA DUES | 333.00 |

| Totals | |
|---|---|
| TOTAL PAY | 2,548.58 |
| DEDUCTIONS | 562.03 |
| NET PAY | 1,986.55 |
| TAXABLE GROSS | 2,548.58 |

| Accrual Usage | | Remaining Balance |
|---|---|---|
| SICK(H) | 0.00 | 0.00 |
| VACA(H) | 0.00 | 0.00 |
| PERS(H) | 0.00 | 40.00 |
| COMP(H) | 0.00 | 0.00 |

# EXHIBIT C

# AGREEMENT

BETWEEN

THE CITY OF MOUNT VERNON

AND

THE POLICE ASSOCIATION OF

THE CITY OF MOUNT VERNON

January 1, 2006 through December 31, 2009

9/7/2007

INDEX


| | ARTICLE | PAGE |
|---|---|---|
| ASSOCIATION RIGHTS | X | 18 |
| DRUG TESTING | XIV | 20 |
| DUES CHECK-OFF | II | 1 |
| GRIEVANCE MACHINERY | XIII | 19 |
| HEALTH INSURANCE | IX | 14 |
| HOLIDAYS | VI | 8 |
| LEAVES OF ABSENCE | VIII | 10 |
| MEAL PERIODS | XII | 19 |
| OUT OF GRADE | XV | 20 |
| OVERTIME | V | 5 |
| PENSIONS | XI | 19 |
| RECOGNITION | I | 1 |
| TAYLOR LAW NOTICE §204-a | XVI | 20 |
| TERM OF AGREEMENT | XVII | 21 |
| UNIFORM CLOTHING ALLOWANCE | VII | 9 |
| WAGES- STIPENDS- LONGEVITY | III | 1 |
| WORK CHARTS | IV | 4 |
| APPENDIX A | | 22 |

10/3/06

*AGREEMENT* made and entered into this _____ day of ____________, 2006, by and between the ***CITY OF MOUNT VERNON***, New York, a municipal corporation located in the County of Westchester in the State of New York (hereinafter referred to as the "City"), and the ***POLICE ASSOCIATION OF THE CITY OF MOUNT VERNON, INC.***, a membership corporation, duly incorporated under the laws of the State of New York (hereinafter referred to as the "PBA").

**ARTICLE I. RECOGNITION**

The City recognizes the PBA as the exclusive bargaining agent for all members of the police force below the rank of Deputy Chief.

**ARTICLE II. DUES CHECK-OFF**

The City agrees to deduct from the paycheck of each employee who has signed an authorized payroll ~~deduction card, the amount certified by an officer of the PBA as association~~ dues and such other deductions authorized by the employee as are presently permitted to be deducted by the Comptroller. Deductions of dues will be made from the payroll biweekly and the total dues collected will be delivered to the Treasurer of the PBA. The Association shall indemnify and save the City harmless against any and all claims, demands, suits or other forms of liability that shall arise out of, or by reason of, action taken, or not taken, by the City for the purpose of complying with this Article.

**ARTICLE III. WAGES - STIPENDS – LONGEVITY**

A. Police Officers hired prior to 7/1/06 shall be paid the wage rates listed below for the duration of this Agreement:

10/3/06

| Effective | 1/1/06 | 1/1/07 | 1/1/08 | 7/1/08 | 1/1/09 | 7/1/09 |
|---|---|---|---|---|---|---|
| Raises of | (4%) | (4%) | (2.25%) | (2%) | (2.5%) | (2%) |
| Probation | 38,325 | 39,858 | 40,755 | 41,570 | 42,609 | 43,461 |
| 4th | 46,057 | 47,899 | 48,977 | 49,957 | 51,206 | 52,230 |
| 3rd | 53,797 | 55,949 | 57,208 | 58,352 | 59,811 | 61,007 |
| 2nd | 61,533 | 63,994 | 65,434 | 66,743 | 68,412 | 69,780 |
| 1st | 69,267 | 72,038 | 73,659 | 75,132 | 77,010 | 78,550 |
| Officers | | | | | | |
| Sergeant (19% above 1st Grade Patrolman) | 82,428 | 85,725 | 87,654 | 89,407 | 91,642 | 93,475 |
| Lieutenant (15% above Sergeant) | 94,792 | 98,584 | 100,802 | 102,818 | 105,388 | 107,496 |
| Captain (15% above Lieutenant) | 109,011 | 113,372 | 115,922 | 118,241 | 121,196 | 123,620 |

The increases to the police officers' base salaries include the following badge drain supplements:[1]

