UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

| | | |
|---|---|---|
| JOSE QUINOY and MARINA QUINOY, <br><br> Plaintiffs, <br><br> v. <br><br> CATHERINE PENA and THE UNITED STATES OF AMERICA, <br><br> Defendants. | : | 13 Civ. 1945 (NSR) |

-------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT AGAINST DEFENDANT UNITED STATES OF AMERICA**

PREET BHARARA
United States Attorney for the
Southern District of New York,
*Attorney for Defendant United States of America*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2721
Facsimile: (212) 637-2686

TOMOKO ONOZAWA
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT ........................................................................................1**

**STATEMENT OF FACTS...........................................................................................................2**

A. Criminal Investigation and Trial Against Quinoy ...............................................2

1. Grand Jury Testimony Regarding the Gomez Arrest ................................3

2. Grand Jury Testimony Regarding the Vilches Arrest................................4

3. Quinoy's Indictments and Arrest ..............................................................5

4. The Court's May 2010 Inquiry Into Missing Evidence ..............................5

5. Trial and Acquittal .........................................................................8

B. Plaintiffs' Administrative Tort Claim ...................................................................9

C. Plaintiffs' Complaint..........................................................................................9

**ARGUMENT.............................................................................................................................10**

**POINT I THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES ...........................10**

A. Legal Standard for a Rule 12(b)(1) Motion to Dismiss .......................................10

B. The Doctrine of Sovereign Immunity Bars Plaintiffs' FTCA Claims for False Arrest and Malicious Prosecution Against the United States, Because They Are Based on Allegations That Plaintiffs Did Not Administratively Exhaust..........................................................................10

C. The Doctrine of Sovereign Immunity Also Bars Plaintiffs' False Arrest Claim Against the United States Because Plaintiffs Did Not Timely Present That Claim.........................................................................................13

D. Plaintiffs' FTCA Claims of False Arrest and Malicious Prosecution Against the United States Must Be Dismissed to the Extent Those Claims Arise From Officer Hayes's Acts or Omissions Because He Is Not a Federal Law Enforcement Officer ..........................................................14

**POINT II PLAINTIFFS' AMENDED COMPLAINT ALSO SHOULD BE DISMISSED ON THE PLEADINGS FOR FAILURE TO STATE A CLAIM AGAINST THE UNITED STATES ..........................................................................................16**

A. Legal Standard for a Rule 12(c) Motion to Dismiss ...........................................16

B. Plaintiffs Fail to Allege a False Arrest Claim ....................................................17

C. Plaintiffs Fail to Allege a Malicious Prosecution Claim ......................................18

1. Officer D'Allessandro's Purported Statements on ID-4 Do Not Support Plaintiffs' Malicious Prosecution Claim .....................................19

2. Officer Hayes's Alleged Grand Jury Testimony Does Not Support Plaintiffs' Malicious Prosecution Claim Because It Constitutes Inconsistent Testimony, It Is Refuted by a Document Relied on by Plaintiffs, and It Is Unrelated to the Vilches Arrest Charge and the Witness Tampering Charge.........................................................................20

3. Agent Pena's Alleged Actions or Omissions Do Not Support Plaintiffs' Malicious Prosecution Claim Because They Constitute Inconsistent Testimony, and They Are Unrelated to the Witness Tampering Charge .........................................................................22

**POINT III MARINA QUINOY'S DERIVATIVE CLAIM FOR LOSS OF CONSORTIUM SHOULD BE DISMISSED BECAUSE JOSE QUINOY'S FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS AGAINST THE UNITED STATES ARE SUBJECT TO DISMISSAL .........................................................24**

**CONCLUSION ..........................................................................................................25**

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..... 18

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
968 F.2d 196 (2d Cir. 1992) ..... 11

*Bernard v. United States*,
25 F.3d 99 (2d Cir. 1994) ..... 19, 21

*Bertuglia v. City of New York*,
839 F. Supp. 2d 703 (S.D.N.Y. 2012) ..... 20

*Blasini v. City of New York*,
No. 11 Civ. 3022, 2011 WL 6224605 (S.D.N.Y. Dec. 14, 2011) ..... 21

*Bowman v. U.S. Postal Serv.*,
No. 02 Civ. 6138, 2003 WL 1395821 (S.D.N.Y. Mar. 20, 2003) ..... 14

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993) ..... 19

*Cantor Fitzgerald Inc. v. Lutnick*,
313 F.3d 704 (2d Cir. 2002) ..... 18

*Cipolla v. Cty. of Rensselaer*,
129 F. Supp. 2d 436 (N.D.N.Y. 2001) ..... 25

*Cleveland v. Caplaw Enters.,*
448 F.3d 518 (2d Cir. 2006) ..... 18

*Coakley v. Jaffe,* 72 F. Supp. 2d 362 (S.D.N.Y. 1999),
*aff'd Coakley v. Jaffe*, 234 F.3d 1261 (2d Cir. 2000) (table) ..... 20

*Davis v. United States*,
430 F. Supp. 2d 67 (D. Conn. 2006) ..... 15

*Finkel v. Putnam Convertible Opportunities and Income Trust*,
No. 96 Civ. 4810, 1997 WL 371177 (S.D.N.Y. July 3, 1997) ..... 22

*Furman v. U.S. Postal Serv.*,
349 F. Supp. 2d 553 (E.D.N.Y. 2004) ..... 12

*Glover v. United States*,
111 F. Supp. 2d 190 (E.D.N.Y. 2000) ..... 14

*Graubart v. Jazz Images, Inc.*,
No. 02-CV-4645, 2006 WL 1140724 (S.D.N.Y. Apr. 27, 2006) ........ 10

*Guthrie v. U.S. Fed. Bureau of Prisons*,
No. 09 Civ. 990, 2010 WL 2836155 (S.D.N.Y. July 7, 2010) ........ 13

*Guzman v. United* States,
11 Civ. 5834, 2013 WL 543343 (S.D.N.Y. Feb. 14, 2013) ........ 21

*Hathaway v. Cty. of Essex*,
995 F. Supp. 62 (N.D.N.Y. 1998) ........ 25

*Hebert v. United States*,
438 F.3d 483 (5th Cir. 2006) ........ 17

*Heck v. Humphrey*,
512 U.S. 477 (1994) ........ 20

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ........ 18

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 210 (2d Cir. 1987) ........ 14

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........ 22

*In re Grand Jury Subpoena*,
103 F.3d 234 (2d Cir. 1996) ........ 3

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........ 22

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013) ........ 18

*Jiminez v. United States*,
No. 11 Civ. 4593, 2013 WL 1455267 (S.D.N.Y. Mar. 25, 2013) ........ 15

*Johnson v. Rowley*,
569 F.3d 40 (2d Cir. 2009) ........ 18

*Johnston v. Town of Greece*,
983 F. Supp. 348 (W.D.N.Y. 1997) ........ 23

*Keene Corp. v. United States*,
700 F.2d 836 (2d Cir. 1983) ........ 12

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) .......... 6, 7

*Kravtsov v. Town of Greenburgh*,
No. 10 Civ. 3142, 2012 WL 2719663 (S.D.N.Y. July 9, 2012) .......... 28

