UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                    :
JOSE QUINOY and MARINA QUINOY,                      :
                                                    :
                             Plaintiffs,            :        13-cv-1945 (NSR)
            -against-                               :
                                                    :        OPINION AND ORDER
CATHERINE PENA and THE UNITED STATES                :
OF AMERICA,                                          :
                                                    :
                             Defendants.            :
-----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Jose Quinoy and Marina Quinoy ("Plaintiffs") commenced the instant action

against Catherine Pena and the United States of America (collectively, "Defendants"), asserting

federal claims under the Fifth and Sixth Amendments of the United States Constitution and the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  Plaintiffs bring these

claims under the constitutional cause of action recognized by the Supreme Court in *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29

L.Ed.2d 619 (1971).

Defendant United States of America (the "Government") now moves, pursuant to Federal

Rule of Civil Procedure 12(b)(1) and 12(c), to dismiss the amended complaint in its entirety.

Defendant Catherine Pena ("Pena") moves to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the following reasons, Pena's motion to dismiss is GRANTED.  The

Government's motion to dismiss is GRANTED in part and DENIED in part.

**I. THE FACTS**

On October 17, 2006, Jose Quinoy ("Quinoy") was a police officer for Sleepy Hollow.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5|14|2014

(Amended Complaint at ¶ 27.) On October 17, 2006, Mario Gomez ("Gomez") called plaintiff Quinoy and informed him that he was coming down to the Sleepy Hollow Police headquarters to "kick his ass." *Id.* at ¶ 28. Subsequently, Sleepy Hollow Police Officers, including Quinoy, arrested Gomez outside the Sleepy Hollow Police Department headquarters. *Id.* at ¶ 29.

On December 17, 2006, Luis Vilches ("Vilches") entered Sleepy Hollow Police headquarters brandishing a saw and stated that he wanted to cut Quinoy "into pieces" and subsequently fled the headquarters. *Id.* at ¶ 48. Quinoy responded to a police call regarding Vilches and assisted in arresting him with other Sleepy Hollow police officers. *Id.* at ¶ 49. When Sleepy Hollow Police found Vilches on December 17, 2006, he resisted arrest. *Id.* at ¶ 50.

Sleepy Hollow Police Officer Hood ("Hood") testified before the federal grand jury on January 19, 2009 that during the Vilches arrest, police officers had to use a police dog and a police taser to assist in the arrest because Vilches was resisting arrest. *Id.* at ¶¶ 51-52. In January 2009, Vilches told Pena and other Federal Bureau of Investigation ("FBI") agents that he was not tased after being placed in handcuffs.

On or about December 12, 2007, the FBI sent a letter to the Sleepy Hollow Police Department stating that it was beginning an investigation into certain arrests that Quinoy assisted in, including the Gomez and Vilches arrests. *Id.* at ¶ 56. Pena was the lead FBI agent in the criminal investigation of Quinoy. *Id.* at ¶ 57. During the course of the FBI investigation, Pena had Michael Hayes ("Hayes"), a Sleepy Hollow police officer and Quinoy's co-worker, wear a recording device to secretly record conversations between him and Quinoy. Hayes's recordings were submitted to FBI technicians who then downloaded them onto a computer and then transferred the files onto compact discs, labeled them, and turned them over to Pena. *Id.* at ¶ 59.

1D-5, a recording Hayes made on or about June 4, 2008, contained a conversation

between Hayes and Pena regarding a prior recording, 1D-4. *Id.* at ¶ 60. In this conversation

between Hayes and Pena contained on 1D-5, Hayes informed Pena that he said "inappropriate

things" on 1D-4. *Id.* at ¶ 61. Hayes testified at a May 17, 2010 hearing before United States

District Judge Kenneth M. Karas that in a conversation on 1D-4, Officer Raymond

D'Allessandro ("D'Allensandro") told Hayes that he did not see Quinoy punch or kick Gomez

during his arrest. *Id.* at ¶ 63. There were three conversations on 1D-4, including a conversation

from May 24, 2008 between Hayes and D'Allensandro. Plaintiffs speculate that, on 1D-4,

D'Allesandro offered exculpatory evidence for Quinoy and refuted Gomez's version of his

arrest, stating that he did not witness him use unreasonable force during the Gomez arrest. *Id.* at

¶ 64.