1/1/06 - 1 %  1/1/08 - .25%
1/1/07 - 1%  1/1/09 - .5%

B. Police Officers hired on or after 7/1/06 shall be paid the wages listed below:

| Effective | 1/1/06 | 1/1/07 | 1/1/08 | 7/1/08 | 1/1/09 | 7/1/09 |
|---|---|---|---|---|---|---|
| Raises of | (0%) | (0%) | (0%) | (0%) | (2.5%) | (2.0%) |
| Probation | 36,851 | 36,851 | 36,851 | 36,851 | 37,772 | 38,527 |
| 4th | 40,000 | 40,000 | 40,000 | 40,000 | 41,000 | 41,820 |
| 3rd | 45,000 | 45,000 | 45,000 | 45,000 | 46,125 | 47,048 |

[1] For an explanation of Badge Drain Supplements, see Article IX infra.

| | | | | | | |
|---|---|---|---|---|---|---|
| 2nd | 50,000 | 50,000 | 50,000 | 50,000 | 51,250 | 52,275 |
| 1st [2] | 69,267 | 72,038 | 73,659 | 75,132 | 77,010 | 78,550 |

C. Badge Drain Retention Stipend

Police officers hired on or after 7/1/06 shall be paid a one-time "stay" bonus in the amount of $2,000 in the payroll period following their 7th year of employment.

D. Detectives

All detectives assigned prior to January 1, 1988, and all detectives on tenure, shall receive a $2,000 stipend.

Members of the unit appointed as detectives on or after January 1, 1988 shall receive a stipend of $1,250 until they receive tenure.

E. Longevity

Longevity payments shall be made as follows:

$450 rate increase after 5 years of employment

$700 rate increase after 10 years of employment

$1,500 rate increase after 15 years of employment

It is intended that the rate increases remain the same after the fifth year and up to the tenth year of employment and after the tenth year and up to the fifteenth year and would not be cumulative and would never exceed the dollar differentials as that stated above.

Payments shall be made in the first pay period of December. An employee's first five-year, ten-year and fifteen-year longevity payment shall be prorated based on the number of months beyond their eligibility for the applicable longevity. If an employee leaves the

[2] Salary schedule shall be increased by the same percentages as increased for pre-7/1/06 hires.

Department prior to the first pay period in December, they shall be entitled to a prorated longevity based on the number of eligible months worked in that calendar year.

F. Retention Longevity Payments

Effective January 1, 2007, retention longevity payments shall be made as follows:

$350 lump sum payment after 7 years of employment

$750 lump sum payment after 10 years of employment

$1,500 lump sum payment after 15 years of employment

Such lump sum payments shall be made in addition to the current longevity payments indicated in Article III(E) and would be payable in a lump sum payment on or about October 15th of each year to those who are eligible and on the payroll as of that date.

**ARTICLE IV. WORK CHARTS**

A. Generally

The joint study committee created under the 2000-02 contract consisting of no more than three (3) representatives from each side shall be continued. It may make recommendations to the Police Commissioner concerning steady tours. The issues considered by the committee shall not be subject to grievance or interest arbitration.

B. Detectives

A joint study committee shall be created consisting of representatives from the Association and the City to make recommendations to the Police Commissioner concerning detectives work charts. The issues considered by the joint study committee shall not be subject to grievance or interest arbitration.

Until the Police Commissioner has approved and implemented a recommendation by the joint study committee, and contingent upon assignment responsibilities within the Detective

Division and/or the needs of the Detective Division to effectively conduct investigations that fall within its purview, members of the unit assigned to the Detective Division may also be assigned to any of the schedules that have been utilized by the Detective Division from September 22, 1999 through the date of this agreement.

## ARTICLE V. OVERTIME

A. Police Officers and Sergeants (including those with detective designations) shall receive time and one-half for all overtime except the first hour of an extended tour which will be compensated for with compensatory time on a straight time basis.

B. Authorization - Overtime shall be only as authorized by the Commissioner or his designee, the Chief of Police, the Commanding Officer, Patrol Division, the Commanding Officer of Support Services Division, the Commanding Officer of the Detective Division, or the Commanding Officer of Special Operations.

C. Members of the unit who desire to work overtime shall indicate this by submitting a MV5 to the Chief. When overtime is available, those who have submitted such MV5 will be considered first on an equitable rotating basis whenever practicable. Any member who refuses overtime on three (3) occasions in any calendar year after submitting an MV5 shall forfeit his/her rights under this provision for that calendar year.

D. 1. The City shall have the right to alter a detective's scheduled hours of work for the purpose of a court appearance (e.g., grand jury, testifying in court) without such change resulting in such straight time liability, if at least seven (7) days notice is given to the detective prior to any such schedule changes. The City may continue to make alterations in such schedules for other reasons, as it has done in the past, without such alterations resulting in straight time liability.