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) .......... 15

*Lunney v. United States*,
319 F.3d 550 (2d Cir. 2003) .......... 10

*Morsy v. Pal-Tech, Inc.*,
No. 07 Civ. 2143, 2008 WL 3200165 (S.D.N.Y. Aug. 7, 2008) .......... 10, 11

*O'Connor v. United States*,
No. 99 Civ. 0117, 2000 WL 375238 (S.D.N.Y. Apr. 12, 2000) .......... 12

*Phifer v. City of New York*,
289 F.3d 49 (2d Cir. 2002) .......... 11

*Reed v. Medford Fire Dep't, Inc.*,
806 F. Supp. 2d 594 (E.D.N.Y. 2011) .......... 28

*Romulus v. United States*,
160 F.3d 131 (2d Cir. 1998) .......... 12

*Sash v. Rosahn*,
450 Fed. Appx. 42 (2d Cir. 2011) .......... 28

*Savino v. City of New York*,
331 F.3d 63 (2d Cir. 2003) .......... 19

*Schunk v. United States*,
783 F. Supp. 72 (E.D.N.Y. 1992) .......... 13

*Singleton v. City of New York*,
632 F.2d 185 (2d Cir. 1980) .......... 15

*Skyers v. United States*,
No. 12 Civ. 3432, 2013 WL 3340292 (S.D.N.Y. July 2, 2013) .......... 13

*Stansbury v. Wertman*,
721 F.3d 84 (2d Cir. 2013) .......... 21

*Tamares v. United States*,
07 Civ. 688, 2009 WL 691002 (S.D.N.Y. Mar. 17, 2009) .......... 12

*Toliver v. City of New York*,
No. 10 Civ. 3165, 2012 WL 7782720 (S.D.N.Y. Dec. 10, 2012) .......... 20

*United States v. Bakhtiar*,
994 F.2d 970 (2d Cir. 1993) .......... 7

*United States v. Kubrick*,
444 U.S. 111 (1979) .......... 14

*United States v. Regan*,
103 F.3d 1072 (2d Cir. 1997) .......... 23

*United States v. Tyree*,
279 Fed. Appx. 31, 33 (2d Cir. 2008) .......... 7

*United States v. Williams*,
205 F.3d 23 (2d Cir. 2000) .......... 7, 23

*Vasquez v. City of New York*,
No. 99 Civ. 4606, 2000 WL 869492 (S.D.N.Y. June 29, 2000) .......... 20

*Wang v. United States*,
No. 01 Civ. 1326, 2001 WL 1297793 (S.D.N.Y. Oct. 25, 2001) .......... 15

*Wang v. United States*,
No. 01 Civ. 1326, 2002 WL 441190 (S.D.N.Y. Mar. 20, 2002) *aff'd*, 61 Fed. Appx. 757 (2d Cir. 2003) .......... 15

**Federal Statutes**

18 U.S.C. § 1512(b)(1) .......... 5, 25

18 U.S.C. § 1512(b)(2)(A) .......... 5, 25

18 U.S.C. § 242 .......... 5, 25

28 U.S.C. § 2401(b) .......... 14

28 U.S.C. § 2675(a) .......... 9, 11, 12

28 U.S.C. § 2680(h) .......... 17

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 10

Fed. R. Civ. P. 12(c) .......... 1

Fed. R. Crim. P. 6(e) .......... 3

Fed. R. Evid. 201(b) .......................................................................................................... 20

Defendant the United States of America (the "Government"), by and through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of the Government's motion to dismiss plaintiffs Jose Quinoy and Marina Quinoy's (collectively, "Plaintiffs") Amended Complaint as against the United States for lack of subject matter jurisdiction and for judgment on the pleadings, pursuant to Rules 12(b)(1) ) and 12(c) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In his disjointed Amended Complaint, Jose Quinoy ("Quinoy"), who was indicted by a federal grand jury for two charges of using excessive force during two arrests and one charge of witness tampering, but whose jury trial led to an acquittal on two of the charges and a hung jury on the third, seeks to recover from the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Quinoy's claim for monetary damages is based on the implausible premise that his arrest and subsequent prosecution resulted from a nefarious and fraudulent scheme to defraud the grand jury. According to the Amended Complaint, the fraud was executed by Catherine Pena, a Special Agent with the Federal Bureau of Investigation, and Officer Michael Hayes, a colleague of Quinoy's with the Sleepy Hollow Police Department. Quinoy's wife, Marina Quinoy, has likewise sought to benefit from her husband's acquittal and hung jury by seeking a loss of consortium claim against the Government.

Plaintiffs' FTCA claims against the Government fail on multiple grounds. As a threshold matter, the majority of Plaintiffs' FTCA claims are jurisdictionally barred because they are based on newly-asserted allegations in their Amended Complaint that they failed to administratively exhaust.

---

[1] This Office does not represent defendant Catherine Pena, and this motion seeks no relief on her behalf.

In particular, Plaintiffs' FTCA claim for false arrest fails because Plaintiffs filed their administrative tort claim well beyond the two-year statute of limitations for asserting that claim. Finally, to the extent Plaintiffs attempt to ascribe the Government's liability for false arrest and malicious prosecution to Officer Hayes, who was employed by the Sleepy Hollow Police Department at all relevant times and was never an investigative or law enforcement officer of the federal Government, the FTCA bars their claims vis-à-vis Officer Hayes's actions.[2]

Second, were the Court to reach the merits, Plaintiffs' FTCA claims for false arrest and malicious prosecution against the Government must be dismissed on the pleadings. In addition to being jurisdictionally barred, Quinoy's false arrest claim also fails because Quinoy was arrested pursuant to a warrant issued by a magistrate judge, and has not rebutted the presumption of probable cause that attaches to that warrant. Plaintiffs also fail to allege a malicious prosecution claim because the Amended Complaint does not assert any allegations that rebut the presumption of probable cause that attached to the grand jury indictments that the Government procured against Quinoy.

## STATEMENT OF FACTS

### A. Criminal Investigation and Trial Against Quinoy

The facts below are taken from the Amended Complaint and other documents of which this Court may take judicial notice. Plaintiff Jose Quinoy ("Quinoy") was a police officer with the Village of Sleepy Hollow who was indicted by a federal grand jury on April 27, 2009 and

[2] For purposes of this motion, the Government is not challenging the Court's subject matter jurisdiction over Plaintiffs' FTCA claim for malicious prosecution with regard to Agent Pena's actions, to the extent those claims are solely based on her purported destruction of the "ID-4" recording. *See, e.g.,* Am. Compl. ¶¶ 64-67, 70-74, 77, 82. However, it is the Government's view that judgment on the pleadings is appropriate because the "ID-4" allegations are insufficient to state a claim for malicious prosecution. *See infra* at Point II.C.1.