Subsequently, Pena took active steps to block the identification of 1D-4 to the

prosecution, including changing a written transcript of 1D-5 to erase any mention of

conversations that were recorded on 1D-4 and editing it from forty-two (42) pages to thirteen

(13) pages. *Id.* at ¶ 65. Pena lied to the United States Attorney's Office by informing a paralegal

that 1D-5, which contained the conversation between her and Hayes about 1D-4, was an

inadvertent recording that contained a discussion about giving directions. *Id.* at ¶ 66. Pena

omitted the conversation between her and Hayes contained on 1D-5, which references 1D-4,

from a summary of 1D-5 that she prepared for the United States Attorney's Office. *Id.* at ¶ 67.

On or about June 6, 2008, Pena obtained the original 1D-4 compact disc from FBI evidence,

destroyed it, and replaced it with a blank disc. *Id.* at ¶ 70. On November 7, 2008, five (5) months

after obtaining 1D-4, Pena created a report which indicated that the purported 1D-4 disc was

blank. *Id.* at ¶ 72. The transcript and recording of 1D-4 were never recovered. *Id.* at ¶ 74. On

June 15, 2010, Judge Karas ruled that Pena's version of what happened to the 1D-4 recording

was "simply not credible" and that Pena intentionally destroyed 1D-4 in bad faith. *Id.* at ¶¶ 82, 93.

Plaintiffs speculate that on April 27, 2009, Pena falsely testified before a federal grand jury that Quinoy punched and kicked Gomez during his arrest and on March 24, 2010 that Quinoy used unreasonable force on Gomez during his arrest. *Id.* at ¶¶ 42-43. Plaintiffs speculate that Pena knew that this testimony was false due to the potentially exculpatory conversation contained on 1D-4 that she destroyed.

Plaintiffs speculate that on March 24, 2010, Pena falsely testified before the federal grand jury that Quinoy used unreasonable force on Vilches during his arrest by tasing him after he was already in handcuffs. *Id.* at ¶ 55. Plaintiffs speculate that Pena knew that this testimony was false because in January 2009, Vilches informed FBI agents, including Pena, that he was not tased after being placed in handcuffs. *Id.* at ¶ 53.

On or about April 28, 2009, Pena arrested Quinoy, who was charged with using unreasonable force during the Gomez and Vilches arrests. *Id.* at ¶ 85. Subsequently, on or about April 28, 2009, the Sleepy Hollow Police Department placed Quinoy on administrative suspension without pay. *Id.* at ¶ 86. On or about April 27, 2009 a federal grand jury in the United States District Court, Southern District of New York indicted Quinoy for allegedly using excessive force with Gomez and Vilches during their respective arrests. *Id.* at ¶ 87. On or about March 24, 2010 a federal grand jury in the United States District Court, Southern District of New York indicted Quinoy via a superseding indictment for allegedly using excessive force in arresting Gomez and Vilches and for witness tampering. *Id.* at ¶ 88. Plaintiffs speculate that each of these indictments was a product of Pena providing false and misleading information to the United States Attorney's Office and federal grand jury and her intentional destruction of

4

potentially exculpatory evidence. *Id.* at ¶ 89.

On or about June 15, 2010, Judge Karas ordered that Quinoy could introduce evidence before the jury at his criminal trial regarding the destruction of evidence and that an adverse inference instruction would be given to the jury. *Id.* at ¶ 92. Judge Karas also ruled that the loss of evidence was chargeable to the government, as the weight of the evidence supported that Pena intentionally destroyed evidence in bad faith and subsequently attempted to cover it up by lying. *Id.* at ¶ 93. Judge Karas also ruled that Quinoy could argue to the jury that the missing FBI tape contained exculpatory information and therefore could have created reasonable doubt as to his guilt. *Id.* at ¶ 94.

On or about July 21, 2010, a jury in the United States District Court, Southern District of New York acquitted Quinoy on the Vilches assault charge and the witness tampering charge. The jury was hung on the Gomez assault charge, so a mistrial was ordered regarding that charge. *Id.* at ¶ 95. After the Government opted not to retry Quinoy on that charge, Judge Karas ordered that the Gomez assault charge be dismissed on or about August 30, 2010. *Id.* ¶¶ 10, 95-96; *see also* Onozawa Decl. Ex. A at Dkt. Nos. 64-65. This order was entered on September 2, 2010. (Amended Complaint at ¶ 96.)

Plaintiffs filed their complaint on March 22, 2013 and an amended complaint on December 31, 2013. Defendants each moved to dismiss the amended complaint on April 4, 2014.

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss[1] for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual

---

[1] Plaintiffs cite the wrong standard that it must appear "beyond doubt that plaintiff can prove no set of facts . . . that would entitled him to relief" to dismiss this action. (*Conley v. Gibson*, 355 U.S. 1 (1957); Opp. Mem. at 13.) In 2007, the Supreme Court explicitly invalidated this pleading standard.