2. Any detective who since April 16, 1986 has been, or may hereafter be, promoted to the rank of sergeant and who pursuant to such promotion is no longer assigned as a detective, shall be allowed to transfer the compensatory time he or she accrued in the detective division records known as the "redbook", as of the effective date of his or her promotion, to the departmental compensatory time records. Such detective may, at the beginning of each year, schedule the use of up to 20% of such transferred "redbook" time subject to the approval of the Commissioner. Such scheduling shall be done at the same time that the detective submits his or her vacation request for the year. If the detective does not schedule the use of up to 20% of such transferred "redbook" time, or does not in fact utilize such scheduled time, the Commissioner may require such former detectives to utilize up to 20% of such transferred "redbook" time per year until such transferred redbook balance is exhausted, provided one (1) month's written notice is given by the Commissioner to the former detective prior to the required use of such time.

3. Any detective who may hereafter be transferred or otherwise removed from the position of detective while remaining a police officer in the employ of the Mount Vernon Police Department, shall be allowed to transfer the net compensatory time he or she accrued in the detective division records known as the "redbook" from April 16, 1986 through the date of such transfer or reassignment, to the departmental compensatory time records. Such net compensatory time accrued since April 16, 1986 shall be calculated by deducting the amount of "redbook" time utilized since April 16, 1986 from the amount of time accrued since April 16, 1986, provided further, however, for detectives who served in the Youth Division after April 16, 1986, the net compensatory time to be transferred will be calculated from the date such detective became a member of the detective division, with the amount of "redbook" time used since that date subtracted from the amount accrued since that date. Such detective may, at the beginning of

each year, schedule the use of up to 20% of such transferred "redbook" time subject to the approval of the Commissioner. Such scheduling shall be done at the same time that the detective submits his or her vacation request for the year. If the detective does not schedule the use of up to 20% of such transferred "redbook" time or does not in fact utilize such scheduled time, the Commissioner may require such former detectives to utilize up to 20% of such transferred "redbook" time per year until such transferred "redbook" balance is exhausted, provided one (1) month's written notice is given by the Commissioner to the former detective prior to the required use of such time.

4. Any detective who may hereafter retire from the Mount Vernon Police Department shall be allowed to utilize the net compensatory time he or she accrued in the detective division records, known as the "redbook", from April 16, 1986, through the date of such retirement prior to the effective date of such retirement, provided that such detective has given adequate notice to the Mount Vernon Police Department of the intended retirement to permit the utilization of such time. Adequate notice for such purposes shall constitute written notice submitted to the Commissioner at least thirty (30) days prior to the intended commencement of the utilization of such net compensatory time or other leave taken prior to retirement. Such written notice shall specify the intended date of retirement and the intent to utilize such net compensatory time prior to such date. The written notice shall also comply with any other departmental, legal, or other applicable requirements regarding retirement and submission of notices of intent to retire. Such net time accrued since April 16, 1986 shall be calculated by deducting the amount of "redbook" time utilized since April 16, 1986, from the amount of time accrued since April 16, 1986, provided further, however, for detectives who served in the Youth Division after April 16, 1986, the net compensatory time to be utilized will

be calculated from the date such detective became a member of the detective division, with the amount of "redbook" time used since that date subtracted from the amount accrued since that date.

E. Lieutenants and Captains shall receive straight time for all holdover time in excess of one-half (1/2) hour beyond a regular tour. Lieutenants shall receive compensatory time on an hour-for-hour basis for the first half hour of holdover.

If Lieutenants and Captains are called in to work overtime, they shall be paid at the rate of time and one half.

A member covered by this clause who is held over for a full tour to fill a slot shall have such time treated as a call in.

Lieutenants and Captains shall receive compensatory time on an hour for hour (or a portion thereof) basis for all other overtime.

F. Any overtime that is paid in cash will be computed in fifteen (15) minute segments. Fractions of less than fifteen (15) minutes shall be computed as fifteen (15) minutes.

G. Members of the unit who are recalled on their day off shall be guaranteed a minimum of three (3) hours' overtime at their applicable overtime rate. Members of the unit who are recalled on a day other than their day off shall be guaranteed a minimum of one (1) hour at their applicable overtime rate.

**ARTICLE VI. HOLIDAYS**

A. Members of the unit shall receive twelve (12) paid holidays in cash whether worked or not. This shall satisfy the holiday requirements mandated by law.

B. Six (6) paid holidays shall be paid in the first pay period in July and six (6) shall be paid in the first pay period of December.