March 24, 2010, for two counts of using excessive force when he arrested Mario Gomez ("Gomez") and Luis Vilches ("Vilches"), and one count of witness tampering. *See* Am. Compl. ¶¶ 4, 27, 87. Special Agent Catherine Pena ("Agent Pena") of the Federal Bureau of Investigation ("FBI"), who is also a defendant in this case but is not represented by this Office, allegedly handled the investigation and prosecution of Quinoy between 2007 and 2010. *Id.* ¶¶ 24, 83.

1. <u>Grand Jury Testimony Regarding the Gomez Arrest</u>

According to Plaintiffs, on October 17, 2006, Gomez called Quinoy to say that he was going down to the Sleepy Hollow police headquarters to "kick his ass." *Id.* ¶ 28. Gomez was subsequently arrested outside the police headquarters by Quinoy and other Sleepy Hollow police officers. *Id.* ¶ 29. According to Plaintiffs, during the federal grand jury proceedings that occurred before the issuance of the first April 27, 2009 indictment, various witnesses provided conflicting testimony related to Quinoy's arrest of Gomez.[3] First, Sleepy Hollow police officer Raymond D'Allesandro ("Officer D'Allesandro") purportedly appeared before a grand jury on September 18, 2008, and testified that Quinoy did not kick Gomez during the arrest. *Id.* ¶ 46. Plaintiffs further assert that Sleepy Hollow police officer Michael Gasko ("Officer Gasko") also

---

[3] By virtue of Quinoy's frequent references to grand jury testimony in his Amended Complaint, such testimony and records may arguably be considered by the Court for purposes of the Government's motion to dismiss on the pleadings. However, because matters occurring before the grand jury and records relating to grand jury materials must be kept secret pursuant to Fed. R. Crim. P. 6(e)(2) and 6(e)(6), "the burden is on the party seeking disclosure to show a particularized need that outweighs the need for secrecy." *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (internal quotations omitted). In light of the significant jurisdictional and pleading deficiencies in Plaintiffs' claims, the Government believes it is unnecessary to rely on and request the disclosure of grand jury materials to support the instant motion. However, the Government reserves the right to make an appropriate application for disclosure should the Court permit Plaintiffs to proceed with their malicious prosecution claim against the Government, and if the factual and other circumstances in this case warrant such an application.

appeared before the grand jury on October 6, 2008 and again on December 15, 2009, and testified that: Gomez placed Quinoy in a headlock and physically resisted his arrest; no one, including Quinoy, ever punched Gomez during his arrest; Quinoy actually acted in self-defense during the Gomez arrest; and Officer Gasko did not witness Quinoy taking action against Gomez after Gomez was handcuffed. *Id.* ¶¶ 30, 32, 44, 45, 47.

Additionally, Plaintiffs claim in conclusory fashion that, on January 21, 2009, Sleepy Hollow police officer Michael Hayes ("Officer Hayes") "falsely testified" before the grand jury that he saw Quinoy punch and kick Gomez during the arrest, and that he observed Quinoy punch and kick Gomez while Officer D'Allessandro placed Gomez into the passenger side of the police vehicle. *Id.* ¶¶ 38, 39. Finally, Plaintiffs assert that Officer Hayes told Agent Pena that he saw Quinoy punch and kick Gomez during the arrest. *Id.* ¶¶ 5, 41. Apparently relying on the information provided to her by Officer Hayes, Agent Pena, in turn "falsely testified" before a federal grand jury on April 27, 2009 and again on March 24, 2010, that Quinoy punched and kicked Gomez during his arrest, and used unreasonable force on Gomez. *Id.* ¶¶ 42, 43.

2. <u>Grand Jury Testimony Regarding the Vilches Arrest</u>

On December 17, 2006, Vilches allegedly appeared at the Sleepy Hollow police headquarters "brandishing a saw," and said he wanted to cut Quinoy "into pieces." *Id.* ¶ 48. Vilches purportedly fled police headquarters afterwards. *Id.* ¶ 48. On the same day, Quinoy responded to a police call about Vilches and assisted with arresting Vilches, who purportedly resisted his arrest. *Id.* ¶¶ 49, 50. On January 14, 2009, Sleepy Hollow police officer Paul Hood ("Officer Hood") testified before a federal grand jury that police officers "had to use a police dog" to assist with the arrest of Vilches. *Id.* ¶ 51. Plaintiffs further assert that the Sleepy Hollow police "also had to use a police taser" during the arrest of Vilches, although the Amended Complaint does not identify who made this statement and whether the grand jury heard any testimony to this effect.

*Id.* ¶ 52. Additionally, Plaintiffs assert that in January 2009, Vilches told FBI agents, including Agent Pena, that he actually was not tased after being handcuffed. *Id.* ¶ 53. Despite Vilches's alleged statement, Plaintiffs contend that Agent Pena "falsely testified" before a federal grand jury on April 27, 2009, that Quinoy "punched Vilches on both sides of his ribs while Vilches was under arrest." *Id.* ¶ 54. Plaintiffs also claim that Agent Pena "falsely testified" before the grand jury on March 24, 2010 that Quinoy used unreasonable force to arrest Vilches by tasing Vilches after he was already handcuffed. *Id.* ¶ 55.

3. Quinoy's Indictments and Arrest

On April 27, 2009, Quinoy was indicted by a federal grand jury for using excessive force during his arrests of Gomez and Vilches, in violation of 18 U.S.C. § 242. Am. Compl. ¶ 87; *see also* Onozawa Decl. Ex. A, Dkt. Nos. 1-2 & Ex. B. On the same day, after the indictment was returned, United States Magistrate Judge Lisa Smith issued a warrant for Quinoy's arrest. *See* Onozawa Decl. Ex. C. Quinoy was arrested on April 28, 2009. Am. Compl. ¶ 85.

On March 24, 2010, a federal grand jury returned a superseding indictment charging Quinoy with an additional count of witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(2)(A). *See* Onozawa Decl. Ex. D.

4. The Court's May 2010 Inquiry Into Missing Evidence

During the Government's investigation, Agent Pena asked Officer Hayes to wear a recording device to secretly record his conversations with Quinoy. *Id.* ¶¶ 6, 57; *see also* Onozawa Decl. Ex. E at 13:13-14:1.[4] Using an FBI recording device, Officer Hayes recorded several

[4] The Court may consider the transcript of the May 17, 2010 hearing before United States District Judge Kenneth M. Karas, because it constitutes "statements or documents incorporated into the complaint by reference," and is also a "documents possessed by or known to the plaintiff and upon which [he] relied in bringing suit." *Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d

conversations, including three conversations with Quinoy in April 2008, and one conversation with Officer D'Allessandro on May 24, 2008. *See* Onozawa Decl. Ex. E at 14:4-18, 39:19-21, 40:17-22. Plaintiffs allege that on a disc known as "ID-4," which included the May 24, 2008 conversation between Officer D'Allessandro and Officer Hayes, Officer D'Allesandro told Officer Hayes that he did not see Quinoy use unreasonable force during the Gomez arrest, and refuted Gomez's version of his arrest. Am. Compl. ¶¶ 63-64.[5] However, for reasons not stated in the Amended Complaint, Agent Pena allegedly destroyed ID-4, replaced the original ID-4 disc with a blank unformatted disc, changed a written transcript of a second recording called "ID-5" to remove all references of the ID-4 recordings, lied to the United States Attorney's Office about the contents of ID-5, and created a report which stated that the ID-4 disc was blank. *Id.* ¶¶ 7-8, 65-67, 70-72, 77. The transcript and recording of ID-4 were never recovered. *Id.* ¶ 74.