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When determining the plausibility of a complaint, "[i]n addition to allegations in the complaint itself, the Court may consider documents attached as exhibits and documents incorporated by reference in the complaint." *Lesene v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

A claim is "properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Id.* (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996)). When "the case is at the

pleading stage and no evidentiary hearings have been held ... [a court] must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides,* 558 F.3d 137, 143 (2d Cir. 2009) (internal citations and quotations omitted; brackets and ellipses added). However, "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Rule 12(c). *See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC,* 724 F.Supp.2d 407, 414 (S.D.N.Y. 2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 520 (2d Cir. 2006).

## III. The Federal Tort Claims Act

It is beyond cavil that the principle of sovereign immunity shields the United States from being sued without its consent and that the existence of consent is, consequently, a prerequisite for jurisdiction. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Adeleke v. United States,* 355 F.3d 144, 150 (2d Cir. 2004). In the FTCA, Congress waived sovereign immunity for suits arising from injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). A suit against the United States is the exclusive remedy for a suit for damages for such injury or loss of property. 28 U.S.C. § 2679(b)(1). This waiver of sovereign immunity must be "strictly construed in favor of the government." *Akutowicz v. United States,*

859 F.2d 1122, 1125 (2d Cir. 1988); *Pinchasow v. United States,* 408 F.Supp.2d 138, 142-43 (E.D.N.Y. 2006).

In FTCA actions, the court is bound to apply the law of the place where the incident occurred - here, New York. *See Makarova v. United States,* 201 F.3d 110, 114 (2d Cir. 2000) (citing *Richards v. United States,* 369 U.S. 1, 10–15, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962)).

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. Here, the FTCA bars Plaintiffs' prayer for $5,000,000 in punitive damages.

In addition, allegations which do not specify individual involvement are insufficient to state a *Bivens* claim against an officer. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

"Before an action may be filed under the Federal Tort Claims Act, an administrative claim must be presented to the federal agency employing the person whose act or omission caused the injury." *Valdez v. United States*, 2009 WL 2365549, at *5 (S.D.N.Y. July 31, 2009). Presentation of an administrative claim to the appropriate agency is a jurisdictional prerequisite to suit. 28 U.S.C. § 2675(a). The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first

> presented the claim to the appropriate Federal agency and his claim shall have
> been finally denied by the agency in writing and sent by certified or registered
> mail.

28 U.S.C. § 2675(a). *See generally McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124

L.Ed.2d 21 (1993). A claimant must "exhaust all administrative remedies before filing a

complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403

F.3d 76, 82 (2d Cir. 2005). The agency has up to six months to respond to a claim, and if there is

no response after six months, the claim can be assumed denied, and plaintiff can file an action in

district court. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 543.32(I); *Bakowski v. Hunt,* 150 Fed. Appx.

19, 21 (2d Cir. 2005); *Cuello v. Lindsay,* 2011 WL 1134711, at *10 (E.D.N.Y. 2011). The

administrative exhaustion requirement is jurisdictional and cannot be waived. *Celestine v. Mount

Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United

States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)).

 The administrative tort claim "must provide enough information to permit the agency to

conduct an investigation and to estimate the claim's worth." *Romulus v. United States,* 160 F.3d

131, 132 (2d Cir. 1998). Plaintiffs' administrative tort claim asserted that Pena erased a compact

disc and modified transcripts, thereby destroying "exculpatory evidence" and leading to

Quinoy's "malicious prosecution." *See generally* Compl. The Government argues that Plaintiffs'

Amended Complaint invokes "new legal theories of malicious prosecution that are distinct from

the facts asserted in their tort claim, and create new factual predicates that their claim never

suggested nor alluded to." (Gov't Reply at 3.) The Court agrees that Plaintiffs' administrative

tort claim did not give the FBI notice of any alleged complicity between Pena and Hayes.

Additionally, any alleged involvement on the part of Hayes cannot support Plaintiffs' FTCA

claims because he was not a federal law enforcement officer. Thus, the Court finds that Plaintiffs' FTCA claims are premised only on Pena's alleged acts and omissions.

## 1. FTCA Claims against Pena

The FTCA only creates remedies against the United States, not its agents or employees. 28 U.S.C. § 2679; *see also Rivera v. United States,* 928 F.2d 592, 609 (2d Cir. 1991); *Dockery v. Tucker*, 73 F.Supp.2d 224, 228 (E.D.N.Y. 1998). This provision provides government employees with immunity against claims of common-law tort, but does not apply to suits for violation of federal constitutional or statutory rights. *See id.* § 2679(b)(2). Plaintiffs "allege . . . [at] all times relevant, Pena's actions were performed in the scope of her employment as an FBI Agent." (Pl. Opp. Mem. at 7, 19-20; Am. Compl. ¶¶ 101, 109, 118, 127.)  As such, Plaintiffs' tort claims of false arrest and malicious prosecution against Pena are dismissed.