C. Paid holidays shall accrue on the basis of one (1) paid holiday per month. Members of the unit who leave the force in a month in which they have worked a minimum of one full pay period shall be given one-half (1/2) day's holiday pay for that month. If the entire month is worked, a full day's pay shall be provided.

D. Members of the unit may elect to receive compensatory time in lieu of paid holidays, scheduled upon the approval of the Commissioner. If requests for such time are denied, the members shall be paid for such days as per Section A above.

## ARTICLE VII. UNIFORM CLOTHING ALLOWANCE

A. Members of the unit hired on or after January 1, 1990, shall receive a $625 uniform allowance payment after the completion of each of their first two (2) years of employment. Such payment shall be made on the employee's anniversary date. Following the second $625 payment, the uniform allowance payment for such members shall be $575 per year, payable in February of each year.

No more than one uniform allowance shall be paid in anyone calendar year.

Any member of the unit who had already received two uniform allowance payments prior to February of 1990, shall not be entitled to any $625 payments.

Members of the unit who leave the City prior to completing two years of service shall refund $250 of such uniform allowance to the City. The City is hereby authorized to deduct such amounts from the officers' final paycheck.

Members of the unit who are permanently appointed members of the Department and who are not entitled to the $625 payments outlined above, shall be entitled to the annual uniform allowances outlined above, payable in February of each year.

10/3/06

B. In the event a major change in uniform or equipment is ordered, the City shall provide at least three (3) months' notice and shall assume 60% of the cost of the initial issue of that change. A major change shall include an item which exceeds $25 in cost or cumulatively exceeds $50 in one calendar year.

## ARTICLE VIII. LEAVES OF ABSENCE

A. Personal Leave - Each member of the bargaining unit hired prior to July 1, 1981 shall be entitled to three (3) personal leave days each year. Each member of the bargaining unit hired on or after July 1, 1981 shall be entitled to one (1) personal leave day in each of their first 2 years of employment, and two (2) days each year thereafter until they reach first grade, and thereafter they shall be entitled to three (3) personal leave days each year. Personal leave shall be requested by the employee at least seventy-two (72) hours in advance and shall be subject to the approval of the Commissioner, which approval will not be unreasonably denied.

B. Vacation Leave - Sworn members of the unit hired prior to June 28, 1985 shall be granted vacation leave as follows:

| | |
|---|---|
| Police Officers | - 30 calendar days |
| Sergeants | - 32 calendar days |
| Lieutenants | - 35 calendar days |
| Captains | - 37 calendar days |

Members of the unit hired after June 28, 1985 shall receive the following vacation:

| | |
|---|---|
| After 1 year | - 15 calendar days |
| After 2 years | - 15 calendar days |
| After 3rd & 4th years | - 20 calendar days |

Thereafter, the vacation schedule for employees hired prior to June 28, 1985 shall apply.

Members of the unit who voluntarily work their vacation period(s) shall be compensated at straight time for time worked.

Vacation may be taken in two equal parts with the approval of the Commissioner.

Vacation may be taken in up to three (3) parts with approval of the Commissioner. Up to two (2) days may be reserved as floating vacation days to be scheduled and used at a later date subject to the needs of the Department as determined by the Commissioner or Chief of Police. If two (2) floating vacation days are reserved, one (1) day must be taken before June 30 of each year and the second day must be taken before November 30 of each year. If one (1) floating vacation day is reserved, it must be taken before November 30 of each year. If a member is denied use of his or her floating vacation day(s), the member will be compensated at straight time on or before December 31 of each year. No member shall be entitled to any additional calendar days of vacation leave by virtue of the provisions of this paragraph.

Vacation selections for police personnel shall be made according to seniority in rank and in squad subject to the provisions set forth below.

1. The Chief shall pick first and shall not be deemed a Captain for purposes of vacation selection. Deputy Chiefs shall pick vacation second and will not be deemed Captains for purposes of vacation selection. Thereafter, vacation selections shall be made by those other members of the unit within the Civil Service rank of Captain, according to seniority in rank. No two Deputy chiefs shall be on vacation at the same time unless approved by the Police Commissioner or Chief of Police. No two Captains shall be on vacation at the same time unless the Police Commissioner or Chief of Police approves such pick.

2. The Commanding Officer shall pick unrelated to any other individual in the Division. The Commanding Officer and Executive Officer shall not be on vacation at the same time.

At the time of leaving the Department, no member shall have received more vacation entitlement than years of service with the Department. Thus, a 20-year employee should have received 20 vacation entitlements if they retire on their anniversary date. Vacation entitlement for service of less than a year shall be prorated. In the event a member has taken more vacations than years of service, pay for such time shall be deducted from his/her wages.