On May 17, 2010 through May 20, 2010, United States District Judge Kenneth M. Karas held a hearing to obtain testimony and documentary evidence regarding the Government's alleged intentional destruction of ID-4. Onozawa Decl. Ex. G at 3:16-21, 4:14-19. Officer Hayes and an FBI telecommunications specialist named Daphne Warrington-Gaskin were among those who testified during the four-day hearing. Am. Compl. ¶¶ 40, 75-81. On May 28, 2010, one week after the hearing, Quinoy moved to dismiss the indictment pursuant to Fed. Crim. P. 12(b)(2), on the ground that Agent Pena's purported destruction of ID-4 and her alleged cover-up "tainted the

---

Cir. 2013). *See* Am. Compl. ¶¶ 31, 33, 35, 40, 63, 75 (allegations regarding the May 17, 2010 hearing).

[5] Specifically, during the May 17, 2010 hearing, Officer Hayes testified that, during the May 24, 2008 conversation, Officer D'Allessandro said that he did not see Quinoy punch Gomez while he was restrained, and did not see Quinoy kick Gomez while he was in the police car. *See* May 17, 2010 Tr. at 43:1-15. Officer Hayes did not recall any other details of the conversation. *Id.* at 43:19-21.

entirety of the Government's investigation and subsequent indictment of the defendant." Onozawa Decl. Ex. F at 4.

On June 15, 2010, Judge Karas denied Quinoy's motion. *See* Onozawa Decl. Ex. G at 31:24-32:2.[6] In so doing, Judge Karas applied the following standard: "Destruction of evidence by the government only rises to a constitutional violation when three requirements are met: one, the government must have acted in bad faith in destroying the evidence; two, the evidence must possess an exculpatory value that was apparent before it was destroyed; and three, the defendant must be unable to obtain comparable evidence by other reasonably available means." *Id.* at 36:12-21 (citing *United States v. Tyree*, 279 Fed. Appx. 31, 33 (2d Cir. 2008); *United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000); *United States v. Bakhtiar*, 994 F.2d 970, 975 (2d Cir. 1993)).

Judge Karas held that the first prong of the above test was met because he found "there was intentional and bad-faith destruction of the evidence." *Id.* at 41:8-10, *see also* Am. Compl. ¶¶ 73, 93. However, with respect to the second prong—whether the evidence had apparent exculpatory value—Judge Karas held that, to the extent ID-4 contained a recorded conversation between Officer Hayes and Officer D'Allessandro about what D'Allessandro witnessed Quinoy do during the Gomez arrest, ID-4 was "not evidence" and "never could have been admitted for the truth of the contents," because D'Allessandro's recorded statements were "inadmissible hearsay." Onozawa Decl. Ex. G at 48:5-11. Judge Karas also found that the third prong of the test— the defendant's inability to obtain comparable evidence through reasonably available means—had not been met

[6] For purposes of the Government's Rule 12(c) motion, the Court may also consider the transcript of Judge Karas's June 15, 2010 oral decision on Quinoy's motion to dismiss the indictment, because it contains "statements or documents incorporated into the complaint by reference," and is also a "documents possessed by or known to the plaintiff and upon which [he] relied in bringing suit." *Kleinman,* 706 F.3d at 152. *See* Am. Compl. ¶¶ 73, 82, 92-94 (allegations regarding the June 15, 2010 decision).

because "the defense has access to D'Allessandro, and he could testify consistent to whatever he said on ID-4." *Id.* at 48:25-49:2. Judge Karas further noted that the Government was willing to stipulate that Officer D'Allessandro is heard saying on ID-4 that he did not see Quinoy kick or hit Gomez, so that if Officer D'Allessandro's trial testimony was inconsistent with his statements on ID-4, this stipulated fact could be used to impeach him. *Id.* at 49:2-7. Finally, Judge Karas observed that Officer D'Allessandro's grand jury testimony "substantially mirrors the alleged contents of ID-4," *id.* at 49:11-14, which Plaintiffs' Amended Complaint plainly corroborates. *See* Am. Compl. ¶ 46 ("Sleepy Hollow police officer Raymond D'Allesandro . . . testified before the federal grand jury on September 15, 2008 that Jose Quinoy did not kick Gomez during the Gomez arrest.").

Bearing in mind that "sanctions should be tailored to redress for any resulting harm to the defendant and perhaps to spur the government to handle things more carefully," *id.* at 48:7-10, Judge Karas declined to dismiss the indictment but held that an appropriate sanction was an adverse instruction to the jury—specifically, one that "allow[ed] inquiry into the circumstances of the destruction of ID-4." *Id.* at 61:1-3, 62:1-10; *see also* Am. Compl. ¶¶ 9, 93.

5. <u>Trial and Acquittal</u>

At the end of Quinoy's trial, and consistent with Judge Karas's June 15, 2010 ruling, the jury received an adverse inference instruction regarding the missing ID-4 recording. *See* Onozawa Decl. Ex. H at 2969-2970; *see also* Am. Compl. ¶ 9. On or about July 21, 2010, the jury acquitted Quinoy on the Vilches assault charge and the witness tampering charge. Am. Compl. ¶¶ 10, 95. The jury hung with respect to the Gomez assault charge, a mistrial was declared, and Judge Karas dismissed the Gomez assault charge after the Government opted not to retry Quinoy on that charge. *Id.* ¶¶ 10, 95-96; *see also* Onozawa Decl. Ex. A at Dkt. Nos. 64-65.

**B. Plaintiffs' Administrative Tort Claim**

On or about May 10, 2012, Plaintiffs served the FBI's Office of the General Counsel with an SF-95 administrative tort claim in the amount of $12 million. *See* Am. Compl. ¶ 14; Onozawa Decl., Ex. I. Plaintiffs' administrative tort claim focused on the assertion that Agent Pena had "intentionally destroyed exculpatory evidence, erasing compact discs with secretly-recorded conversations of claimant and modifying the recordings' written transcripts," thereby leading to "false charges" and "malicious prosecution." Onozawa Decl., Ex. I at 3-4. The SF-95 also asserted a derivative claim on behalf of Marina Quinoy for loss of services. *Id.* at 5.