## 2. FTCA Claims against the Government

There are many exceptions to the FTCA. One exception, section 2680(h), "commonly known as the intentional tort exception, bars all claims arising in connection with, amongst others, 'false imprisonment, false arrest [and] malicious prosecution.'" *Davis v. United States,* No. 03 Civ. 1800, 2004 WL 324880, at *6 (S.D.N.Y. Feb. 19, 2004) (quoting 28 U.S.C. § 2680(h)). However,

> [t]his exception to the general rule of sovereign immunity does not apply ... to the 'acts or omissions of investigative or law enforcement officers,' and the federal government thus remains liable for the intentional torts of those officers. The FTCA defines 'investigative or law enforcement officer' as 'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law.'

*Id.* Consequently, "the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors." *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.

1994). This includes Assistant United States Attorneys ("AUSAs"). *See Bakowski v. Kurimai,* No. 3:98 Civ. 2287, 2000 WL 565230 (D. Conn. Mar. 20, 2000), *aff'd,* 387 F. App'x. 10 (2d Cir. 2003) (citing *Wright v. United States,* 719 F.2d 1032, 1034 (9th Cir. 1983)); *see also Dirienzo v. United States,* 690 F.Supp. 1149, 1158 (D. Conn. 1988).

### a. False Arrest Claim against the Government

Courts lack subject matter jurisdiction over a plaintiff's FTCA claim if the plaintiff fails to bring suit within the appropriate period. *See United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Government avers that Plaintiffs have filed their false arrest claim well beyond the two-year statute of limitations.  Before initiating an FTCA action in federal district court, a claimant must file an administrative tort claim with the appropriate federal agency within two years of the date of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a); *Genao v. United States,* No. 08–cv–878, 2010 WL 3328017, at *1 (E.D.N.Y. Aug. 19, 2010). Ordinarily, a plaintiff's FTCA claim accrues on the date that the plaintiff discovers he has been injured, *Valdez v. United States,* 518 F.3d 173, 177 (2d Cir. 2008) (citing *Kronisch v. United States,* 150 F.3d 112, 121 (2d Cir. 1998)), and the limitations period is strictly construed, *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 189 (2d Cir. 1999). Moreover, "because the FTCA creates a waiver of sovereign immunity . . . all ambiguities are resolved in favor of the United States." *Glorioso v. F.B.I.,* No. 10–cv–3724, 2012 WL 5377801, at *4 (E.D.N.Y. June 21, 2012). Plaintiffs bear the burden of pleading and proving compliance with Section 2401(b). *Johnson,* 189 F.3d at 189; *Wang v. United States,* 61 Fed.Appx. 757, 759, 2003 WL 1785891, at *2 (2d Cir. 2003).

Plaintiffs filed their administrative claim with the FBI on May 10, 2012. (Am. Compl. ¶ 14.) The false arrest claim accrued, as it ordinarily does under federal law, at the time of

Quinoy's arrest on April 28, 2009. *Id.* at ¶ 85; *Wang,* 61 Fed.Appx. at 759. Plaintiffs' opposition fails to address their failure to file an administrative claim for false arrest within two years of accrual; accordingly, they abandon their argument. *See Concord Associates, L.P. v. Entertainment Properties Trust*, 2014 WL 1396524, at *23 (S.D.N.Y. April 9, 2014). Thus, this Court lacks subject matter jurisdiction of Plaintiffs' false arrest claim and dismissal is proper. *Wang,* 61 Fed.Appx. at 759.

Moreover, Plaintiffs' false arrest claim fails on the merits. A claim for false arrest brought under *Bivens* or New York law requires proof that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier,* 316 F.3d 128, 134–35 (2d Cir. 2003). The confinement is "otherwise privileged" if probable cause exists at the time of the arrest. *Id.* at 135; *Henning v. City of New York,* No. 09–CV–3998, 2012 WL 2700505, at *4 (E.D.N.Y. July 5, 2012). Therefore, the existence of probable cause "is an absolute defense to a false arrest claim." *Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir. 2006); *Evans v. Solomon,* 681 F.Supp.2d 233, 241 (E.D.N.Y. 2010). *See also Johnson v. City of New York,* 2006 WL 2354815, at *3 (S.D.N.Y. Aug. 14, 2006) ("a false arrest claim fails if the underlying detention occurred during a search pursuant to a warrant predicated on probable cause." (citing *Michigan v. Summers,* 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)).