Vacation entitlement for members of the unit with less than one full calendar year of service time shall be handled on a calendar basis. Vacation is earned at the rate of 1.5 days per month of service. At the completion of the calendar year, the member's initial vacation entitlement shall accrue but shall then be taken the following calendar year prorated. Thus, a member commencing employment July 1 shall accrue 7.5 days as of December 31, which shall be taken during the following calendar year according to his pick. In the following year, the employee shall receive a full vacation entitlement, assuming he continues his employment through December 31 of that year. Prior to termination, these employees shall receive any accrued unused vacation entitlement.

C. <u>Death Leave</u> - Members of the bargaining unit shall be granted three (3) working days of absence, with full pay, in the event of the death of the member's spouse, child, parent, brother, sister, mother-in-law or father-in-law and one (1) working day of absence to attend the funeral of a grandparent.

Death leave for other relatives may be granted at the discretion of the Commissioner.

D. Terminal Leave - A thirty (30) day terminal leave of absence shall be granted to members of the unit immediately preceding their retirement, provided they have a minimum of fifteen (15) years of active service in the City.

In order to be eligible for the terminal leave payment, the Officer must submit an irrevocable notice of resignation for purposes of retirement with the actual date of retirement to the City ninety (90) days prior to the effective date of retirement. This may be waived at the discretion of the Commissioner. Such notice shall be waived in cases of disability retirement.

Provided an irrevocable notice of resignation for purposes of retirement with the actual date of retirement is given by October 1 of the calendar year prior to retirement, members of the unit shall be entitled to a lump sum payment for all accrued time and terminal leave due as of the date of retirement. Failure to provide such notice will result in officers taking such time as has been taken in the past.

E. Sick Leave - Sick leave shall be governed by the Department's rules and regulations, provided, however, that members of the unit hired on or after July 1, 1981 shall be entitled to twelve (12) days of sick leave annually instead of fifteen (15).

Members of the unit who have completed one (1) year of employment (prior to the measuring year) and who work an entire calendar year and do not use any sick leave during that calendar year, shall be entitled to a cash payment of one thousand dollars ($1,000) and shall be subject to a deduction of two accrued sick days. Members who meet these requirements and have 180 days of accumulated sick leave shall be entitled to a cash payment of one thousand five hundred dollars ($1,500). Superior officers who meet these requirements and have 180 days of accumulated sick leave shall be entitled to a cash payment of one thousand eight hundred ($1,800).

Members of the unit who have completed one (1) year of employment (prior to the measuring year) and who work an entire calendar year and use only one (1) to three (3) days of sick leave during that calendar year, shall be entitled to a cash payment of five hundred dollars ($500) and shall be subject to a deduction of one accrued sick day.

Members of the unit out on 207-c leave for more than thirty (30) working days during a calendar year shall not be entitled to any compensation under this section for that calendar year.

Payments under this section will be made in February of the following calendar year.

Members of the unit may at their discretion give up to a maximum of five (5) of their accrued sick days to any other member of the unit who has exhausted all his/her accumulated leave time due to a catastrophic illness or injury.

**ARTICLE IX. HEALTH INSURANCE**

A. Active Unit Members

1. Members of the unit shall contribute 20% of the cost of their health insurance premiums.

2. Any member of the unit who elects to participate in an HMO whose premium cost exceeds that of the Empire Plan shall contribute 20% of the premium cost of the Empire Plan, and 100% of the difference between the HMO premium and the Empire Plan premium.

3. Deductions shall be made biweekly in equal amounts and in a manner administratively practical for the City.

4. If a unit member is killed in the line-of-duty, the City shall provide health insurance coverage to his or her spouse and eligible dependents for a period of fifteen (15) years unless they become eligible for substantially equivalent coverage through another source during

the fifteen 15 year period. The method of payment of such coverage shall be determined by the City.

5. If a unit member dies not in the line-of-duty, the City shall cover his or her spouse and eligible dependents for a period of five 5 years from the date of death unless they become eligible for substantially equivalent coverage prior to the expiration of the five (5) year period. Such spouse and/or dependents of active members who die not in the line-of-duty shall contribute 20% of the premium cost of the Empire Plan. The method of payment of such coverage shall be determined by the City.

6. Members hired on or after January 1, 1992 shall not be eligible for health insurance coverage by the City if they are eligible for substantially equivalent coverage through a spouse.