**C. Plaintiffs' Complaint**

After six months passed without an agency determination of Plaintiffs' SF-95 claim form, *see* Am. Compl. ¶ 25; 28 U.S.C. § 2675(a), Plaintiffs filed their complaint against the Government and Agent Pena on or about March 22, 2013. Following a November 14, 2013 pre-motion conference before the Court, the Court granted Plaintiffs leave to file an amended complaint by December 31, 2013.

As against the Government, the Amended Complaint asserts FTCA claims for false arrest (Third Claim for Relief) and malicious prosecution (Fourth Claim for Relief) on the premise that, but for Agent Pena's and Officer Hayes's actions, the Government never would have arrested and prosecuted Quinoy. Am. Compl. ¶¶ 5, 90, 129. The Amended Complaint also asserts a derivative claim on behalf of Marina Quinoy (Fifth Claim For Relief) for loss of services, society, love, companionship, consortium, and support. *Id.* ¶ 140. For the reasons set forth below, Plaintiffs' claims against the Government should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

# ARGUMENT

## POINT I

## THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST THE UNITED STATES

### A. Legal Standard for a Rule 12(b)(1) Motion to Dismiss

On a Rule 12(b)(1) motion to dismiss, Plaintiffs bear the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *Graubart v. Jazz Images, Inc.*, No. 02-CV-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). In considering challenges to subject matter jurisdiction under Rule 12(b)(1), the court "must accept the material factual allegations contained in the complaint." *Morsy v. Pal-Tech, Inc.*, No. 07 Civ. 2143, 2008 WL 3200165, at *2 (S.D.N.Y. Aug. 7, 2008) (citations omitted). The Court may also consider evidence extrinsic to the pleadings. *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002) (noting that in challenges to subject-matter jurisdiction, a court "may consider materials extrinsic to the complaint"). However, in determining whether subject matter jurisdiction exists, "the court should not draw any inferences favorable to plaintiff." *Morsy*, 2008 WL 3200165, at *2 (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

### B. The Doctrine of Sovereign Immunity Bars Plaintiffs' FTCA Claims for False Arrest and Malicious Prosecution Against the United States, Because They Are Based on Allegations That Plaintiffs Did Not Administratively Exhaust

Although Congress has provided a limited waiver of sovereign immunity in the FTCA for certain common-law claims, that waiver is limited by the FTCA's requirement that an administrative tort claim be presented to the relevant agency for potential settlement before the claimant commences an FTCA lawsuit:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

> negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). The exhaustion requirement was designed "to allow the Government to investigate, evaluate and consider settlement of a claim, in order to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Furman v. U.S. Postal Serv.*, 349 F. Supp. 2d 553, 557 (E.D.N.Y. 2004). As a limitation on the waiver of sovereign immunity, the FTCA's presentment requirement "must be adhered to strictly." *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983).

Under Second Circuit law, it is well-settled that "the mere act of filing a SF 95 does not necessarily fulfill the presentment requirement of § 2675(a)." *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998); *see also Furman*, 349 F. Supp. 2d at 558 (same); *O'Connor v. United States*, No. 99 Civ. 0117, 2000 WL 375238, at *3 (S.D.N.Y. Apr. 12, 2000) (same). Instead, the SF-95 must be accompanied by "enough information to conduct an investigation and to estimate the claim's worth" and be "specific enough to serve the purposes intended by Congress in enacting section 2675(a)—to ease court congestion and avoid unnecessary litigation while making it possible for the . . . Government to expedite the fair settlement of tort claims." *Tamares v. United States*, 07 Civ. 688, 2009 WL 691002, at *3 (S.D.N.Y. Mar. 17, 2009) (citing *Romulus*, 160 F.3d at 132). Accordingly, "[a] claimant must provide more than conclusory statements which afford the agency involved no reasonable opportunity to investigate." *Id.* (quoting *Romulus*, 160 F.3d at 132).

The Amended Complaint repeatedly asserts for the first time that Officer Hayes, who was "acting as an agent" for Agent Pena, and Agent Pena herself, falsely testified before a grand jury on several occasions. Am. Compl. ¶¶ 38-39, 42-43, 54-55, 58, 89-90, 100. Nothing in Plaintiffs' May

2012 administrative tort claim refers to any false grand jury testimony that would have sufficiently put anyone on notice of additional fraudulent conduct.[7] *Compare id. with* Onozawa Decl. Ex. I. Rather, Plaintiffs' administrative tort claim to the FBI was focused solely on Agent Pena's alleged "intentional destruction of exculpatory evidence," *see* Onozawa Decl. Ex. I at 3-4.

As noted by this Court in another case, "[b]ecause of this presentment requirement, courts have dismissed allegations in FTCA suits that were not alleged in the plaintiff's administrative claim, for lack of subject matter jurisdiction." *Skyers v. United States*, No. 12 Civ. 3432, 2013 WL 3340292, at *12 (S.D.N.Y. July 2, 2013) (citing cases). *See id.* at **8-9 (dismissing portions of plaintiff's FTCA complaint relating to allegations not referenced in his administrative tort claim); *see also Schunk v. United States*, 783 F. Supp. 72, 81 (E.D.N.Y. 1992) (dismissing certain allegations in complaint for lack of subject matter jurisdiction, because administrative claim "was insufficient to allow the government to evaluate these two issues, thus [plaintiff] failed to exhaust administrative remedies"); *Guthrie v. U.S. Fed. Bureau of Prisons*, No. 09 Civ. 990, 2010 WL 2836155, at *4 (S.D.N.Y. July 7, 2010) (dismissing for lack of subject matter jurisdiction allegations related to injuries that were not alleged in plaintiff's SF-95 and therefore not exhausted). Accordingly, Plaintiffs' FTCA claims for false arrest and malicious prosecution against the United States must be dismissed to the extent these claims are premised on allegations that they never asserted in their administrative tort claim, specifically including the claims of false grand jury testimony identified earlier in this paragraph.

[7] Likewise, Quinoy's motion to dismiss his indictment before trial never raised these arguments as grounds for dismissal, but rather, focused exclusively on Agent Pena's alleged destruction of exculpatory evidence. *See generally* Onozawa Decl. Ex. F.

### C. The Doctrine of Sovereign Immunity Also Bars Plaintiffs' False Arrest Claim Against the United States Because Plaintiffs Did Not Timely Present That Claim

Plaintiffs' false arrest claim against the United States should also be dismissed for lack of subject matter jurisdiction because their administrative claim was filed with the FBI on May 10, 2012, nearly three years after Quinoy was arrested on April 28, 2009. *See* Am. Compl. ¶¶ 14, 85. Under the FTCA:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency *within two years after such claim accrues* or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). Because this statute of limitations is a condition of Congress's waiver of the federal government's sovereign immunity, it must be strictly construed, and failure to comply with its terms deprives the Court of jurisdiction. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979); *Bowman v. U.S. Postal Serv.*, No. 02 Civ. 6138, 2003 WL 1395821, at *3 (S.D.N.Y. Mar. 20, 2003); *Glover v. United States*, 111 F. Supp. 2d 190, 192 (E.D.N.Y. 2000).