The law is clear that establishing probable cause does not require meeting a particularly demanding standard. *United States v. Solomonyan,* 452 F, Supp.2d 334, 343 (S.D.N.Y. 2006). By definition, only "probability" of criminal conduct need be shown - not certainty. *Illinois v. Gates,*

462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); *accord Ricciuti v. New York City Transit Authority,* 124 F.3d 123, 128 (2d Cir. 1997).

Probable cause is to be analyzed from an objective perspective. *Jaegly,* 439 F.3d at 153. Therefore, the state of mind of the arresting officer is irrelevant to the probable cause determination; "[t]hat is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck,* 543 U.S. at 153; *see Jaegly,* 439 F.3d at 153 (noting that the Supreme Court has "rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer"). The evidence in support of the existence of probable cause must be viewed in its totality; each piece of evidence contributes to a finding of probable cause, even if that piece of evidence viewed individually fails to establish probable cause. *See Stansbury v. Wertman,* 721 F.3d 84, 92–95 (2d Cir. 2013). Inculpatory evidence and contemporaneous exculpatory evidence must be considered when determining the existence of probable cause. *See Fabrikant v. French,* 691 F.3d 193, 214 (2d Cir. 2012).

"It is well-established that where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for false arrest." *Williams v. Young*, 769 F.Supp.2d 594,

602 (S.D.N.Y. 2011) (citing *Jones v. Trump,* 971 F.Supp. 783, 788–89 (S.D.N.Y. 1997) (citing

*Singer v. Fulton County Sheriff,* 63 F.3d 110, 118–19 (2d Cir. 1995)); *Coakley v. Jaffe,* 72

F.Supp.2d 362, 363–64 (S.D.N.Y. 1999); *Little v. City of New York,* 487 F.Supp.2d 426, 439

(S.D.N.Y. 2007)). "Normally, the issuance of a warrant by a neutral magistrate, which depends

on a finding of probable cause, creates a presumption that it was objectively reasonable for the

officers to believe that there was probable cause." *Golino v. City of New Haven,* 950 F.2d 864,

870 (2d Cir. 1991) (citations omitted). A reviewing court should pay great deference to the

determination of a neutral magistrate judge that probable cause existed to issue a warrant. *United

States v. Smith,* 9 F.3d 1007, 1012 (2d Cir. 1993). Where the presumption of probable cause

arises from a validly-executed warrant, a plaintiff alleging false arrest must show that the officer

who submitted the probable cause affidavit "knowingly and intentionally, or with reckless

disregard for the truth, made a false statement in his affidavit or omitted material information,

and that such false or omitted information was necessary to the finding of probable cause."

*Soares v. State of Conn.,* 8 F.3d 917, 920 (2d Cir. 1993) (internal quotation and citation omitted);

*see also Golino,* 950 F.2d at 870–71. In civil rights cases involving the claim of false arrest or

prosecution without probable cause, a court "put[s] aside allegedly false information, suppl[ies]

any omitted information and determine[s] whether the contents of the 'corrected affidavit' would

have supported a finding of probable cause." *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.

1992); *Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir. 1990). Thus, "a plaintiff who argues that a

warrant was issued on less than probable cause faces a heavy burden." *Golino,* 950 F.2d at 870.

  In this case, the Government avers that Quinoy was arrested pursuant to a warrant signed

by a magistrate judge and his pleadings have not rebutted the presumption of probable cause that

attached to that warrant. Here, a reasonable officer would have believed, based on the grand

jury's indictment and the federal Magistrate Judge's issuance of the warrant for Quinoy's arrest on the charges in the indictment, that there was probable cause to arrest Quinoy. Given the existence of probable cause for Quinoy's arrest, he cannot maintain his FTCA false arrest claim against the Government as a matter of law.

**b. Malicious Prosecution Claim against the Government**

A claim for malicious prosecution brought under *Bivens* requires proof of four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceedings in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York,* 612 F.3d 149, 160–61 (2d Cir. 2010) (internal quotation marks omitted); *Williams v. Young,* 769 F.Supp.2d 594, 603 (S.D.N.Y. 2011). Plaintiffs meet the first two elements of malicious prosecution; the following discussion concerns the latter two elements.

As with a false arrest claim, "'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Stansbury,* 721 F.3d at 94–95 (quoting *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)). However, the probable cause standard in a malicious prosecution is "slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* at 95. When a court determines that there was probable cause at the time of the arrest, there can be no claim for malicious prosecution "in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest." *Johnson v. City of Mount Vernon,* No. 10–CV–70006, 2012 WL 446618, at *5 (S.D.N.Y. Sept. 18, 2012)

15

(citing *Rodriguez v. City of New York,* No. 08–CV–04173, 2012 WL 1059415, at *11 (E.D.N.Y. Mar. 28, 2012)).