7. Members of the unit hired prior to January 1, 1992 shall not be eligible for health insurance coverage by the City if they are eligible for substantially equivalent coverage through a spouse. Such members shall receive $1,500, provided they remain uncovered under such plan for a period of twelve (12) consecutive months. Such payments shall be made at the end of the twelve (12) month period and annually each twelve (12) months thereafter, provided the member remains uncovered under the City's plan. Nothing contained herein shall preclude a member from reentering the plan if he/she is no longer covered by the substantially equivalent coverage of a spouse provided, however, that in the case of a member who reenters in less than twelve (12) months, no payment shall be made.

8. Members of the unit who have been ineligible for health insurance coverage due to paragraphs 6 and 7 above shall be eligible for health insurance coverage for the

minimum period prior to retirement that would allow them to become eligible for retiree health insurance coverage upon retirement.

9. The City shall implement with the first payroll in May, 2003 a plan consistent with § 125 of the Internal Revenue Code that will allow the employee's health insurance contributions to be paid with pre-tax dollars. The cost to the City shall not exceed $50 per year per unit member. Participation shall be voluntary.

B. <u>Retiree Health Insurance</u>:

The reason for the inclusion of the retiree health insurance provision set forth below is to help curb the severe "badge drain" that the City experienced. "Badge Drain" refers to the phenomenon whereby many Mount Vernon Police Officers leave their job after only a few years with the Department in order to secure another, usually higher paying, police officer position elsewhere in the region. By offering more comprehensive retiree health insurance coverage, the City seeks to encourage its police officers to remain with the Department through retirement. This rationale has also been applied to the Badge Drain supplements included in the salary increases.

1. <u>Eligibility</u>

a. In order to be eligible for the retiree health insurance coverage provided below, a retiree must have a minimum of twenty (20) years of continuous service as a Mount Vernon Police officer at the time of retirement. Those members of the unit who receive a disability retirement for an on the job injury or illness on or after 7/1/06, shall receive the same retiree health insurance plan and coverage as those members of the unit who retire with 20 years of consecutive service. The only other exception to this eligibility requirement shall be for those members of the unit who are presently on the payroll who left the Department previously and

have returned to the Department as of April 30, 2003. The parties believe there are approximately seven (7) such members. For these individuals, they shall be eligible when they have twenty (20) years of service with the Mount Vernon Police Department.

b. Retirees are ineligible for health insurance coverage if they are eligible for substantially equivalent coverage through another source. If substantially equivalent coverage is available through another source, but such coverage requires a contribution in excess of the contribution required hereunder, the City shall have the option to pay the difference in contribution rates. If the City so elects and makes such payment to the retiree, coverage through another source shall be deemed "substantially equivalent."

2. Premium Contributions

a. Effective for all retirees who retire on or after May 1, 2003, the City will contribute 80% of the cost of the health insurance premiums for individual and family health insurance coverage under the Empire Plan. Unit members who retired on or after January 1, 2003 but before May 1, 2003, shall be eligible for the 80% coverage after they have made one year of contributions following the date of their retirement, or the period of time for twelve (12) payments under the retiree rate has passed.

b. Any retiree who elects to participate in an HMO whose premiums exceed that of the Empire Plan shall contribute 20% of the premiums of the Empire Plan, and 100% of the difference between the HMO premium and the Empire Plan.

3. Reporting Requirement

Retirees who participate in the City's health insurance coverage must provide the City upon request with annual reports detailing their employment, if any, and what benefits they receive, and must otherwise fully cooperate with the "no dual benefits" requirements. If a retiree

fails to cooperate in this regard, such retiree's health insurance premium contribution shall revert to the percentage in effect prior to May 1, 2003.

C. The City may switch carriers to another plan providing comparable coverage to the Statewide plan. At least ninety (90) days' notice shall be given to the Association. In the event of a dispute as to the coverage of the new plan, the dispute shall be submitted to arbitration, provided, however, that such grievance shall be instituted at the Commissioner's level and provided further that for this case only, the decision of the Arbitrator shall be final and binding. The plan shall not be switched until a decision from the Arbitrator has been rendered.

## ARTICLE X. ASSOCIATION RIGHTS

The Association rights are to continue as heretofore, such as the use of a bulletin board, and released time for negotiations, as in the past, at the discretion of the Commissioner and according to the needs of the Department. The consent of the Commissioner shall not be unreasonably withheld.

The President, and up to a maximum of two other members of the unit, shall be released from duty where applicable, to attend negotiation sessions with the City's representatives.

The President and the Secretary or Treasurer of the Association shall normally be released from duty, where applicable, to attend the Association's regular meetings, not to exceed a maximum of three (3) hours per month.

With the approval and agreement of the Police Commissioner, the President of the Association, or his/her designee, may be permitted a reasonable amount of time, not to exceed sixteen (16) hours per week. to conduct Association business. The approval of the Commissioner shall not be unreasonably withheld.