An FTCA claim accrues at the time of injury, or when "the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (internal quotation marks removed). The Second Circuit and courts in this district have held that a plaintiff's false arrest claim under the FTCA accrues at the point he is detained, which, in the case of Quinoy's false arrest claim, occurred when he was arrested on April 28, 2009. *See* Am. Compl. ¶ 85. *See also Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (holding that, under federal law, plaintiff's false arrest claims accrued at the time he was arrested); *Wang v. United States*, No. 01 Civ. 1326, 2002 WL 441190, at *2 (S.D.N.Y. Mar. 20, 2002) *aff'd*, 61 Fed. Appx. 757 (2d Cir. 2003) (holding that under the

FTCA "the statutory period for a claim of false arrest begins at the time of arrest . . . ."); *Davis v. United States*, 430 F. Supp. 2d 67, 74-75 (D. Conn. 2006) (holding that plaintiff's false arrest accrued at the time she was detained) (citing cases). Although Plaintiffs had two years from Quinoy's April 28, 2009 arrest to present a false arrest claim to the FBI, they waited well over two years, or until May 10, 2012, to do so. Because the FTCA "imposes a strict jurisdictional limitation of two years during which a plaintiff may present his claim to the appropriate federal agency," *Jiminez v. United States*, No. 11 Civ. 4593, 2013 WL 1455267, at *4 (S.D.N.Y. Mar. 25, 2013), the Court should dismiss Plaintiffs' false arrest claim against the United States for lack of subject matter jurisdiction.

**D. Plaintiffs' FTCA Claims of False Arrest and Malicious Prosecution Against the United States Must Be Dismissed to the Extent Those Claims Arise From Officer Hayes's Acts or Omissions Because He Is Not a Federal Law Enforcement Officer**

The Amended Complaint improperly seeks to ascribe FTCA liability to the Government vis-à-vis Officer Hayes, who Plaintiffs conclusorily, incorrectly and implausibly claim "was acting as an agent for Pena and the FBI and/or was otherwise acting on its behalf in the criminal investigation of plaintiff Jose Quinoy." Am. Compl. ¶ 58. Plaintiffs assert that, during the May 17, 2010 hearing before Judge Karas, Officer Hayes testified that his original Sleepy Hollow Police taser report "contained falsehoods regarding the reason he tased Gomez." *Id.* ¶ 35. Moreover, Plaintiffs assert that Officer Hayes was never disciplined nor investigated for filing a "false governmental agency report." *Id.* ¶¶ 36-37. Additionally, Plaintiffs contend that Officer Hayes provided "false" grand jury testimony on January 21, 2009, when he purportedly testified that he was standing at the passenger-side door of a police vehicle when he saw Quinoy punch and kick Gomez as Gomez was being assisted into the vehicle. *Id.* ¶ 39. Plaintiffs claim this testimony was "false," because Officer Hayes later testified on May 17, 2010, that he was actually standing at the driver's side of the vehicle when he witnessed what Quinoy did to Gomez. *Id.* ¶ 40. Accordingly, Plaintiffs

repeatedly claim that Quinoy's indictments and arrest were "the product of false and misleading testimony" by Officer Hayes. *Id.* ¶¶ 5, 89, 90. For the reasons set forth below, any tort claims arising out of Officer Hayes' acts must be dismissed for lack of subject matter jurisdiction.

The FTCA expressly bars tort claims against the Government for false arrest and malicious prosecution, except when the alleged government tortfeasor is an "investigative or law enforcement officer[] of the United States Government." 28 U.S.C. § 2680(h). Section 2680(h) of the FTCA further defines an "investigative or law enforcement officer of the United States Government" to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Because the Amended Complaint asserts false arrest and malicious prosecution claims under the FTCA, the Government can only be potentially liable for Officer Hayes's acts so long as he was an "investigative or law enforcement officer of the United States Government." *Id.*

As a Sleepy Hollow police officer who was Quinoy's co-worker and who assisted with the Government's investigation, *see* Am. Compl. ¶¶ 5, 57, Officer Hayes was not an "investigative or law enforcement officer of the United States Government" within the meaning of the FTCA. Nothing in the Amended Complaint asserts, nor can assert, that Officer Hayes was ever "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). *See Hebert v. United States*, 438 F.3d 483, 487 (5th Cir. 2006) (United States not liable under Section 2680(h) for assault and battery claims arising from acts of tribal officers, where officers were not employed as federal law enforcement officers or special agents, nor were they acting in accordance with any special commission to assist a federal agency by providing law enforcement services for that agency). As a result, to the extent Plaintiffs' false arrest and malicious prosecution claims against the United States are premised on Officer Hayes'

acts or omissions, such claims must fail for lack of subject matter jurisdiction.

## POINT II

## PLAINTIFFS' AMENDED COMPLAINT ALSO SHOULD BE DISMISSED ON THE PLEADINGS FOR FAILURE TO STATE A CLAIM AGAINST THE UNITED STATES

### A. Legal Standard for a Rule 12(c) Motion to Dismiss

To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Thelen LLP*, 736 F.3d 213, 218-19 (2d Cir. 2013) (quoting *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009)). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013) (citing *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006)). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings. *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks omitted). Indeed, the court should begin by "identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. If well-pleaded factual allegations exist, the court must then determine whether "they plausibly give rise to an entitlement to relief." *Id.* When determining the sufficiency of Plaintiff's claim for Rule 12(b)(6) purposes,

> consideration is limited to the factual allegations in [plaintiff's . . .] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit.

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

**B. Plaintiffs Fail to Allege a False Arrest Claim**

Even if it were not jurisdictionally barred, which it is, *see supra* at Points I.B and I.C, Plaintiffs' false arrest claim against the Government should be dismissed for failure to state a claim. To prevail on a claim for false arrest and imprisonment, a plaintiff must establish that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). The existence of probable cause "is a complete defense to an action for false arrest." *Bernard*, 25 F.3d at 102 (2d Cir. 1994).

Here, Quinoy was indicted by a federal grand jury on April 27, 2009. Am. Compl. ¶ 87. On the same day, after the indictment was returned, a magistrate judge issued an arrest warrant, *see* Onozawa Decl. Ex. C, and Quinoy was arrested the next day. Am. Compl. ¶ 85. The Court may take judicial notice of these facts on a 12(c) motion, because they are "facts not subject to reasonable dispute that are 'generally known within the trial court's territorial jurisdiction' or 'can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned.'" *Toliver v. City of New York*, No. 10 Civ. 3165, 2012 WL 7782720, at *4 (S.D.N.Y. Dec. 10, 2012) (quoting Fed. R. Evid. 201(b)); *see also Vasquez v. City of New York*, No. 99 Civ. 4606, 2000 WL 869492, at *1 n.1 (S.D.N.Y. June 29, 2000) (taking judicial notice of criminal records submitted in support of motion to dismiss false arrest claim, including arrest report, criminal felony complaint and indictment, "not for the truth of the facts set forth therein, but for the fact that the documents existed.").