In this case, the FBI arrested Quinoy based on a warrant issued by Magistrate Judge Smith. *See* Onozawa Decl. Ex. C. The FBI presented their evidence supporting probable cause to the Magistrate Judge. The officers are entitled to rely on the issuing judge's decision that probable cause exists and the officers are shielded from any liability relating to the arrest if they relied on the judge's decision in good faith. *United States v. Leon,* 468 U.S. 897 (1984). Likewise, a grand jury indictment also creates a presumption of probable cause that can be overcome only by a showing that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir. 1994) (citing *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)).

Plaintiffs argue that the indictment in this case cannot serve as the basis for a finding of probable cause because the Grand Jury proceedings were tainted by Pena's false testimony "on several occasions" and her destruction of evidence tending to exonerate Plaintiff and her concealment of its destruction. (Pl. Opp. to Gov't at 21.) Plaintiffs allege that Pena deliberately supplied misleading information to the Government to influence the prosecution. (Pl. Opp. to Pena at 22.) Pena counters that Plaintiffs' claim that Pena lied before the grand jury is "rank speculation" and conjecture that does not state a claim. (Pena Reply at 2.) In general, matters occurring before the grand jury are to be kept secret. *See* Fed. R. Crim. P. 6(e)(2). Plaintiffs' complaint and oppositions do not claim any knowledge whatsoever about Pena's actual testimony or explain why she could have testified about facts related to Quinoy's conduct when she was not present during the Gomez and Vilches arrests at issue.  (Pena Reply at 2-3.) Pena

16

also claims absolute immunity for the act of testifying to the grand jury. (Pena Reply at 3.)
However, Pena cites *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012), which the Supreme Court
applied to 42 U.S.C. § 1983 cases. This case does not apply because Pena was not acting under
color of state law. Rather, Pena was allegedly acting under color of federal law. *See Chin v.
Bowen,* 833 F.2d 21, 24 (2d Cir. 1987) (holding that Section 1983 and *Bivens* actions "are not
precisely parallel.")

The proceedings against Quinoy began with a grand jury indictment, rather than the filing
of a criminal complaint by a federal law enforcement officer.  Based on a review of the evidence
submitted, Quinoy has not met the heavy burden of rebutting the presumption of probable cause.
Plaintiffs allege that on 1D-4, D'Allesandro told Hayes that Quinoy did not use unreasonable
force during the Gomez arrest and refuted Gomez's version of his arrest. (Am. Compl. ¶¶ 63-64.)
This does not suggest that Pena provided false grand jury testimony. "[C]onflicting testimony is
a routine part of the litigation process and, without more, cannot rebut the presumption of
probable cause." *Cipolla v. County of Rensselaer,* 129 F.Supp.2d 436, 454 (N.D.N.Y. 2001). *See
also Hathaway v. County of Essex,* 995 F.Supp. 62, 69 (N.D.N.Y. 1998). ("Reliance on
variations in testimony, as well as defendants' failure to pursue further avenues of investigation,
as evidence of fraud, suppression of evidence, or perjury are insufficient to overcome the
presumption of probable cause.").

Plaintiffs' pleading of actual malice is limited to Pena. The issue is whether federal
prosecutors or federal law enforcement officers instituted the prosecution. *See Bernard v. United
States,* 25 F.3d 98, 104 (2d Cir.1994); *see also Bakowski v. Kurimai,* No. 98 Civ. 2287, 2000 WL
565230 at *3 (D. Conn. Mar. 20, 2000) (stating that AUSAs are not law enforcement officers for
purposes of the FTCA). "A malicious prosecution claim is barred by the FTCA when 'control of

the prosecution pass[es] to the prosecutor.'" *Davis,* 2004 WL 324880, at *6 (quoting *Bernard,* 25 F.3d at 104) ("Because the FTCA does not authorize suits for intentional torts based upon the actions of Government prosecutors, plaintiff cannot support his malicious prosecution claim with facts that arose after his indictment."). This court lacks subject-matter jurisdiction to hear any malicious prosecution claim against the AUSAs, who cannot be held liable for malicious prosecution under the FTCA. Per Second Circuit case law, control of Quinoy's prosecution passed to the AUSAs when the grand jury issued an indictment. *See Bernard,* 25 F.3d at 104 ("Once the grand jury indicted Bernard, control of the prosecution passed to the prosecutor and was no longer within the agent's authority.).