## ARTICLE XI. PENSIONS

A. There shall be a 20-year retirement plan for police members of the State Policemen's and Firemen's Retirement System as heretofore.

B. The City shall provide for definition of final average salary with respect to the policemen as provided in Chapter 950 of the Laws of 1970; i.e., 12 months, etc.

C. The City shall provide the policemen with credit for not in excess of three years of military service in World War II, pursuant to and subject to the provisions of Chapter 457 and Chapter 467 of the Laws of 1970, provided, however, that such military service benefit may lawfully be granted separately from any other benefit.

## ARTICLE XII. MEAL PERIODS

Members of the unit shall be entitled to a thirty (30) minute meal period during their tour of duty except for those members of the unit assigned to duties in Headquarters who shall be entitled to a 45 minute meal period.

## ARTICLE XIII. GRIEVANCE MACHINERY

This Agreement is made in accordance with the cooperative spirit and the sense of fairness and justice to the adjudication of any employee grievance. Should an employee feel that his/her rights and privileges under this Agreement have been violated, he/she may initiate a grievance through the PBA.

The individual employee, through his/her PBA representative, shall review such grievance with his/her immediate superior officer.

If such grievance is not satisfactorily adjusted, then the President of the PBA shall review such grievance with the Commissioner of Police.

If such grievance is not satisfactorily adjusted, then the matter shall proceed to advisory arbitration under the rules and regulations of the American Arbitration Association.

The grievance must be submitted to arbitration within thirty (30) days of the events giving rise to the grievance, or within thirty (30) days of knowledge of the events giving rise to the grievance, or within thirty (30) days of when the grievant should reasonably have known of the events giving rise to the grievance, or it shall be deemed waived and barred.

## ARTICLE XIV. DRUG TESTING

The City's random drug testing procedures shall be as per the attached Appendix "A".

In addition, prior to promotion to a higher rank, or assignment to a specialized unit or to the detective squad, officers shall submit to a drug test. Such test will be performed in accordance with the procedures utilized for random testing with the exception of selection.

## ARTICLE XV. OUT OF GRADE

Superior Officers acting in a higher grade for a period in excess of thirty (30) days by the administrative directive of the Commissioner shall be paid an annual stipend of $350, if no other compensation is provided.

## ARTICLE XVI. TAYLOR LAW NOTICE §204-a

**IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTATION BY AMENDMENT OF LAW OR BY PROVIDING THE ADDITIONAL FUNDS THEREFOR, SHALL NOT BECOME EFFECTIVE UNTIL THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.**

10/3/06

**ARTICLE XVII. TERM OF AGREEMENT**

This contract shall be effective January 1, 2006 and shall extend until December 31, 2009.

*IN WITNESS WHEREOF*, the parties hereto have affixed their hands and seals the day and year first written above.

| | |
|---|---|
| POLICE ASSOCIATION OF THE CITY OF MOUNT VERNON, INC. | CITY OF MOUNT VERNON, NEW YORK |
| By:__________________ ____________ President | By:__________________________ Mayor |
| __________________________ City Clerk | |

10/3/06

## APPENDIX A

1. Selection of members to be tested on a random basis shall be performed by the KRS Enterprises DOT system program or its equivalent, which will randomly select the employee numbers of those to be tested. The random selection of a member will not result in that member's employee number being removed from the selection process. A password is required to randomly select employee numbers and to add or delete names and employee numbers using the DOT program. One-half of the password will be selected and maintained by the Commissioner and the Chief, and the other half by the Union President and the Union's attorney.

2. The selection will be witnessed by a representative designated by the Commissioner of Public Safety as well as a representative from the Union. Prior to commencing the selection process, the City shall specify the number of individuals to be tested and the type of test to be administered. Only the pre-specified number of individuals may actually be tested, even though more employee identification numbers may be selected. Testing shall proceed in the sequence of the employee identification numbers on the list, starting with the employee identification number at the top of the list. Up to 50% of the Department may be randomly tested within a calendar year. All designated representatives will affix their signatures to the random employee selection sheet and computer control sheet.

3. Reasonable notification will be given to an Association representative. The selection process shall not be delayed due to the unavailability of the Union representative. The Union President or the Union's attorney's office shall provide the Union representative with the Union's part of the password, in the event the Union President does not attend the selection process.

4. A member selected will be ordered to report for testing. Members will not be given any advance notice of randomly scheduled tests. The President of the Union will be permitted to review the list of members selected for testing and the computer control sheet after all selected members have been tested.