"The common law, both in New York and elsewhere, has long recognized that the tort of false arrest does not permit recovery for 'confinement imposed pursuant to legal process.'" *Coakley v. Jaffe*, 72 F. Supp. 2d 362, 363 (S.D.N.Y. 1999) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Because Quinoy was arrested pursuant to an arrest warrant predicated on a grand jury indictment, his false arrest claim against the Government must be dismissed. *See Bertuglia v. City of New York*, 839 F. Supp. 2d 703,722 n.3 (S.D.N.Y. 2012) ("A warrant predicated on a grand jury indictment bars a false arrest claim, requiring the plaintiff to proceed instead on a theory of malicious prosecution."); *Coakley v. Jaffe,* 72 F. Supp. 2d 362, 364 (S.D.N.Y. 1999) (same), *aff'd Coakley v. Jaffe*, 234 F.3d 1261 (2d Cir. 2000) (table); *Blasini v. City of New York*, No. 11 Civ. 3022, 2011 WL 6224605, at *4 (S.D.N.Y. Dec. 14, 2011) ("Even without the warrant, the pre-arrest Indictment provides sufficient probable cause to defeat any claim for false arrest").

**C. Plaintiffs Fail to Allege a Malicious Prosecution Claim**

The elements of a malicious prosecution claim under New York law are: "(1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice." *Guzman v. United* States, 11 Civ. 5834, 2013 WL 543343, at *6 (S.D.N.Y. Feb. 14, 2013) (quoting *United States v. Bernard,* 25 F.3d. 98, 104 (2d Cir. 1994)) (citation omitted). Although Plaintiffs have satisfied the first two elements, they cannot satisfy the third and fourth elements of their malicious prosecution claim.

A grand jury indictment creates a presumption of probable cause. *See Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). To rebut the presumption of probable cause, Plaintiffs must establish that "the indictment was procured by fraud, perjury, the suppression of evidence

or other police conduct undertaken in bad faith." *Id.* In the malicious prosecution context, "probable cause . . . has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* (internal quotation omitted). Although Quinoy contends that the two indictments against him were procured by fraud, suppressed evidence and other bad faith conduct, all of these arguments fail and warrant dismissal of the malicious prosecution claim as against the United States.

1. <u>Officer D'Allessandro's Purported Statements on ID-4 Do Not Support Plaintiffs' Malicious Prosecution Claim</u>

Quinoy alleges that on "ID-4," Officer D'Allesandro told Officer Hayes that Quinoy did not use unreasonable force during the Gomez arrest and also refuted Gomez's version of his arrest, which constituted "exculpatory evidence" that was never heard nor considered by a grand jury. Am. Compl. ¶¶ 63-64. The Court need not accept this allegation as true, because it is flatly contradicted by the Amended Complaint itself and by Judge Karas's observation on June 15, 2010, that Officer D'Allessandro's grand jury testimony was consistent with what he said on ID-4. *See* Am. Compl. ¶ 46; Onozawa Decl. Ex. F at 49:10-14. *See also Finkel v. Putnam Convertible Opportunities and Income Trust*, No. 96 Civ. 4810, 1997 WL 371177, at *3 (S.D.N.Y. July 3, 1997) ("Giving Plaintiff the 'benefit of all doubts' on a Rule 12(b)(6) motion to dismiss does not require courts to ignore contradictions between the allegations in the Complaint . . . ."); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) (citing *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.").

Even if the grand jury never heard the allegedly "exculpatory evidence" in ID-4, Plaintiffs cannot proceed on their malicious prosecution claim because the Government has no duty to present

exculpatory material to the grand jury. *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (citing *United States v. Williams*, 504 U.S. 36, 51-52 (1992)). In *Williams*, the Supreme Court reversed a district court's dismissal of an indictment where the Government failed to disclose "substantial exculpatory evidence" to the grand jury, noting "[i]t is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." 504 U.S. at 51. In light of this role, the Supreme Court held that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with [the grand jury] system." *Id.* at 52. Accordingly, in this case, the Government's purported withholding of exculpatory evidence to the grand jury in connection with the Gomez excessive force charge does not support plaintiffs' malicious prosecution claim. *See Johnston v. Town of Greece*, 983 F. Supp. 348, 358 (W.D.N.Y. 1997) (dismissing malicious prosecution claim based on Government's purported failure to present exonerating evidence before the grand jury).

Finally, Plaintiffs have made no factual allegations sufficient to support any plausible inference that the allegedly wrongfully omitted exculpatory evidence in ID-4 was material and necessary to the grand jury's finding of probable cause to indict Quinoy of using excessive force against Vilches and for witness tampering, because ID-4 related solely to what Officer D'Allessandro purportedly witnessed during the Gomez arrest. *See* Am. Compl. ¶¶ 63-64. The Amended Complaint therefore fails to rebut the presumption that probable cause existed for those charges, and Plaintiffs' malicious prosecution claim as to those two charges must be dismissed.

2. <u>Officer Hayes's Alleged Grand Jury Testimony Does Not Support Plaintiffs' Malicious Prosecution Claim Because It Constitutes Inconsistent Testimony, It Is Refuted by a Document Relied on by Plaintiffs, and It Is Unrelated to the Vilches Arrest Charge and the Witness Tampering Charge</u>

Plaintiffs' allegations regarding Officer Hayes's purportedly false testimony before the

grand jury fail not only for lack of subject matter jurisdiction, *see supra* at Points I.B & I.D, but because none of these allegations rise to the level of a plausible malicious prosecution claim.

As discussed *supra* at p. 14, Plaintiffs assert that Officer Hayes admitted that he filed a "false governmental agency report" when he testified on May 17, 2010 that his official Sleepy Hollow police taser report misrepresented the reasons why he used a taser on Gomez, and claim that Hayes was never investigated nor disciplined for filing this "false governmental agency report," thereby suggesting that Quinoy was unfairly punished for his role in arresting Gomez. Am. Compl. ¶¶ 34-37. Plaintiffs further assert that Officer Hayes provided "false" grand jury testimony on January 21, 2009, because he initially told the grand jury he was standing at the passenger-side door of a police vehicle when he saw Quinoy punch and kick Gomez as Gomez was being assisted into the vehicle, but conceded during the May 17, 2010 hearing that he was standing at the driver's side of the car. *Id.* ¶¶ 5, 38-40. Based on these allegations, Plaintiffs assert that Quinoy's indictments and arrest were "the product of false and misleading testimony" by Officer Hayes. *Id.* ¶¶ 89-90.