  To find liability, the Court must determine whether Pena exerted enough control over the prosecution before the indictment. *See Frigerio v. U.S.*, 2011 WL 3163330, at *10 (S.D.N.Y. July 22, 2011). The law enforcement officer must do far more than simply aid in the investigation.  Courts consider control to have passed to the prosecutor when the attorneys "exercise ... independent judgment. At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Townes v. City of New York,* 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted). A case arising in the District of Connecticut held that once the prosecutors take control of the case, a court cannot impose liability for malicious prosecution unless "the defendant (i.e., the FBI agents) [can] be shown to have taken an active part in the proceedings." *Dirienzo,* 690 F.Supp. at 1158. That court cited the Restatement of Torts for the proposition that:

>  "[T]he defendant must take an active part in [the] prosecution after learning that there is no probable cause for believing the accused guilty.... His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable [for continuation of the prosecution] merely because he intentionally refrains from

18

> informing a public prosecutor, into whose control the prosecution has passed, of
> subsequently discovered facts that clearly indicate the innocence of the accused,
> even though they have the effect of convincing him that this is the fact."

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 655 cmt. c (1977)).

The Government argues that there is no harm caused by the loss of 1D-4 because Plaintiffs allege that "the grand jury actually heard Officer D'Allessandro testify: 'Sleepy Hollow police officer Raymond D'Allessandro . . . testified before the federal grand jury on September 15, 2008 that Jose Quinoy did not kick Gomez during the Gomez arrest.'" (Am. Compl. ¶ 46.) *See also* Onozawa Decl. Ex. G at 49:10-14 (noting that "D'Allessandro's Grand Jury testimony, which, it's been represented to the court, substantially mirrors the alleged contents of 1D-4."). However, at this stage, this Court cannot make factual determinations as to grand jury testimony and the contents of 1D-4.

This Court finds questions of fact regarding whether and how Pena motivated the prosecution. Quinoy attempts to infer that Pena insisted upon or urged continued prosecution. Whether Pena exerted such control over the prosecution that the prosecutor ceased to exert his independent judgment is a question of fact that cannot be resolved on the pleading stage. Plaintiffs' malicious prosecution claim against the Government survives this motion to dismiss.

## IV. Fifth Amendment Due Process

The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." *United States v. Yousef*, 327 F.3d 56, 85 (2d Cir. 2003). The Due Process Clause of the Fifth Amendment "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is

19

'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted).

Pursuant to *Brady v. Maryland,* "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For evidence to be material, more is required than the just the mere possibility that the undisclosed evidence might have helped the defense or otherwise might have affected the outcome of the trial. *United States v. Agurs,* 427 U.S. 97, 109–10 (1976). Rather, evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Bagley,* 473 U.S. 667, 682 (1985). A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.; see also Kyles v. Whitley,* 514 U.S. 419, 434–35 (1995). Here, Quinoy would not have wanted the outcome of the trial to be different because he was acquitted.

"[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (discussing the scope of remedial measures in the context of 4th, 5th, and 6th Amendment violations). Appropriate measures will "identify and then neutralize the taint by tailoring relief appropriate in the circumstance . . . ." *Id.* at 365. The Second Circuit has adopted a pragmatic balancing approach where the court considers "the government's culpability for the loss [of the evidence], together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof." *United States v. Grammatikos,* 633 F.2d 1013,

20

1020 (2d Cir. 1980); *accord United States v. Dalisay,* No. 03 Cr. 1305, 2005 WL 1176115, at *7

(S.D.N.Y. May 17, 2005); *see also United States v. Miranda,* 526 F.2d 1319, 1324–25 (2d Cir.

1975). Ultimately, however, the key inquiry is still whether the defendant received a fair trial, or

whether there is a "reasonable probability that had the evidence been disclosed, the result of the

trial would have been different." *Kowalczyk v. United States,* 930 F.Supp. 1127, 1145–46

(S.D.N.Y. 1996) (quoting *Bagley,* 473 U.S. at 682); *see also Kyles,* 514 U.S. at 434. Again, if the

result of the trial had been different, Quinoy would not have been acquitted.