5. If a member refuses to submit to testing,[3] the member will be treated as though (s)he had a positive result and will be served with subsequent charges and specifications. The member will be relieved of duty immediately. Upon service of charges, the member will be removed from the payroll. Refusal to submit to the test is grounds for disciplinary action, up to and including termination.

6. Members of the Department will not be recalled to duty for random testing on their regular scheduled days off or on a mutual or personal day.

---

[3] A refusal to submit to testing means that a member: (1) fails to provide adequate urine or hair sample for controlled substance testing without a valid medical explanation, as determined by the Medical Review Officer, after he or she has received notice of the requirement for urine or hair testing; (2) engages in conduct that clearly obstructs the testing process; or (3) refuses to sign the appropriate release form.

7. All random employee selection sheets and corresponding computer control sheets will be maintained in the office of the Commissioner.

8. A member of the Department will be exempt from a random drug test if at the time of the selection for that particular test he or she is unavailable due to a) vacation, b) military leave, c) bereavement leave or d) jury duty leave.

Testing Procedures for Reasonable Suspicion and Random Drug Testing.

1. Drug testing will be done by means of either urinalysis or radioimmunoassay (hair) testing. Insofar as practical, the sample collection process shall be confidential with due regard for the dignity and privacy of the member. Direct observation of giving of the urine sample may be made by a person of the same gender as the member giving the specimen. Specimens shall be collected under the supervision of an officer designated by the city who is superior in rank to the officer being tested. The officer shall not be required to directly observe the giving of the urine sample unless the member has previously tampered with a test or the City has reason to suspect that the member will tamper with the test.

2. If urine testing is utilized, two separate containers supplied by the testing lab shall be given to each member being tested. The specimen shall be divided into two samples at the time of collection and shall be sealed and initialed in the presence of the employee and the City's monitor. Each container shall have a code number and date of collection affixed. The employee must identify any medications that (s)he is taking and this information will be recorded on a form supplied by the testing lab. The second sample shall remain locked in police headquarters.

3. If hair testing is utilized, two samples of hair will be taken, cut as close to the scalp as possible. If the member does not have adequate scalp hair, hair from the body shall be used instead. Each sample will be taped to a separate index card. The tester will indicate the root end of the specimen. Affixed to each index card will be a label indicating the code number of the test. Both the member being tested and the tester will initial these labels after the hair specimen has been taken and affixed to the cards. These cards will be sealed in a plastic evidence bag in the member's presence. The member being tested and the witness will then initial the plastic evidence bag. The employee must identify any medications that (s)he is taking and this information will be recorded on a form supplied by the testing lab.

4. The laboratory administering the test shall assure that the appropriate chain of custody is established in order to verify the identity of each sample being tested. The laboratory selected to perform testing shall be certified by the National Institute on Drug Abuse (NIDA) of the Department of Health and Human Services and the State of New York Department of Health.

5. Initial urinalysis testing shall be conducted by means of an enzyme multiplied immunoassay test (EMIT). Initial hair testing shall be by means of radioimmunoassay testing. All specimens identified as positive on the initial test

shall be confirmed using a gas chromatography/mass spectrometry test (GC/MS). The laboratory shall report as negative all specimens which are negative on either the initial test or the confirmatory test. Only specimens which test positive on both the initial test and the confirmatory test shall be reported as positive.

6. Copies of results shall be sent to the City and the member. If a unit member is notified of a positive result of a random drug test, he or the Union shall have the right to verify the randomness of the procedures. All tests conducted pursuant to this procedure will be paid for by the City.

7. If the test is positive for the presence of an illegal drug, the employee will be so notified and the employee will be provided with copies of all documents pertinent to the test received by the laboratory. Any member whose test results in a positive report may, within 7 calendar days of receiving notification of the result, request in writing to the Commissioner that the second untested sample, which has been retained in Police Headquarters, be submitted to the same laboratory, or an approved second testing agency, for a retest. The City will be given a copy of the results. The member shall be responsible for the expense of the second test. In the event the re-testing results in a negative report, the test will be deemed negative and all samples will be destroyed.

8. All positive test results will be reviewed and verified by a Medical Review Officer designated by the Department. The Medical Review Officer shall be one of the Police Physicians. The Medical Review Officer shall examine alternate medical explanations for a positive test result. This action could include conducting a medical interview with the individual, review of the individual's medical history, or review of any other relevant biomedical factors. The Medical Review Officer shall prepare a report for the Department. The Department will make a copy of this report available to the member.

9. The Federal Workplace Drug Testing Program standards shall be applied to the results.

Effective Date - Notice of Members.

This policy shall be effective 30 days after promulgation. Each present member will be furnished with a copy of this policy and will sign a receipt for same. Members hired in the future will be furnished a copy before or upon hiring.