Turning first to Plaintiffs' contention that Officer Hayes filed a "false governmental agency report" and escaped investigation or discipline for doing so, this allegation is wholly unrelated to the grand jury's finding of probable cause to indict Quinoy for using excessive force against Gomez and Vilches in violation of 18 U.S.C. § 242, and for witness tampering in violation of 18 U.S.C. §§ 1512(b)(1) and (b)(2)(A).

Second, Plaintiffs' malicious prosecution claim is unsupported by Hayes's conflicting testimony about where he was standing when he observed Quinoy kick Gomez as Gomez was placed in the police car—whether it was by the passenger side of the vehicle or the driver's side of the vehicle—because as one court has made clear, "conflicting testimony is a routine part of the litigation process and, without more, cannot rebut the presumption of probable cause."

*Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 454 (N.D.N.Y. 2001). *See also United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995) (holding that "a direct conflict in testimony does not in itself constitute perjury"); *Hathaway v. Cty. of Essex*, 995 F. Supp. 62, 69 (N.D.N.Y. 1998) ("Reliance on variations in testimony, as well as defendants' failure to pursue further avenues of investigation, as evidence of fraud, suppression of evidence, or perjury are insufficient to overcome the presumption of probable cause."). More importantly, despite Officer Hayes's inconsistent testimony about where he was standing when Gomez was placed into the police vehicle, he unequivocally and repeatedly affirmed during the May 17, 2010 hearing that he saw Quinoy kick Gomez after Gomez was restrained. *See* Onozawa Decl. Ex. E at 26:13-21, 28:24-29:2, 30:13-20, 31:11-13, 113:4-8, 113:23-114:1, 115:10-20, 116:15-23, 117:21-25, 199:4-25.

Finally, assuming *arguendo* that Officer Hayes's inconsistent testimony about where he was standing when he observed Quinoy and Gomez was somehow perjurious or fraudulent, which it was not, the Amended Complaint does not and cannot plausibly allege that Officer Hayes's testimony militated against a finding of probable cause for the Vilches arrest and the witness tampering charge. As a result, to the extent Plaintiffs' malicious prosecution claim against the United States rests on Officer Hayes's actions or statements, that claim should be dismissed under Rule 12(c).

3. Agent Pena's Alleged Actions or Omissions Do Not Support Plaintiffs' Malicious Prosecution Claim Because They Constitute Inconsistent Testimony, and They Are Unrelated to the Witness Tampering Charge

Plaintiffs' allegations regarding Agent Pena's purportedly false testimony before the grand jury fail not only for lack of subject matter jurisdiction, *see supra* at Point I.B, but they also fail because they do not rise to the level of fraud, perjury, the suppression of evidence or other bad-faith police conduct.

Plaintiffs assert that on April 27, 2009, Agent Pena "falsely testified" that Quinoy punched and kicked Gomez during his arrest. Am. Compl. ¶ 42. Aside from framing her purported testimony as "false" in the most conclusory and generalized way, the Amended Complaint fails to specify how this alleged statement was false. In addition, although Plaintiffs claim that Officers Gasko and D'Allessandro told a grand jury that they never witnessed Quinoy punch or kick Gomez after Gomez was restrained, *id.* ¶¶ 44-47, as discussed previously, the fact that their testimony was merely inconsistent with Agent Pena's does not render Agent Pena's testimony perjurious in any way. *See supra* at p. 21.

In similar conclusory fashion, Plaintiffs assert that Agent Pena "falsely testified" before a grand jury on April 27, 2009, and again on March 24, 2010, that Quinoy punched Vilches on both sides of his head and tased him while he was under arrest and in handcuffs, even though Vilches purportedly told Agent Pena at one point that he was never tased after being handcuffed. *Id.* ¶¶ 53-55. At the same time, however, Plaintiffs allege that the grand jury also heard evidence about the Vilches arrest that was favorable to Quinoy's defense. For example, Officer Hood testified before a grand jury on January 14, 2009 that, during the Vilches arrest, police officers had to use a canine to assist with the arrest. *Id.* ¶ 51. Plaintiffs also suggest that other facts presumably in the record show that the Sleepy Hollow police had to tase Vilches because he was resisting arrest. *Id.* ¶ 52. Again, these alleged variations in testimony about what happened during the Vilches arrest do not render Agent Pena's testimony perjurious as a matter of law. *See supra* at p. 21. Finally, none of this alleged testimony refutes a finding of probable cause for the witness tampering charge against Quinoy.[8]

[8] Plaintiffs' claims for false arrest and malicious prosecution as to the witness tampering charge fail because the Amended Complaint lacks any allegation that undercuts the grand jury's

## POINT III

## MARINA QUINOY'S DERIVATIVE CLAIM FOR LOSS OF CONSORTIUM SHOULD BE DISMISSED BECAUSE JOSE QUINOY'S FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS AGAINST THE UNITED STATES ARE SUBJECT TO DISMISSAL

If the Court dismisses Quinoy's false arrest and malicious prosecution claims against the United States, it should also dismiss plaintiff Marina Quinoy's loss of consortium claim, because "[a] loss of consortium claim is a derivative action that depends on the viability of the primary cause of action" or "the underlying injury." *Kravtsov v. Town of Greenburgh*, No. 10 Civ. 3142, 2012 WL 2719663, at *22 (S.D.N.Y. July 9, 2012) (quoting *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011)). Because Quinoy's false arrest and malicious prosecution claims against the Government should be dismissed, *see supra* at Points I & II, Marina Quinoy's loss of consortium claim also should be dismissed. *See Sash v. Rosahn*, 450 Fed. Appx. 42, 44 (2d Cir. 2011) (upholding dismissal of spouse's derivative claims for loss of consortium due to dismissal of plaintiff's claims for relief).

---

finding of probable cause on that charge. Additionally, Officer Hayes's testimony at the May 17, 2010 hearing—to the extent it is consistent with testimony previously presented to a grand jury—indicates there was sufficient probable cause to indict Quinoy for witness tampering. At that hearing, Officer Hayes testified about recorded conversations with Quinoy in 2008, where Quinoy told Officer Hayes to say that it was *Gomez* who was actually punching and kicking Quinoy. *See* Onozawa Decl. Ex. E at 20:24-21:10. In another conversation, when Officer Hayes stated that it was Quinoy who had "kicked [Gomez] in the back of the car," Quinoy said to him, "You can't fucking say that." *Id.* at 23:3-9. Officer Hayes interpreted this to mean that Quinoy was directing him to not tell the grand jury that he had seen Quinoy punch and kick Gomez. *Id.* at 23:15-21. Officer Hayes also testified that, as part of the same conversation, Quinoy instructed him to tell the grand jury that he did not see Quinoy hit Gomez while Gomez was in handcuffs.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction and for judgment on the pleadings.

Dated: New York, New York
January 31, 2014

PREET BHARARA
United States Attorney
*Attorney for the United States of America*

By: /s/ Tomoko Onozawa

TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2721
Facsimile: (212) 637-2686
E-mail: tomoko.onozawa@usdoj.gov

*Id.* at 24:4-17.