  There was no *Brady* violation here. Judge Karas found that bad faith for the destruction

of evidence was limited to Pena's actions. Judge Karas allowed Quinoy to introduce evidence of

Pena's destruction of potentially exculpatory evidence. Judge Karas provided the appropriate

cure by issuing an instruction to the jury stating that they may draw an adverse inference against

the Government for Pena's failure to produce material evidence under her control. In deciding to

sanction the Government by issuing an adverse inference instruction, Judge Karas reviewed the

pertinent case law.[2]  "'[T]he choice of 'appropriate' action is committed to the sound discretion

of the trial court.' Here, the adverse inference charge given by the court alleviated any prejudice

to defendant" from the prosecutor's failure to preserve *Brady* material. *People v. Smith,* 289

A.D.2d 1056, 1057, 735 N.Y.S.2d 693, 696 (4th Dep't 2001) (citations omitted), *appeal denied,*

98 N.Y.2d 641, 744 N.Y.S.2d 770 (2002). *See also, e.g., People v. Jackson,* 264 A.D.2d 683,

684, 695 N.Y.S.2d 357, 358 (1st Dep't 1999) ("[A]ny prejudice to defendant resulting from the

---

[2] The destruction of evidence by the government must meet three requirements: (1) the "evidence must ... possess an exculpatory value that was apparent before [it] was destroyed"; (2) "the defendant must be 'unable to obtain comparable evidence by other reasonably available means'" and (3) "the government must have acted in bad faith in destroying the evidence." *United States v. Tyree,* 279 Fed. App'x. 31, 33 (2d Cir. 2008) (citations omitted). "'The acts complained of must be of such quality as necessarily prevents a fair trial.'" *Buie v. Sullivan,* 923 F.2d 10, 12 (2d. Cir. 1990) (quoting *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872 (1982).

delay [in disclosing the exculpatory statements pursuant to *Brady* ] was prevented by the court's curative actions, including ... an appropriate adverse inference instruction."), *appeal denied,* 94 N.Y.2d 881, 705 N.Y.S.2d 13 (2000); *People v. Dickson,* 260 A.D.2d 931, 933, 690 N.Y.S.2d 282, 285 (3d Dep't) (adverse inference charge sua sponte given by the trial court to remedy the loss of *Brady* evidence was an appropriate exercise of its sound discretion), *appeal denied,* 93 N.Y.2d 1017, 697 N.Y.S.2d 576 (1999); *People v. Edwards,* 232 A.D.2d 342, 343, 649 N.Y.S.2d 408, 409 (1st Dep't 1996) ("The court's exercise of discretion in providing an adverse inference instruction as a sanction for the lost pages in the officer's memo book was appropriate and adequate."), *appeal denied,* 89 N.Y.2d 984, 656 N.Y.S.2d 743 (1997), *cert. denied,* 522 U.S. 1121, 118 S.Ct. 1064 (1998); *see also People v. Kelly,* 62 N.Y.2d 516, 522, 478 N.Y.S.2d 834, 837 (1984) ("Although the choice of 'appropriate' action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of the evidence."). There could have been no better outcome for Quinoy than the acquittal and subsequent dismissal of all charges against him. Therefore, Plaintiffs do not state a due process constitutional claim.

## V. Sixth Amendment Right to Fair Trial

Plaintiffs allege that Quinoy was denied his Sixth Amendment right to a fair trial. "No denial of a fair trial can be shown where the plaintiff was acquitted of the crime charged." *Schiavone Const. Co. v. Merola*, 678 F.Supp. 64, 66 (S.D.N.Y. 1988). Thus, this constitutional claim also fails as a matter of law.

## VI. Loss of Consortium

Marina Quinoy claims loss of consortium. "A loss of consortium claim is a derivative action that depends on the viability of the primary cause of action" or "the underlying injury."

22

*Reed v. Medford Fire Dep't, Inc.,* 806 F.Supp.2d 594, 606 (E.D.N.Y. 2011); *see Griffin v. Garratt–Callahan Co.,* 74 F.3d 36, 40 (2d Cir. 1996) (wife's derivative loss of consortium claim dismissed because husband's underlying claims dismissed). Defendants move to dismiss on the ground that such a claim is not viable in the absence of Quinoy's primary claims. However, because Quinoy's primary malicious prosecution claim against the Government remains, the Government's motion to dismiss on the loss of consortium claim must be denied. *Hammond v. Toy Industry Ass'n, Inc.,* 2014 WL 1266308, at *13 (S.D.N.Y. Mar. 28, 2014).

## VII. CONCLUSION

For the reasons stated above, Pena's motion to dismiss is GRANTED.  The Government's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' malicious prosecution and loss of consortium claims against the Government are their only surviving claims. The Government is ordered to file an answer within three weeks by June 4, 2014. The Clerk of Court is respectfully requested to terminate these motions (Doc. Nos. 30 and 38).

Dated: May 14, 2014                          SO ORDERED:
       White Plains, New York

                                             _____
                                             NELSON S. ROMÁN
                                             United States District Judge